IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

UNITED STATES OF AMERICA

v.   No. 2:16cr7-KS-MTP

CHARLES BOLTON and
LINDA BOLTON

**RENEWED MOTION OF LINDA BOLTON
FOR A NEW TRIAL BASED ON NEW INFORMATION**

In reviewing the presentence report (PSR) of Linda Bolton this past weekend in order to prepare the objections to it, the undersigned counsel noticed three paragraphs containing previously undisclosed information about an interview of John Lee that calls into question some of the crucial testimony that IRS Agent Bradley Luker gave at trial. Because this information casts doubt on the accuracy of Agent Luker's testimony in such a manner as to undermine the integrity of the convictions in this case, Linda Bolton renews her motion for a new trial in this case. She also is filing a separate motion for disclosure of any reports of the interview, as well as all reports of any other interviews of John Lee and any notes.

1

or documents he provided to the Government that have not already been disclosed.[1]

The alleged unreported income in this case consisted of (1) checks from John Lee that were cashed and (2) deposits that were marked as "loans" in paperwork that was given to the accountants. Agent Luker's testimony was critical to the Government's case regarding the John Lee checks. In its order denying the post-trial motions for judgment of acquittal, this Court said there was sufficient evidence with respect to the John Lee checks by noting that "Special Agent Bradley Luker offered testimony that John Lee told him the checks were for goods and services." [127 at 3].

The Government called Agent Luker as a witness and asked him if he had interviewed John Lee. He said that he had. Transcript 268. Agent Luker testified that the documents he reviewed and his interviews supported his conclusion that the John Lee checks were income to Halls and Sports 22. Tr. 271-272. With respect to the John Lee checks, Agent Luker also told the jury that "[t]he checks

---

[1] The undersigned noticed the relevant PSR paragraphs five days ago, on the weekend of November 26-27. On Monday November 28, he emailed the prosecutors asking for a copy of the report of the interview in question that had been provided to the Probation Officer. On Tuesday, November 29, he asked the Probation Officer for a copy, but the Probation Officer felt that he was not in a position to turn it over. The undersigned was hoping to receive a copy prior to filing this motion but the prosecutors have not responded to his request. Because much of his time earlier this week was spent preparing the objections to the PSR, and because of other commitments, the undersigned has not been in a position until now to prepare and file this motion.

were written for food and liquor." Tr. 348. In an effort to clarify if Luker was talking about all of the uncashed checks, Charles Bolton's counsel, Mr. Owen, asked him:

> Q. So if I understand your testimony, what John Lee has told you with reference to the cashed checks is that he bought $273,520 worth of food and liquor from Sports 22 and Hall's Package.
>
> A. Over the five years, that's correct.

Tr. 349.

However, paragraphs 22-24 of the Linda Bolton PSR describe a prior interview that Agent Luker and an FBI Agent conducted with John Lee in which Lee provided information that conflicts in significant measure with Agent Luker's testimony that Lee told him that *all* of the checks were for food and liquor. Those particular paragraphs of the PSR do not contain any particularly sensitive or confidential information, but because PSRs are considered confidential as a general matter, we will not provide any further detail in this motion. Instead, we will submit a motion for leave to file the relevant pages of the PSR under seal.

Luker's trial testimony that *all* of the John Lee uncashed checks (totaling $273,520) were for food and liquor was significant. As was clear from the record, the Boltons paid taxes on some of the John Lee checks that were deposited into the Hall's and Sports 22 accounts. *See e.g.,* Tr. 351. If the Defense could raise information contrary to Luker's conclusion that *all* of the checks were for food and

3

liquor, one or more jurors might have a reasonable doubt as to that claim. If they disbelieved Luker or had doubts about that claim, those jurors could easily conclude that the Government had not carried its burden of proving that the Boltons had failed to pay taxes on whatever portion of the John Lee checks actually went towards food and liquor.

In the order denying the motion for new trial, this Court pointed to evidence relating to the checks that were listed with the word "loan" by them, and said that "the Government would have been able to meet its burden of proof even if the John Lee checks were excluded entirely." [127 at 3]. We disagree for reasons stated in our motion for judgment of acquittal. But even if that were true, it is possible the jurors based their guilty verdicts on the John Lee checks rather than the allegations that Linda Bolton was intentionally trying to under-report income by using the word "loan," which the accountants treated as a designation of a capital contribution.

