IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| Plaintiff, | * |
| v. | * Crim. No. 2:16-cr-00007-KS-MTP-1 |
| CHARLES BOLTON, | * |
| Defendant. | * |

## MOTION FOR NEW TRIAL DUE TO DEFENSE COUNSEL FOR DEFENDANT CHARLES BOLTON COMMENCED THE REPRESENTATION WITH AN ACTUAL CONFLICT OF INTEREST

Comes now the Defendant, Charles Bolton and moves this Court for a new trial due to the actual conflict of Bolton's Defense Counsel. In support thereof, Bolton would show the following;

A federal grand jury indicted Defendants Charles and Linda Bolton on March 22, 2016. The indictment charged ten (10) counts against both Defendants. Attorney Joe Sam Owen ("Owen") filed his initial appearance on behalf of Charles Bolton on March 28, 2016.

On November 6, 2014, Owens received two (2) payments for the representation of Charles Bolton.





Neither payment was from Bolton. Both payments were connected to John Lee. The first payment was received from Carl Nicholson. This payment (check number 11433) was made by Nicholson at the request of John Lee. Nicholson was later reimbursed by John Lee. (**Exhibit 3 Carol Nicholson affidavit**). Owen acknowledges receiving both payments in the ledger for the Bolton Trust account.

12/16/16

**Owen, Galloway & Myers, PLLC**
**Client Settlement Trust Account Report**
Bolton #11285

2890 · Trust Fund Payable

| Type | Date | Num | Memo | Amount |
|---|---|---|---|---|
| Deposit | 11/06/2014 | 2331674 | BancorpSouth (John W | -25,000.00 |
| Deposit | 11/06/2014 | 11433 | Carl Nicholson | -25,000.00 |
| Deposit | 11/11/2014 | 11029 | Southern Neurologic & | -10,000.00 |
| Deposit | 04/21/2016 | 997178 | Charles Bolton | -2,500.00 |
| Deposit | 04/21/2016 | 8500 | C. T. Finnegan/Bolton | -2,500.00 |
| Deposit | 06/14/2016 | 2692800 | Frazier Bolton | -5,000.00 |
| Deposit | 08/29/2016 | 1706 | Linda Bolton | -25,000.00 |

Total 2890 · Trust Fund Payable     -95,000.00

<1 of 1>

EXHIBIT 21

In a letter dated March 14, 2017, Bolton terminated the representation with Owen due to the breakdown in the attorney client relationship. Owen was subsequently allowed to withdraw from the representation of Bolton.

Pursuant to Miss. Rules of Professional Conduct 1.8(f):

"(f) A lawyer shall not accept compensation for representing a client from one other than the client unless:

(1)    the client consents after consultation;

(2)    there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and

(3)    information relating to representation of a client is protected as required by Rule 1.6."

An Expert Witness, Attorney George Clark, retained by Bolton to render an expert opinion regarding the matter of attorney ethics, professional responsibility, and risk management. Attorney Clark has provided an expert opinion regarding the conflict of interest matters in this case as it relates to the facts and testimony offered in this case. He has based his opinions on his consideration of the standard of care that an attorney, having the skill and knowledge ordinarily possessed by a reasonably prudent attorney acting under the same or similar circumstances should exercise.

Attorney Clark reviewed the factual allegations and has opined that Owen admitted to a conflict of interest at the sentencing pursuant to RPC 1.7(b) because he stated that his representation was limited to his own interests, Mr. Clark has further opined that whether Owen believed he could still represent Bolton without adverse consequences is irrelevant because Bolton did not give knowing and informed consent to the continued representation as required by RPC 1.7(b)(2). In fact, Mr. Clark has found that Mr. Bolton objected to the continued representation. Mr. Clark's report provides the following:

The comments to RPC 1.7 state: Loyalty to a client is also impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client. Paragraph (b) addresses such situations. A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to whether the client wishes to accommodate the other interest involved.

Lawyer's Interests. The lawyer's own interests should not be permitted to have an adverse effect on representation of a client. ... If the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice.

"Mr. Bolton's lawyers were paid over $50,000.00 by John Lee, a critical government witness. Such arrangements should receive careful scrutiny in criminal cases because of the possibility that the lawyer may not take direction from the Defendant, but rather from the payer of the fees."

Owen accommodated John Lee and acted in direct contravention of Bolton's request by not having John Lee appear at trial so that Bolton could confront his accuser." Owen was put on notice of an actual conflict of interest when Owen became aware that John Lee would provide testimony against Bolton.

"Given the financial relationship here, under RPC 1.8 this subject should be examined further to determine if Mr. Owen was serving Bolton's best interests by this conduct". (**Exhibit 1 George Clark affidavit.**)

It is insufficient to show a hypothetical, speculative, or potential conflict. *Hernandez 690 F.3d at 619*; *Garcia-Jasso, 472 F.3d at 243*. However, in this case there is evidence that shows Owen provided legal representation under an actual conflict of interests, related to checks written to him by John Lee, the key Government witness against Bolton, and a check paid by Carl Nicholson to Joe

Sam Owen on behalf of John Lee, and paid to Joe Sam Owen by John Lee's son, David Lee, that were not previously disclosed to the Court by Owen. Copies of the checks representing payments to Joe Sam Owen totaling $60,000 by these named individuals are provided at **Exhibit 2**. John Lee made payments to Attorney Owen for attorney fees with funds controlled by Lee (meaning Lee would have ultimate control over whether and how much Charles' attorney was paid). This created actual conflicts of interest or, at a minimum, the potential for conflicts of interests to arise during trial,  The 5th Circuit has affirmed the disqualification of a defense attorney who also represented a proposed government witness, *United States v. Millsaps, 157 F.3d 989, 995-96 (5th Cir. 1998)*. The 5th Circuit has also held that the cross-examination of a current or former client can be a conflict of interest. *Perillo v Johnson, 205 F.3d 775, 802 (5th Circ. 2000).* And the Supreme Court has noted the inherent dangers that arise when a criminal Defendant is represented by a lawyer…paid by a third party. *Wood v Georgia, 450 U.S. 261, 268-69 (1981).*