Because the motion here is for a new trial and not a judgment of acquittal, the issue here is not whether the proof was sufficient to convict with respect to the deposits marked as "loans." The issue is whether the jury might have based its verdict on the uncashed John Lee checks alone, in which case the new evidence contradicting Agent Luker's testimony is extremely significant. For a number of reasons, the jurors might have harbored reasonable doubts about Linda Bolton's

4

intent and might have based their verdicts on the uncashed John Lee checks.[2]
Indeed, the failure to convict Linda Bolton on any of the first five counts
demonstrates some sort of doubt about the Government's case against her.

With respect to the John Lee uncashed checks, the report of the agents that describes the interview of John Lee, and that was provided to the Probation Officer, meets the definition of a "statement" under Fed. R. Crim. Proc. 26.2(f) and 18 U.S.C. 3500(e). Either Agent Luker wrote the statement or the FBI agent who joined him wrote the statement and then Agent Luker read it and agreed with it, thereby adopting and approving it. Rule 26(f) includes three categories of "statements," one of which is "(1) a written statement that the witness *makes and signs, or otherwise adopts or approves*." (Emphasis added). The definition is the same in 18 U.S.C. 3500(e). Thus, under Rule 26.2 and 18 U.S.C. 3500, the report should have been turned over, as well as any other reports of John Lee interviews

---

[2] For example accountant Renee Moore found nothing unusual about Ms. Bolton's practice of marking certain deposits as loans, or at least nothing sufficiently unusual to cause her to contact Linda Bolton regarding the practice or to discuss with Ms. Bolton the guidelines regarding what could and couldn't be designated as a loan or a capital contribution. The evidence in this case demonstrates that for the 2009 tax year, the accounting firm Nicholson & Co. did not deduct the items marked as loans from the gross income of the businesses. However, there is no evidence that Linda Bolton ever contacted the firm to complain that the loans were not deducted. Although the firm did start deducting them for the 2010 tax year, this change was not prompted by anything Linda Bolton did. Linda Bolton's failure to take any action regarding the non-deduction in 2009 indicates that she did not know how the firm was treating the items marked as "loans," that she did not examine the tax returns they prepared to see how they treated those items, and that she was not trying to deceive the firm into preparing a return that was unlawful.

5

that Agent Luker wrote, adopted, or approved. However, it wasn't, and defense counsel were unable to examine Agent Luker with it.

Further, because of the importance of Agent Luker's own conclusion about the purpose of the checks, and his claim that John Lee said all of the uncashed checks were for food and liquor, this contradictory information was favorable to the defense and should have been disclosed under the Sixth and Fourteenth Amendments as applied in *Brady v. Maryland,* 373 U.S. 83 (1963) and related cases. The jury did not get the full story, and the failure to disclose that information undermines confidence in the verdicts that were imposed by the jury.

Fed. R. Crim Proc. 33(b)(1) provides that "[a]ny motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty." This information from the PSR about the prior John Lee interview was not previously known to the defense and is newly discovered evidence. Rule 33 authorizes the Court to grant a new trial "if the interest of justice so requires." Under the unusual circumstances of this case, the interest of justice does so require.

Accordingly, this motion for new trial should be granted.

                                                  Respectfully Submitted,

                                                  <u>s/Robert B. McDuff</u>
                                                  ROBERT B. McDUFF
                                                  Miss. Bar #2532
                                                  767 North Congress Street
                                                  Jackson, MS  39202
                                                  (601) 969-0802
                                                  (601) 969-0804 (fax)
                                                  rbm@mcdufflaw.com

December 2, 2016                                    Counsel for Linda Bolton

CERTIFICATE OF SERVICE

I certify that I have electronically filed the foregoing through the Court's ECF system, which will send notification to, and electronically serve a copy on, all counsel of record in this case. This 2nd day of December, 2016.

s/ Robert B. McDuff<br>
Counsel for Linda Bolton