Owen held actual and potential conflicts of interest. Owen's financial relationships with the key government witness presented, three problems: 1) Owen's cross-examinations may be tempered by his obligation or need to protect Lee or adversely, extensive cross-examination by Owen could damage Bolton, 2) Lee's and Charles' interests were not completely aligned since cross-examination of Lee while he is under a Title 26 criminal investigation (as Bradley Luker

testified at trial in this case) endangered Bolton's legal interests, and 3) Lee's control and payment of attorney fees to Owen.

The actual conflict created further divided loyalties, possibly requiring Owen to choose between vigorously representing his client (Bolton) or pleasing the person (John Lee) paying the client's legal fees. These factors taken together show that the actual and potential conflicts of interest could not be overcome by waiver. Carl Nicholson, an owner in the Nicholson and Company Accounting Firm that prepared the Annual Tax Returns for over fifteen (15) years on behalf of Charles and Linda Bolton, who was also John Lee's accountant and tax preparer, has provided evidence in the form of a sworn affidavit that details the following regarding payments he made to Owen on behalf of John Lee, the government's key witness: 1. "John Lee asked him to write a personal check to Attorney Joe Sam Owen for $25,000 for Charles' retainer. John Lee later reimbursed me for that amount. It is well known by those close to John that he did not want his office manager to know all his personal activities." Mr. Nicholson also stated in his affidavit, in part, that: 2. "John Lee asked me to be present when he met with the FBI and the IRS on the Hall Avenue and Sports 22 checks written on the John Lee, PA bank account." 3. "I was in the meeting for the entire time." 4. "Sometime after that meeting John Lee asked me to call Joe Sam Owen for a recommendation for an attorney for him. Joe Sam recommended Rick Simmons in New Orleans." 5.

"After the meeting, on the way back to Hattiesburg, John Lee said to me that those checks were not income to Bolton and he was not going to let Charles get hurt by his checks to Charles." 6. "Sometime after that day in New Orleans, Joe Sam said that based on his conversations with Rick Simmons that I needed a lawyer and he recommended Frank Trapp. I engaged Frank Trapp as my attorney but I still do not know why I needed an attorney." 7. "I was never subpoenaed to testify before the grand jury for Charles and Linda Bolton or subpoenaed to testify at their trial. I did not plead the Fifth for the purpose of not testifying at their trial as it has been alleged. I wanted to testify at their trial and would have testified had I been asked or subpoenaed to do so."

    A copy of the Affidavit by Carl Nicholson is attached at **Exhibit 3**. Joe Sam Owen could have called Carl Nicholson as a witness in the tax case against Bolton because he possessed information that would have explained the transactions related to counts 1-5 of the indictment. This testimony would refute the Government's theory in this case by testifying that John Lee told him on the way back to Hattiesburg, after his meeting with Rick Simmons in New Orleans, "that those checks were not income to Charles Bolton and that he was not going to let Charles get hurt by his checks to Charles". He states he wanted to testify at their (the Boltons) trial and would have testified had he been asked or subpoenaed to do so. Bolton requested that Owen call Carl Nicholson as a defense witness but he

failed to call Nicholson as a witness. Owen's failure to call Carl Nicholson as a witness to testify at the trial of Chief Deputy Bolton was deficient performance due to his conflict of interest, and this deficient performance was prejudicial because it led to an unjust jury verdict "not supported by evidence" and a miscarriage of justice. Owen conflict of interest was further documented when he recommended an attorney for Lee to retain when he knew Lee was the key government witness against Charles Bolton. Shortly after retained the attorney recommended by Attorney Owen, Lee stated his intentions to plead the fifth and refused to make any statements on Bolton's behalf as he committed to do.

In this case, Owen's self-interests are the cause of the conflict of interest and this conflict was not previously disclosed to the Court. Checks were paid to Owen totaling $60,000 in October/November 2014, approximately sixteen (16) months before the Government filed an indictment against Bolton for tax crimes. These funds were ultimately used by Owen as legal fees for defense of the tax charges against Bolton.

WHEREFORE, based upon the foregoing the Defendant would ask this Court to grant a new trial.

/s/:  SAMUEL S. MCHARD

/s/:  WILLIE J. HUNTLEY, JR. - PHV

/s/:   DENNIS J. KNIZLEY - PHV

SAMUEL S. MCHARD
WILLIE J. HUNTLEY, JR. - PHV
DENNIS J. KNIZLEY – PHV
THE HUNTLEY FIRM, P.C.
POST OFFICE BOX 370
MOBILE, ALABAMA 36601
TELEPHONE:   251-434-0007
FACSIMILE - 251-434-00086
EMAIL:   smchard@mchardlaw.com
            huntfirm@bellsouth.net
            djknizley@hotmail.com

## CERTIFICATE OF SERVICE

I, WILLIE J. HUNTLEY, JR., of the law firm of THE HUNTLEY FIRM, P.C., do hereby certify that I have this date electronically filed the above and foregoing document with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

SO CERTIFIED THIS 11th day of April, 2017.

/s/:  WILLIE J. HUNTLEY, JR.