UNITED STATES OF AMERICA

V.                                              CRIMINAL NO. 2:16-cr-7-KS-MTP

CHARLES BOLTON and
LINDA BOLTON

### MOTION TO VACATE CONVICTION AND SENTENCE AND IN THE ALTERNATIVE, FOR NEW TRIAL UNDER FEDERAL RULE OF CRIMINAL PROCEDURE RULE 33 AND REQUEST FOR GARCIA HEARING

Chief Deputy Bolton, through Counsel, move this Court for new trial, based on new evidence related to an undisclosed conflict of interest of his counsel and request for a Garcia Hearing. Mr. Bolton contends that recent discovery and obtained evidence reflects the fact that former counsel operated and labored under a conflict of interest and that directly and adversely affected his performance throughout his representation.  The newly discovered evidence includes, but is not limited to, the Affidavit of Carl Nicholson, Affidavit of Attorney George R. Clark, Affidavit of Phil Hull, Affidavit of Billy McGee, and the Affidavit of Maggie Hancock.

Additionally, Mr. Bolton contends that the recent discovery reflects the fact that the prosecution committed misconduct in relation to counsel's conflict of interest in failing to timely provide discovery documentation integral to Mr. Bolton's defense.  In that regard, the prosecution committed misconduct in failing to produce: Rule 16 and Brady materials until the night before the start of trial; as well as Interview Memorandum of key witnesses (such as John Lee) which were used against Mr. Bolton at trial. Additionally, the prosecution committed

misconduct in filing the indictment outside of the recommended charges; filing of duplicative charges in violation of Department of Treasury and Internal Revenue Code statutes and regulations; and, providing false tax deficiency calculations in the form of Summary Charts, resulting in the violation of Mr. Bolton's right to due process and a fair trial and an improper conviction.

Further, the Boltons contend that at no point did the Government present evidence that the IRS Agent or the AUSA sought or received the requisite approvals as provided by statute and as required under the Department of Treasury and the Department of Justice policies in order to pursue a tax case against the Boltons prior to their indictment.  In this case, there is <u>no evidence</u> that documents the process for the referral of criminal charges to the Department of Justice Tax Division by the IRS for recommended prosecution for Linda Bolton and Charles Bolton or that the Department of Justice Tax Division Approval Process was followed. Therefore, the Boltons contend that they were denied of due process and a fair trial when the prosecution failed to establish that investigators followed the requirements of the law when investigating the Bolton's who were not given notice of any alleged tax deficiencies within their tax returns or interviewed by an agent of the IRS prior to their indictment.

## <u>STANDARD OF REVIEW</u>

Fed. R. Crim Proc. 33(b)(1) provides that "[a]ny motion for a new trial grounded on new evidence must be filed within 3 years after the verdict or finding of "guilty." Rule 33 authorizes the Court to grant a new trial "if the interest of justice so requires." Under the unusual circumstances of this case, the interest of justice does so require.

The manifestly deficient performance by defense counsel prejudiced Mr. Bolton and, therefore requires a new trial under both the Fifth and Sixth Amendments of the United States Constitution.

## I.  MR. BOLTON WAS DENIED OF HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL AND EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS FIFTH AND SIXTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION.

Mr. Bolton's counsel, Joe Sam Owen, Esq., provided unconstitutional representation at trial and sentencing because of a direct conflict of interest concerning Owen's relationship to attorney John Lee.

The Sixth Amendment guarantee of the right to counsel includes the right to legal representation free of conflicts of interest. *United States v. Hernandez*, 690 F.3d 613, 618 (5th Cir. 2012). A conflict exists where "counsel places himself in a position conducive to divided loyalties." *United States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006) (internal quotation marks and citation omitted).  To establish that counsel labored under a conflict of interest, a defendant must show an actual conflict that adversely affected the representation; it is insufficient to show a hypothetical, speculative, or potential conflict. *Hernandez*, 690 F.3d at 619; *Garcia-Jasso*, 472 F.3d at 243.

The Fifth Circuit has ruled that an attorney's performance was adversely affected by a conflict of interest where counsel could have pursued a <u>plausible alternative defense strategy</u> or <u>tactic</u> but chose not to do so because of the conflict.  *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000).

An actual conflict exists when the attorney must compromise his duty of loyalty or zealous advocacy to the defendant by choosing between or blending the competing interests of the defendant and others (such as key witnesses against the defendants) from whom he received

undisclosed payments that created a conflict of interest of divided loyalties which were not disclosed to the Court.

## II. DEFENDANT CHARLES BOLTON DEFENSE COUNSEL LABORED UNDER A CONFLICT OF INTEREST THAT ADVERSELY AFFECTED THE REPRESENTATION

Joe Sam Owen was also ineffective because he labored under a conflict of interest that adversely affected his representation of Chief Deputy Bolton. An Expert Witness, Attorney George Clark, who has been retained by Chief Deputy Bolton to offer expert opinions regarding the matter of attorney ethics, professional responsibility, risk management and the law of layering, Attorney Clark has provided an expert opinion regarding the conflict of interest matters in this case as it relates to the facts and testimony offered in this case. He has based his opinions on his consideration of the standard of care that an attorney, having the skill and knowledge ordinarily possessed by a reasonably prudent attorney acting under the same or similar circumstances should exercise.

Attorney Clark reviewed the factual allegations and has opined that Mr. Owen admitted to a conflict of interest under RPC 1.7(b) because he stated that his representation was limited to his own interests, Mr. Clark has further opined that whether Attorney Owen believed he could still represent Mr. Bolton without adverse consequences is irrelevant because Mr. Bolton did not give knowing and informed consent to the continued representation as required by RPC 1.7(b)(2). In fact, Mr. Clark has found that Mr. Bolton objected to the continued representation. Mr. Clark report provides the following:

"As the comments to RPC 1.7 state:

Loyalty to a client is also impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client. Paragraph (b) addresses such situations. A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to whether the client wishes to accommodate the other interest involved.

**Lawyer's Interests**. The lawyer's own interests should not be permitted to have an adverse effect on representation of a client. ... If the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice.

Miss. RPC 1.8(f) states:

"(f) A lawyer shall not accept compensation for representing a client from one other than the client unless:
(1) the client consents after consultation;
(2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and
(3) information relating to representation of a client is protected as required by Rule 1.6."

"Mr. Bolton's lawyers were paid by Mr. Lee. Such arrangements should receive careful scrutiny in criminal cases because of the possibility that the lawyer may not take direction from the defendant, but rather from the payor of the fees."

And;

"Mr. Owen accommodated Mr. Lee and acted in direct contravention of Mr. Bolton's request by not having Mr. Lee appear at trial so that Mr. Bolton could confront his accuser."

"Given the financial relationship here, under RPC 1.8 this subject should be examined further to determine if Mr. Owen was serving Mr. Bolton's best interests by this conduct".

A full copy of Attorney Clark's Expert Report is provided at ***Exhibit 1.***

**Payment of Legal Fees to Attorney Joe Sam Owen By Key Government Witness Caused an**

**Actual Conflict of Interest.  Also his personal interests were in direct conflict to those of his client's, Chief Deputy Bolton**.

It is insufficient to show a hypothetical, speculative, or potential conflict. *Hernandez 690 F.3d at 619*; *Garcia-Jasso, 472 F.3d at 243*.  However, in this case there is evidence that shows Attorney Owen actually labored under a conflict of interests, related to checks written to him by John Lee, the key Government witness against Chief Deputy Bolton, and a check paid by Carl Nicholson to Joe Sam Owen on behalf of John Lee, and paid to Joe Sam Owen by John Lee's son, David Lee, that were not previously disclosed to the Court by Joe Sam Owen.  Copies of the checks representing payments to Joe Sam Owen totaling $60,000 by these named individuals are provided at *Exhibit* **2**.

John Lee made payments to Attorney Owen for attorney fees with funds controlled by Lee (meaning Lee would have ultimate control over whether and how much Charles' attorney was paid).  This created <u>actual</u> conflicts of interest or, at a minimum, the potential for conflicts of interests to arise during trial, ***United States v Timothy Dale Jackson.***  The 5th Circuit has affirmed the disqualification of a defense attorney who also represented a proposed government witness, ***United States v. Millsaps, 157 F.3d 989, 995-96 (5th Cir. 1998***).  The 5th Circuit has also held that the cross-examination of a current or former client can be a conflict of interest. ***Perillo v Johnson, 205 F.3d 775, 802 (5th Circ. 2000).***  And the Supreme Court has noted the inherent dangers that arise when a criminal defendant is represented by a lawyer…paid by a third party. ***Wood v Georgia, 450 U.S. 261, 268-69 (1981).***

Attorney Owen held <u>actual and potential conflicts</u> of interest.  Owen's financial relationships with the key government witness presented, three problems: 1)  Attorney Owen's cross-examinations may be tempered by his obligation or need to protect Lee  or adversely, extensive cross-examination by Attorney Owen could damage Chief Deputy Bolton, 2) Lee's

and Charles' interests <u>were not</u> completely aligned since <u>cross-examination of Lee</u> while he is under a Title 26 criminal investigation (as Bradley Luker testified at trial in this case) endangered Charles' legal interests, and 3) Lee's control and payment of attorney fees to Owen created further divided loyalties, possibly requiring Attorney Owen to choose between vigorously representing his client (Charles) or pleasing the person (John Lee ) paying the client's legal fees.  These factors taken together show that the <u>actual and potential</u> conflicts of interest <u>could not</u> be overcome by waiver. ***United States v Timothy Dale Jackson.***

Carl Nicholson, an owner in the Nicholson and Company Accounting Firm that prepared the Annual Tax Returns for over 15 years on behalf of Charles and Linda Bolton, who was also John Lee's accountant and tax preparer, has provided new evidence in the form of a sworn affidavit that details the following regarding payments he made to Attorney Joe Sam Owen on behalf of John Lee, the government's key witness:

> 1. "John Lee asked him to write a personal check to Attorney Joe Sam Owen for $25,000 for Charles' retainer.  John Lee later reimbursed me for that amount.  It is well known by those close to John that he did not want his office manager to know all his personal activities."

Mr. Nicholson also stated in his affidavit, in part, that:
> 2. "John Lee asked me to be present when he met with the FBI and the IRS on the Hall Avenue and Sports 22 checks written on the John Lee, PA bank account."
>
> 3. "I was in the meeting for the entire time."
>
> 4. "Sometime after that meeting John Lee asked me to call Joe Sam Owen for a recommendation for an attorney for him.  Joe Sam recommended Rick Simmons in New Orleans."
>
> 5. "After the meeting, on the way back to Hattiesburg, John Lee said to me that those checks <u>were not income</u> to Chief Deputy Bolton and he was not going to let Charles get hurt by his checks to Charles."
>
> 6. "Sometime after that day in New Orleans,……..Joe Sam said that based on his conversations with Rick Simmons that I needed a lawyer and he recommended

Frank Trapp. I engaged Frank Trapp as my attorney but I still do not know why I needed an attorney."

7. "I was never subpoenaed to testify before the grand jury for Charles and Linda Bolton or subpoenaed to testify at their trial. I did not plead the Fifth for the purpose of not testifying at their trial as it has been alleged. I wanted to testify at their trial and would have testified had I been asked or subpoenaed to do so."

A copy of the Affidavit by Carl Nicholson is attached at *Exhibit* **3**.

Joe Sam Own could have called Carl Nicholson as a witness in the tax case against Chief Deputy Bolton because he possessed information that could have refuted the Government's theory in this case by testifying that John Lee told him on the way back to Hattiesburg, after his meeting with Rick Simmons in New Orleans, "that those checks were not income to Chief Deputy Bolton and that he was not going to let Charles get hurt by his checks to Charles". He states he wanted to testify at their (the Boltons) trial and would have testified had he been asked or subpoenaed to do so. Chief Deputy Bolton requested that Attorney Owen call Carl Nicholson as a defense witness but he refused to do so. Attorney Owen's failure to call Carl Nicholson as a witness to testify at the trial of Chief Deputy Bolton was deficient performance due to his conflict of interest, and this deficient performance was prejudicial because it led to an unjust jury verdict "not supported by evidence" and a miscarriage of justice, because the witness testimony of Carl Nicholson directly refutes the Government's assertion that the John Lee checks were income to Charles and Linda Bolton which would have instead led to "not guilty" verdicts for Chief Deputy Bolton.

Attorney Owen conflict of interest was further documented when he recommended an attorney for Lee to retain when he knew Lee was the key government witness against Charles Bolton. Shortly after retained the attorney recommended by Attorney Owen, Lee stated his intentions to pled the fifth and refused to make any statements on Chief Deputy Charles Bolton's

behalf as he committed to do. During the trial, Attorney Rick Simmons actually participated in the proceedings and placed various objections or comments on the record on behalf of John Lee. Attorney Owen did not object to John Lee's attorney participation in the trial of Charles Bolton and the Court allowed his participation.

**Attorney Joe Sam Owen Self Interests Caused an Actual Conflict of Interest**

In this case, Chief Deputy Bolton's Counsel, Joe Sam Owen's self-interests versus multiple representation of clients are the cause of the conflict of interest and this conflict was not previously disclosed to the Court. Checks were paid to Joe Sam Owen totaling $60,000 in October/November 2014, approximately 16 months before the Government filed an indictment against Chief Deputy Bolton for tax crimes. These funds were ultimately used by Attorney Joe Sam Owen as legal fees for defense of the tax charges against Chief Deputy Bolton. Chief Deputy Bolton **did not know that John Lee had become a government witness** against him before the trial. Attorney Owen knew that John Lee was a witness for the government but failed to inform Charles, and therefore Charles was unable to assist in or make decisions regarding his defense based on this new information.

**II. JOE SAM OWEN'S PERFORMANCE WAS ADVERSELY AFFECTED BY A CONFLICT OF INTEREST WHERE HE COULD HAVE PURSUED PLAUSIBLE ALTERNATIVE DEFENSE STRATEGIES OR TACTICS BUT CHOSE NOT TO DO SO BECAUSE OF THE CONFLICT. *PERILLO V JOHNSON, 205 F.3D 775, 781 (5TH CIR. 2000).*

Joe Sam Owen's performance was adversely affected by a conflict of interest where he could have **pursued plausible alternative defense strategies or tactics** on behalf of Chief Deputy Bolton but chose not to do so because he labored under a conflict of interest. Attorney Owen's receipt of checks from the key government witness John Lee totaling $60,000 forced him to decide between the interests of Chief Deputy Bolton and John Lee. He ultimately

exchanged Chief Deputy for John Lee by not mounting a defense of the charges brought against him by the Special Assistant United States Attorney on behalf the United States Government, since Lee was never indicted, and despite Lee being under a Title 26 investigation for tax crimes and fraud by the same IRS Agent (Bradley Luker) for the same checks and general ledger evidence the Agent testified was known fraud. However, the IRS Agent Bradley Luker and the Special Assistant United States Attorney Fred Harper used John Lee fraudulent business ledgers as opposed to his witness testimony against Chief Deputy Bolton at trial during court proceedings to obtain convictions against him for tax evasion and filing of a false tax return.

Attorney Owen's receipt of $25,000 directly from Lee and indirectly through others for a total of $60,000 caused him to make choices advancing his own interests and the interests of Lee to the detriment of Chief Deputy's Bolton interests and the checks show that Attorney Owen and John Lee were directly involved with one another. Attorney Owen played a major role in Chief Deputy Bolton not testifying on his own behalf because he would not allow him to testify and told Charles that if he testified, he would be on his own.

Attorney Owen Attorney Owen was ineffective because he labored under a conflict of interest when he failed to issue a subpoena to John Lee to testify at trial, not presenting defense witnesses to refute the government's evidence when the witnesses were available, not calling a former IRS Agent (Phil Hull) who was a consultant retained and paid by Chief Deputy Bolton to testify at trial, and failed to present exculpatory evidence helpful to Charles were actual conflicts of interest which forced him to decide between interests of his client (Chief Deputy Bolton) and those of John Lee, the key Government witness. Owen failed to pursue alternative defense tactics rooted in law and that was helpful to Chief Deputy Bolton. One such defense theory that could have been presented is the Supreme Court ruling in *Boulware v. The United States 552 U. S. 421*

10

*(2008)* where the Court ruled that loaning capital back to the business as loans (as was the case with Charles and Linda Bolton) is not a crime under the income tax evasion and filing of a false return statutes. The Supreme Court further ruled in *Boulware* that a defendant in a criminal tax case does not need to show a contemporaneous intent to treat diversions as returns of capital before relying on those sections to demonstrate no taxes are owed. This is especially true since the businesses owned by Charles and Linda Bolton lacked earnings and profits when they loaned money to their businesses through capital contributions, and the capital contributions were lawfully reported on Schedule C of their Income Tax Return filed annually with the IRS. Special Agent Luker reported that there were "*No significant purchases were noted during the period the investigation covered. The funds represented to be loans were used in the normal course of business for Sports 22 and Hall Avenue. The funds from the cashed checks were not linked to any significant purchases or events.*"

Attorney Owen failed to issue a subpoena to John Lee, a major Government witness against Chief Deputy Bolton to testify at trial as to statements he allegedly made to the Government regarding his treatment of the checks cashed by Chief Deputy Bolton on his behalf, for which evidence presented in Court documents that he claimed the checks as purchases for "office supplies" on his tax returns and not for purchases of alcohol and food from Hall Avenue and Sports 22 as the Government alleged. Instead, Attorney Owen entered on the record a stipulation that waived John Lee's appearance in court and that Lee did not have to appear at trial <u>without notice or approval by Chief Deputy Bolton in advance </u>(a violation of Chief Deputy Bolton's Six Amendment rights which are non-waiverable). This action resulted in a violation of Chief Deputy Bolton's Sixth Amendment Rights to Counsel free of conflict guaranteed to him under the Constitution of the United States.

Lee's testimony might have subjected Attorney Owen to legal and professional liability because his testimony could have revealed more details of his financial relationship with Owen. Therefore, a conflict existed which prompted Attorney Owen to protect himself at Chief Deputy Bolton's expense.

**IV. AN ACTUAL CONFLICT EXISTS ONLY WHERE THE ATTORNEY MUST COMPROMISE HIS DUTY OF LOYALTY OR ZEALOUS ADVOCACY TO THE DEFENDANT BY CHOOSING BETWEEN OR BLENDING THE COMPETING INTERESTS OF THE DEFENDANT AND HIMSELF (AND IN THIS CASE, OTHER THIRD PARTY) INTERESTS**

The American Bar Association's Model Rules 1.8 (f) provides that:  "A lawyer shall not accept compensation for representing a client from one other than the client unless:

(1) the client gives informed consent; (2) *there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship*; and (3) information relating to representation of a client is protected as required by Rule 1.6.

RULE 1.7 of the Mississippi Rules of Professional Conduct governing conflict of interest provides that**:**  (b) a lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless the lawyer reasonably believes:

(1) the representation will not be adversely affected; and (2) the client has given knowing and informed consent after consultation. The consultation shall include explanation of the implications of the representation and the advantages and risks involved.

Loyalty is an essential element in the lawyer's relationship to client. An impermissible conflict of interest may exist before representation is undertaken, in which event the representation should be declined. If such a conflict arises after representation has been

undertaken, the lawyer should withdraw from the representation.   Loyalty to a client is also impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client. In criminal cases, an inquiry by the Court is required.  This did not occur in defendant, Chief Deputy Bolton's case.

Attorney Owen was on notice that a conflict of interest reasonably existed regarding his representation of Chief Deputy Bolton on March 22, 2016 when Chief Deputy Charles Bolton was indicted on tax crimes and certainly after he learned the key witness against Chief Deputy Bolton was John Lee.  If notice was not recognized by Attorney Owen at that time, he was certainly on notice in July 2016 when the Government filed a motion with the Court to disqualify Counsel (James K. Dukes and Paul Holmes) for Linda Bolton on July 15, 2016, Docket Entry [26] for Conflict of Interest.  Although this motion to disqualify counsel filed by the Government was later sealed by the Court,  it was not sealed before the contents of the motion and the accompanying exhibits were published by the News Media.  News media reports documented that the motion to disqualify Linda Bolton's Counsel filed by the Government included but not limited to the following:

(1)  "*The government's investigation revealed that Holmes and Dukes wrote checks as payments for goods and services obtained from the Bolton's business*".

(2)  "*Should the checks be admitted into evidence without the testimony of Holmes and Dukes, their conduct would be at issue, along with the Boltons' conduct. The question of the purpose of the checks would be left unanswered.* "

(3)"*As soon as the government became aware of the conflict, it notified the defendants of its position that Homes and Dukes are necessary witnesses and have a conflict.*"

A copy of the news report referencing the information contained in the motion to disqualify Dukes and Holmes before the motion was sealed and evidence including relevant copies of checks that were included as exhibits to the Government's motion is provided at ***Exhibit* 4.**

The WDAM news report further issued a quote regarding the issue of the disqualification of Dukes and Holmes by Special Assistant United States Attorney Fred Harper as follows:

> *"This presents the court of an actual conflict," Special Assistant U.S. Attorney Fred Harper said. "This conflict has already shown its head ...we plan to introduce this at the trial…………...The credibility of the lawyers is placed at issue before the jury."*

While the Special United States Attorney issued a statement to the media that the evidence of the checks pertaining to Dukes and Holmes would be presented at trial, they were never called by the Government as witnesses.

The Court heard oral argument and received briefs regarding the motions as they pertain to defendant Linda Bolton to disqualify Counsel. The Court held that the Motion to Disqualify Counsel [26] should be sustained. The contents of this order were also published in news media before it was later sealed by the Court. The news report quoted Judge Starrett as follows:

> *Starrett said, "If the government offers the checks from Holmes and Dukes, they would be witnesses. There is no way this is not a conflict. This is a clear conflict."*

> *And;*

> *"The Court <u>does not typically impute</u> all actions of attorneys to their clients" he wrote in his decision. However, in this case, Linda Bolton, though not aware of the professional rules her attorneys were obligated to follow, certainly should have known that (Paul) Holmes and (Jim) Dukes had written checks to her business during the relevant years and that those checks would be an issue."*

The Court subsequently issued an order on August16, 2016, in response to new defense counsel's motion for continuance, and following the Court's order disqualifying Dukes and

Holmes.  A copy of the Hattiesburg American News Article that references the Court's opinions and a full copy of the Memorandum and Order issued by the Court on August 16, 2016, and that accompanied the article is provided at **Exhibit 5**.   The memorandum provides, in pertinent part, the following:

> *"(1) the timing of when the Government moved for disqualification of opposing Counsel is not relevant."*
>
> *"(2) the legal profession is a self-governing and self-regulation profession (See MRPC Preamble)."*
>
> *"(3) with full knowledge of their professional responsibilities and aware of the issues in this case, Holmes and Dukes should have withdrawn their representation of Linda Bolton long before the Court granted the Motion to Disqualify Counsel [26]."*

Therefore, the timing of the issue of Chief Deputy Bolton's defense Counsel's conflict of interest being raised now is also not relevant.  If a conflict of interest arose during Attorney Owen's representation of Chief Deputy Bolton, it is not the responsibility of Chief Deputy Bolton to raise the issue, it is the responsibility of the Attorney to be aware of his professional responsibilities and withdraw his appearance when questions arise regarding whether a conflict exists.  For the same reason the Court ruled the Dukes and Holmes checks were a conflict of interest is the same reason the government's key witness John Lee Check written to Joe Sam Owen is likewise a conflict of interest.

The law is clear and is the same as in the case of checks written by John Lee to Joe Sam Owen.  This is a clear conflict of interest which has caused the credibility and loyalty of Attorney Owen in the representation of Chief Deputy Bolton to be questioned.  As such, Chief Deputy Bolton is entitled to a new trial and representation of his choice that is free of conflict as a guaranteed right to due process under the Sixth Amendment of the Constitution of the United States.

**V. THE CHECKS WRITTEN BY JOHN LEE TO JOE SAM OWEN RESULTED IN DEFICIENT PERFORMANCE AND IN INEFFECTIVE ASSISTANCE OF COUNSEL.**

Relief sought by a defendant based on ineffectiveness of counsel requires a two part analysis as set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant must show that counsel's performance was "deficient" and that counsel's deficiency "prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  Owen failed to put on a defense for Chief Deputy Bolton at trial that resulted in deficient performance.  In fact, he only called one defense witness and rested.   The Government's opposition motion to post-trial motions filed by Attorney Owen on behalf of Chief Deputy Bolton noted the following:

 (1)  "The defense called one witness, Helen Mooreland, John Lee's secretary, then rested".

    And;

 (2)  The "miscarriage of justice" standard was not argued by Attorney Owen on Chief Deputy Bolton's behalf in the motion for a judgment of acquittal and the conditional grant of a new trial or alternatively, motion for a new trial.

Attorney Owen failed to interview and present evidence and witness testimony for consideration by the jury to refute allegations by the government that cashed checks from John Lee were for alcohol and catering purchases.  Specifically, Attorney Owen's performance was deficient because he failed to present witness testimony to refute alleged tax deficiency calculations and failed to present evidence to refute alleged tax charges although Chief Deputy retained an accountant and a former IRS Supervisory Agent (Phil Hull) as Consultant and to serve as witnesses to testify on his behalf at trial, and he was charged fees for the retention of these individuals.  Mr. Phil Hull, the owner of Financial Crimes Investigative, Compliance & Security Company specializing in Bank Secrecy Act/Anti Money Laundering Compliance and Financial

Investigations for civil and criminal purposes, was initially hired by the Defense Team for Linda Bolton and Chief Deputy Bolton to serve as a Consultant to offer professional opinions regarding the criminal tax case against them, and to testify if needed regarding those opinions at trial.

Mr. Hull states that he met with Attorney Joe Sam Owen in Hattiesburg on several occasions and subsequently prepared a written presentation, based on his review of the evidence in this case. He was present at the Courthouse during the trial of Linda and Chief Deputy Bolton and was prepared to testify on their behalf. However, for reasons unknown to him, he was not called to testify as to his professional opinions on behalf of Linda and Chief Deputy Bolton by either Defense Attorney (Joe Sam Owen or Robert McDuff). If he had been afforded an opportunity to testify, he has **provided** a sworn affidavit as to the matters he would have provided testimony, in part, as follows:

   a. The Burden of Proof in this case was not met "beyond a reasonable doubt" standard based on the evidence provided in the Special Agent testimony at *Vol. II Trial Transcript*, page 272, Lns 11-14, *Exhibit* **6.**

> **Q: "Was the cash that was obtained by cashing all those checks over that five year period reported anywhere by the Boltons that you could find"?**

> **A: "Not that I could find".**

b. It is not illegal to cash checks and not record in business statements if the checks are not income. Further there is no evidence presented at trial by the Government that proves the checks from John Lee and cashed by the Boltons are taxable income.

  c. The Government evidence did not provide elements of proof necessary to establish "willfulness" to prove a violation of 7201. The Government would have had to show the defendants intentionally filed returns he or she knew to be false. My review of the evidence did not show that Charles and Linda Bolton willfully and intentionally subscribed to a false return that they knew to be false".

> 1. "The hiring of an Accounting firm to prepare and file their taxes and they relied on this firm to correctly prepare their taxes in accordance with IRs laws and acceptable standard of accounting practices. Charles and Linda Bolton relied on

the expertise of the Nicholson and Company firm to prepare their taxes and the evidence shows that all earnings statements including 1099s were provided to the accounting firm for preparation of their taxes, and these earnings statements were filed with their returns sent to the IRS[1]".

2. "Due to the lack of the Boltons' tax and bookkeeping knowledge and reliance on their hired CPA, the case lacks the willfulness and therefore, the case should be resolved as a civil case and not in the form of a criminal prosecution".

3. "It was the tax preparer's responsibility to correctly prepare the Bolton's tax returns. Renee More, the accountant, testified it was she who recorded the information on Schedule C of their tax return recorded as capital contributions (not the Boltons). She further testified that for a sole proprietorship, a loan and capital contribution is synonymous and very ordinary. *Transcript* Volume II, 9/14/16 at 227, Lns 10-13, *Exhibit* **7**

A copy of the Sworn Affidavit of Phil Hill is provided at *Exhibit* **8.**

Mr. Hull's retention and professional opinions were key to the defense in presenting an alternative to the theory of the prosecution's case, and provided a plausible defense strategy that Attorney Owen did not pursue on behalf of Chief Deputy Bolton. Because he compromised his duty of loyalty or zealous advocacy to the defendant Chief Deputy Bolton by choosing between blending the competing interests of the defendant and himself and that of third parties who paid his attorney fees, this constitutes an actual conflict of interest.

1. The Mississippi Tax Commission and Alcoholic Beverage Control Division provided evidence that document all purchases of alcohol by the Boltons which did not match the amount of checks written by John Lee and that the Government's witness falsely allege were for purchase of alcohol. Attorney Owen called no witness from the State to testify as to the sales records for the tax years 2009-2013 period of the alleged under reported income which directly refuted the testimony of Bradley Luker that the John Lee checks

---

[1] [f] Reliance on a qualified tax preparer is an affirmative defense to a charge of willful filing of a false tax return, if the defendant can show that he provided the preparer with complete information and then filed the return without any reason to believe it was false. United States v. George, 420 F.3d 991, 999 (9th Cir. 2005); United States v. Chavin, 316 F.3d 666, 671 (7th Cir. 2002); United States v. Ford, 184 F.3d 566, 579-580 (6th Cir. 1999); United States v. Brimberry, 961 F.2d 1286, 1290-91 (7th Cir. 1992); United States v. Duncan, 850 F.2d 1104, 1117 (6th Cir. 1988), cert. denied, 493 U.S. 1025 (1990); United States v. Wilson, 887 F.2d 69, 73 (5th Cir. 1989); United States v. Claiborne, 765 F.2d 784, 798 (9th Cir. 1985), cert. denied, 475 U.S. 1120 (1986).

were representative of the purchases for alcohol from Hall Avenue Store owned by Chief Deputy Bolton. These records were provided to Attorney Owen but he never presented them to the jury during the trial. These records are provided at *Exhibit **9.**

2. Although the Bolton's employee (s) (i.e., Maggie Hancock) was interviewed by the government's internal revenue service (IRS) agent Bradley Luker) and testified before the grand jury in the alleged "food theft" case, and she was knowledgeable of the catering business and alcohol sales for Sports 22, counsel for Chief Deputy Bolton failed to present this witness or other employees as witnesses to refute the government's theory that the checks were for alcohol and catering. Ms. Hancock was available to be called as a witness but Joe Sam Owen failed to do so. Had she been called as a witness, Ms. Hancock has provided an affidavit that in part states she has been employed at Sports 22 at various periods over the past 25 years, that during her tenure, she is responsible for cooking all of food and catering, and that she has never catered a party or event whatsoever, for John Lee, PA at his office or at this residence.

   See Affidavit of Maggie Hancock at *Exhibit **10.**

   This new evidence directly refutes claims by the government's witness, John Lee and as provided in testimony by Bradley Luker that the checks cashed were for food and liquor, and therefore, could not possibly be income to the Boltons.

3. Records were subpoenaed to show that John Lee purchased liquor from a different business (27th Ave Liquor Store).

   See **Exhibit 11 for Copies of Sales Records Relating to Alcohol Purchases by John Lee from the 27th Avenue Liquor Store,** and not from the Hall Avenue Liquor Store owned by Charles and Linda Bolton. However, these sales documents were never presented at trial by Joe Sam Owen and compared with the testimony of IRS Agent and Summary Witness, Bradley Luker, to refute his testimony; and demonstrate to the jury that the alleged sales and tax loss calculations were inaccurate as to the charges against Chief Deputy Bolton.

## VI. NEWLY DISCOVERED INFORMATION SHOW THE GOVERNMENT FAILED TO PRODUCE EXCULPATORY EVIDENCE TO DEFENSE AND VIOLATED DISCOVERY RULES UNDER BRADY

Joe Sam Owen was ineffective because he labored under a conflict of interest when he failed to object and file some motions at all and timely file motions when the Government failed to produce exculpatory evidence to the Defense and failed to defend against violations of the discovery rules under Brady. This led to the jury being given evidence by the Government which was not provided to the Defense to prepare for trial.

1. The Government violated Brady for **newly discovered information** which showed up in Chief Deputy Bolton's **Presentencing Report several weeks after the Boltons' trial** had ended that was never provided to the Defense for trial and has not been provided to this date to the Defense and is still needed for appeal. This Brady violation led to unlawful convictions for Chief Deputy Bolton in this case for Counts 2, 3, 4, 5, 6, 7, 8, 9 and 10 and also resulted in Chief Deputy Bolton owing unlawful restitution, fines, and being unlawfully sentenced to incarceration for these unlawful count convictions.

The report of an interview between the Government and its key witness against Chief Deputy Bolton, named John Lee, was first mentioned <u>several weeks after trial</u> in Chief Deputy Bolton's Presentencing Report (PSR) that contain previously <u>undisclosed</u> information to the Defense and to the Court about an interview of John Lee that calls into question some of the crucial testimony that the Government's Summary Witness, I.R.S. Special Agent Bradley Luker gave at the Boltons' trial. Agent Luker and an FBI Agent conducted an interview with John Lee in which Lee provided information that conflicts in significant measure with Agent Luker's testimony about what John Lee told him. The Defense was **not** informed about this matter, and any reports of that interview, as well as all reports of any other interviews of John Lee and any notes or documents reflecting other information he provided to the Government should have been disclosed to the Defense. The report of the interview discussed in paragraphs 22-24 of the PSR was provided to the Probation Officer by the Government's Summary Witness, I.R.S. Special Agent Bradley Luker or the Government**.** Given the apparent conflict between Agent Luker's testimony about what John Lee stated to the Government and the report of the John Lee interview as described in the PSR, it is important for the Defense to determine the extent to which Agent Luker's testimony contradicts the reports of what John Lee actually said to the

Government. This Brady violation for newly discovered information constitutes the need for a new trial and to vacate Chief Deputy Charles Bolton's conviction of Counts 2, 3, 4, 5, 6, 7, 8, 9, and 10 and sentence of incarceration due to the legal violations and the interest of justice in this case. This discovery violation was not known until after the time ran for filing post-trial motions.

Attorney Owen should have timely objected to this major discovery violation under *Brady v. Maryland*, 373 U.S. 83 (1963) as soon as he received and reviewed Chief Deputy Bolton's Presentencing Report regarding the Government's failure to disclose and produce the John Lee Interview Report and all other reports of John Lee interviews and information provided by John Lee to the Government, including any FBI interview forms and I.R.S. Interview Memorandums. He failed to do so. The Supreme Court has made clear that "Brady material" must be turned over to the defense in a timely manner, whether the defense requests it or not, and that a prosecutor's good faith efforts to comply do not shield the state from a "Brady violation."

The Supreme Court has also held that "Brady material" includes not only affirmatively exculpatory evidence but also impeachment evidence and any consideration a witness may receive; it also includes evidence in the possession of law enforcement, even if prosecutors themselves do not possess it or even know about it.

This Brady violation led to unlawful convictions in this case for Counts 2, 3, 4, 5, 6, 7, 8, 9 and 10 since John Lee's alleged statements he made to the Government and testified to by Agent Luker were the key evidence used against Chief Deputy Bolton at trial since John Lee plead the Fifth and did not attend the trial. This resulted in Chief Deputy Bolton owing unlawful restitution, fines, and being unlawfully sentenced to incarceration for these unlawful Counts 2, 3, 4, 5, 6, 7, 8, 9 and 10.

The Government most recently was found to have withheld a as outlined in Motions for New Trial and Discovery filed by Counsel for Linda Bolton [128] and [129], and that were joined by Counsel for Chief Deputy Charles Bolton [140] and [141]. The Court denied the motion.

Agent Luker further testified at the tax trial of Mr. and Ms. Bolton, that a Title 26 Investigation of John Lee, PA started in March 2015, and that the investigation of John Lee, PA is still ongoing, *(Exhibit 12), Vol II, p.11, Lns 6-10*. He testified that John Lee was interviewed in the investigation of Charles and Linda Bolton, before he had asserted his Fifth Amendment Privilege. The Government did not provide a copy of the interview summary of the interview of John Lee by the Government to the Defense, a violation the discovery rules under the Federal Rules of Criminal Procedures. Without Lee testimony at trial this constitutes hearsay, and therefore, the testimony of Agent Luker is inadmissible.

Charles and Linda Bolton were ***denied their guaranteed rights to due process under the 6th Amendment to the U.S. Constitution*** that sets out the rights for defendants during a criminal prosecution, including the right of the accused to confront their accusers. The relevant text of the Confrontation Clause of the 6th Amendment reads as follows:

**"In all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him".**

The 14th Amendment has made the 6th Amendment's right to confrontation applicable to state court as well as federal court. The confrontation clause guarantees criminal defendants the opportunity to face the prosecution's witnesses (such as John Lee) in the case against them and dispute the witnesses' testimony. This guarantee applies to both statements made in court and statements made outside of court that are offered as evidence during trial.

To date, the Government has failed to indict John Lee (although he was the alleged initial target of a Title 26 investigation) and who Internal Revenue Service Special Agent Bradley Luker has provided sworn testimony that it is the Government's contention that John Lee has falsified his tax returns.

There were **other named individuals** who cashed checks for John Lee (some in greater amounts documented on the John Lee, PA Ledger introduced into evidence, however; none of these individuals have been indicted or prosecuted. A business record from John Lee, PA produced as evidence at the trial of Linda and Chief Deputy Charles Bolton documents payments and cashed checks alleged by John Lee and filed on his tax return alleging these monies were for the "purchase of office supplies." A Summary of an excerpt from this documentary business record evidence introduced at trial is as follows:

| Name Identified on Ledger Who Cashed Checks | Amount of Checks Cashed | Listed as Purchase of "Supplies" | Tax Year |
|---|---|---|---|
| Helen Moreland | $6,000.00 | Yes | 2010 |
| John Lee Jr. | $16,775.00 | Yes | 2010 |
| Marvin Shemper | $36,625.00 | Yes | 2010 |
| Sam Shemper | $8,000.00 | Yes | 2010 |
| Adlers Jewelers | $12,500.00 | Yes | 2010 |
| Adlers Jewelers | $12,650.00 | Yes | 2012 |
| Bancorp South | $45,000.00 | Yes | 2010 |
| Helen Sims | $27,671.00 | Yes | 2010 |

Helen Moreland, an employee of John Lee, PA, testified at the trial of Charles and Linda Bolton that John Lee wrote checks and gave to her and other office staff to cash for him and that she gave him the cash, *Vol III, Trial Transcript,* September 15, 2016, pps.441 Lns 11-25 to page 448, Lns 1-25, (*Exhibit 13*). She also testified that she deposited some of the cash into her personal bank account, and that John told her to write "supplies" on the business ledger when she knew the checks were not for purchase of supplies. *Vol III, Trial Transcript,* September 15,

2016, p 440, Lns 2-5, and pps.441 Lns 13-18, *(Exhibit 14)*.  However, the Government did not indict Helen Moreland for under reporting income as they did Charles and Linda Bolton for cashing checks for John Lee and returning the cash to him**.**

Copies of the full John Lee, PA Business Ledgers for Tax Years 2009-2013 are attached at ***Exhibit 15***.

The Government knew that John Lee, who was the main witness against the Boltons, was the target of a Title 26 <u>tax fraud investigation,</u> and that based on the evidence, that was it was he who had committed tax fraud and not Chief Deputy Charles Bolton; and that Lee recorded checks he wrote to several individuals including but not limited to office staff, friends, family members and jewelry stores, as purchased for office supplies.  Even after Special Agent Luker testified at trial that the IRS was in the process of an open, ongoing Title 26 investigation of John Lee, for his fraudulent tax returns, the Government used fraudulent tax return information attributable to John Lee to convict the Boltons, and the Court failed to declare a mistrial in the Boltons' case under Rule 29 on motion from their attorneys but instead stated the checks were valid for the Boltons.

2. The Government <u>violated the Brady rule again</u> when they <u>introduced photographs for the first time during trial</u> which had never been given to the Defense prior to trial and not produced during discovery. The photographs were of unmarked liquor and unmarked boxes alleged to be from John Lee's home which the Government's summary witness, Bradley Luker alleged was from Chief Deputy Bolton's business, Hall Avenue. These photos were taken two years <u>after the date</u> (2015) of alleged alcohol purchases associated with the indictment of Chief Deputy Bolton which ended with tax year 2013. These photographs brought into the courtroom

shortly before jury deliberations and were given to the jury and they used them in their decision-making regarding the verdicts against Chief Deputy Bolton.

In fact, Linda Bolton's replacement Counsel (Lisa Ross) retained following the Court's disqualification of Paul Holmes and James K. Dukes, offered to the Court that she wanted to introduce defense photos during the August 30, 2016, Pretrial Teleconference, but the Court told her that time for that was out. *Transcript of* Telephonic Pretrial Conference, Aug 30, 2016, p.7, Lns 11-12**, (Exhibit 16**).

Attorney Owen labored under a conflict of interest and was ineffective when he failed to object to the introduction of this false evidence and the photos were allowed into evidence by the Government and given to the jury for use in their deliberations, which was prejudicial and ultimately resulted in false "guilty" verdicts against Chief Deputy Bolton for Counts 2, 3, 4, 5, 6, 7, 8, 9 and 10 and resulted in Chief Deputy Bolton owing unlawful restitution, fines, and being unlawfully sentenced to incarceration for these unlawful Counts 2, 3, 4, 5, 6, 7, 8, 9, 10.

3. Attorney Owen was ineffective when he failed to raise issues that would have reduced Chief Deputy Bolton's tax deficit liability and could have opposed the introduction of inadmissible evidence, such as the Government's summary charts, under *Brady*.

a. Attorney Owen also did not object to the Government's evidence not being produced to the Defense until approximately midnight of the day of trial and the use of this evidence (the government's summary charts and calculations in the summary charts of the alleged tax loss that Chief Deputy Bolton owed to the IRS) as a result of his conflict of interest and divided loyalties. Attorney Owen should have objected to this major discovery violation under *Brady v. Maryland*, 373 U.S. 83 (1963) with the Government's late submission of summary charts. The Supreme

Court has made clear that "Brady material" must be turned over to the defense in a timely manner (not on the eve of trial as was true in this case), whether the defense requests it or not, and that a prosecutor's good faith efforts to comply do not shield the state from a "Brady violation."

The Supreme Court has also held that "Brady material" includes not only affirmatively exculpatory evidence but also impeachment evidence and any consideration a witness may receive; it also includes evidence in the possession of law enforcement, even if prosecutors themselves do not possess it or even know about it. The summary charts produced by the Government contained incorrect tax deficiency calculations and the methodology used by the Government to calculate the alleged tax deficiencies was inconsistent.

However, these summary charts were admitted (and contained tax deficiency calculation errors) when they should not have been, and were ultimately provided to the jury, which in turn, used them in their deliberations and to reach its faulty "guilty" verdicts against Chief Deputy Bolton.

b. Attorney Joe Sam Owen was ineffective due to his conflict of interest and divided loyalties when he failed to oppose information in the Government's summary charts regarding the Government's tax deficiency calculations. The Government provided "false tax deficient" calculations *that the Prosecution Knew were False*. The Government's witness knew the charts were erroneous and he later revised some of the charts after the trial which he included in Chief Deputy Bolton's Pre-Sentencing Report. The jury had already used this erroneous information in reaching faulty verdicts. This led to illegal and unjust convictions for Chief Deputy Bolton for Counts 2, 3, 4, 5, 6, 7, 8, 9, and 10 and associated restitution, fines and incarceration judgment.

The information was not challenged by Joe Sam Owen and was never verified by the Court for accuracy prior to going to the jury as is required by law**. *Tr. Teleconference Call 8/30/16 at 25, Line 25*, *Tr. Teleconference Call 8/30/16 at 26, Lines 1-2* (*Exhibi*t **17**).

c. The trial court did not review and test the accuracy of the summary charts before they were presented by the Government's witness, Bradley Luker at trial.  Specifically, the Court did not conduct any proceedings to verify the authenticity and relevance of this evidence, which was in violation of the Federal Rules of Evidence 1006 and 611 (a). The significance of this judicial decision not only allowed exculpatory evidence containing major computation errors to be introduced into the Court's record related to the Boltons' alleged tax liability, but it also led to an illegal and unjust verdict for Chief Deputy Bolton for Counts 2, 3, 4, 5, 6, 7, 8, 9, and 10 as they were given to the jury prior to deliberations, which then led to an illegal sentence in this case.

Further, the trial court must ensure that the summaries be produced or made available to the other parties at a reasonable time before the summary is offered into evidence, Fed. R. Evid. 1006. In the Bolton's case, the summary charts were not produced until approximately midnight of the date the trial started on September 13, 2016 which violates Fed. R. Evid. 1006. ***Tr. Teleconference Call 8/30/16 at page 6, Lines 14-18****. (**Exhibit 18**)*.  The issue of the Summary Charts had been discussed prior to trial during a Telephonic Pretrial Conference on August 30, 2016 between the Government and Defense Counsel.  During that telephonic pretrial conference and discussion regarding discovery issues, the Government's Prosecutor, Fred Harper, informed the Court that the Government's Summary Charts were not finalized and not yet submitted.

**THE COURT**:  All right.  From the government's

standby as far as Chief Deputy Charles Bolton is concerned, Fred, have

you furnished everything that you're obligated to furnish to

the defendant Chief Deputy Charles Bolton?

**MR. HARPER**:  Yes, Your Honor.
And as we have covered a few things which we had not
delivered previously, we have delivered them as soon as we got
our hands on them to the defense.

We have not finalized our summary charts, our charts yet,
 those are coming.  We're working on them and I hope to have
them out very soon.

**THE COURT**:  All right.  If there is any problem with that -

**MR. HARPER**:  Some of the things, Judge, that caused
that delay were the discovery of things such as the Holmes
checks and the Dukes checks.  That changed the numbers a little
bit, and so we had to redo the, redo the charts.

*Transcript of* Telephonic *Pretrial* Conference, Aug 30, 2016 p.6, Lns 6-22, *(**Exhibit 19**).*

When asked by Defense Counsel for Linda Bolton when the Charts would be ready, Fred

Harper stated on the record that the charts would be ready no later than Friday, September 2,

2016. *Transcript of Telephonic Pretrial Conference*, August 30, p.8, Lns 17-23, *(**Exhibit 20**).*

The Court stated on the record during the August 30, 2016, telephonic pretrial teleconference

that if the discovery deadlines were not met evidence would not be allowed in. *Transcript of*

*Telephonic Pretrial Conference*, Aug 30, 2016, p.10, Lns 14-18. *(**Exhibit 21**).*

The Court also stated that if the evidence was not disclosed, it very likely would not come in and

told the parties to make sure they disclose evidence to the other side.  ***Tr. Teleconference Call***

***8/30/16 at page 10, Lines 12-18, (Exhibit 22).***  However, this evidence was allowed to come in

by the Court and the Government failed to submit this evidence to the Defense until day of trial

in violation of Fed. R. Evid. 1006. Joe Sam was ineffective in that he failed to oppose and file a

subsequent motion for this Brady violation.

The party introducing the summary charts must make the underlying documents

reasonably available for inspection and copying; and the charts must be accurate and

nonprejudicial. The Government did not make the summary charts available to Chief Deputy Bolton before trial and the Government's witness, Bradley Luker's summary charts contained false, misleading and erroneous information and the jury based their verdict on them which was prejudicial to the Boltons' because they received adverse verdicts which violated Fed. R. Evid. 1006.

d. The Government Summary Witness, Special Agent Bradley Luker, presented summaries of evidence already presented to the jury. Allowing the use of a summary of already admitted evidence would, in effect, allow a proponent to potentially repeat its entire case shortly before deliberations to the jury. *United States v Whitfield*, 590 F. 3d 325, 364 (5th Cir. 2009) (court should avoid the use of a summary of previously admitted evidence to simply repeat the entire case shortly before jury deliberations).

The summary charts should not have been allowed to be admitted into evidence. Attorney Owen's performance was deficient because he did not object to the late submission of the Summary Charts and failed to file a motion to object to this evidence which proved prejudicial to Chief Deputy Charles Bolton and led to "faulty guilty verdicts" against him and restitution, fines, and incarceration judgment.

**CONFLICT OF INTEREST BY ATTORNEY JOE SAM OWEN CAUSED INEFFECTIVE ASSISTANCE OF COUNSEL DURING THE SENTENCING PHASE**

**1. <u>Chief Deputy Bolton Objects to the PSR characterization that he was arrested on March 31, 2016.</u>** Chief Deputy Charles Bolton was not arrested on March 31, 2016 as stated in the report. Instead, Chief Deputy Bolton was notified by Bradley Luker that he had been indicted.

**RESTITUTION UNDER TITLE 26 IS NOT PERMITTED**.  The uncharged relevant conduct is not part of any supervised release and attempting restitution for uncharged conduct for 2001 through 2011 as part of the Title 26 conviction and sentence is not permitted since the Government did not pursue the uncharged conduct.  The uncharged conduct was investigated as a Title 18 USC offense and not a Title 26 tax offense.  Further, the Government is time barred from pursuing the uncharged conduct as a tax offense for 2001 to 2011.  Further, the Government cannot pursue the uncharged conduct for 2012 to 2013 or any alleged tax deficiency due to its own witnesses that Chief Deputy Bolton was not a part of any alleged conduct for this timeframe.  Per the 5th Circuit, a defendant cannot be charged for conduct that they were not a part of, or any conduct withdrawn from.

In *United States v Ekanem*, 555 F.3d 172 (5th Cir. 2009). A defendant's "mere awareness" that another is operating a similar criminal scheme is insufficient to hold the defendant responsible for another's actions.  In this case, the court refused to find that the defendant was likewise responsible for the loss created by another individual.

In *Unites States v Schorovsky*, Ms. Schorovsky met her burden of proof by establishing that she affirmatively acted inconsistent from others and withdrew from others who were involved in a conspiracy and her sentence was vacated and remanded for resentencing (5th Cir. 2000).

**2. <u>Chief Deputy Bolton objects to the PSR and the final offense level of 18</u>**.

**Case Law:  the United States vs. Booker is the prevailing law concerning sentence enhancement for crimes other than those found guilty by a jury.**

This opinion comes from the consolidation of two cases dealing with sentencing enhancement. It is in violation of the Sixth Amendment right to a trial by jury to allow a judge to enhance a sentence using facts not reviewed by the jury. Following sentencing guidelines, a federal district court judge enhanced Booker's sentence based on the facts the judge determined. Booker appealed the enhancement as in violation of his Sixth Amendment rights. In another case, according to sentencing guidelines, Fanfan could have been given an enhanced sentence, but the judge decided not to enhance, due to Supreme Court case law that rules the Sixth Amendment right to trial by jury requires judges to use only the facts proved to a jury to increase a sentence beyond the standard range. In that case, the government sought an appeal, and both cases were consolidated for decision.

All nine justices in *Booker* agreed that, at least as to elements of crimes of which the defendant is accused, the jury must confirm the truth of every accusation. 543 U.S. at 239; *id.* at 327-28 (Rehnquist, C.J., dissenting). Indeed, the Framers could not have intended to guard against governmental oppression through criminal juries with ultimate power to confirm or reject the truth of every accusation, to acquit even in the face of guilt, and to partially acquit to lessen unduly harsh punishment, only to allow an administrative agency, prosecutor and judge to then nullify the jury's acquittal. Doing so eviscerates the "fundamental reservation of power" in the jury and prevents it from "exercis[ing] the control that the Framers intended." *Blakely*, 542 U.S. at 306. And doing so by ignoring the "[e]qually well founded ...companion right to ... proof beyond a reasonable doubt" is no answer. *Apprendi*, 530 U.S. at 478. Like other "'inroads upon the sacred bulwark of the nation," the logical possibility that different standards of proof applied by jury and judge might produce different results is "fundamentally opposite to the spirit of our constitution.'" *Booker*, 543 U.S. at 244, quoting 4 Blackstone 343-44.

**C. Application of the Tax Table to § 7201. The application of the sentencing table For Tax Evasion does not apply to Deputy Chief Bolton in this case.**

Deputy Chief Bolton was found not guilty of Count I, for 7201 Income Tax Evasion). His wife (Linda Bolton) was declared as a mistrial for Counts 2-4, which warrants a downward adjustment of the offense level for both Linda and Charles. A downward adjustment is also necessary because the Filing of a False Tax Return is a sub element of the Attempt to Evade or Defeat a Tax. ***Schmuck v. United States*, 489 U.S. 705 (1989) (one offense is necessarily included in another** only where the statutory elements of the lesser offense are a subset of the elements of the charged greater offense).

**Count 1-5**: **Attempt to Evade or Defeat Tax**

The way this case was charged, it included duplicate charges for Filing a False Tax Return because the statutory elements of this lesser offense are a subset of the elements of the charged greater offense (Attempt to Evade or Defeat a Tax). Current Tax Policy states that **where a failure of proof on the tax deficiency element would also constitute a failure of proof on the false return charge**, nothing generally would be gained by charging violations of both Section 7201 and 7206.

Therefore, any verdicts where Chief Deputy Bolton was found not guilty of tax evasion would also result in a verdict of not guilty for the duplicative indicted charge for filing a false tax return. But where the facts supporting the statutory violations are duplicative (*e.g.*, where the only affirmative act of evasion is the filing of the false return), separate punishments for both offenses should not be requested. ***United States v. Doyle***, 956 F.2d 73, 74-75 (5th Cir. 1992);

In the case of Linda Bolton, the jury declared a mistrial on the remaining four (4) tax evasion Counts (Count 2, 3, 4, and 5). The same verdict applies to Deputy Chief Bolton. No

separate assignment of sentencing guideline levels are permissible because the Filing of a False

Tax Return is a subset of the element of the Tax Evasion Charge.

**The Summary Tax Table** shows that the base level for violation of 7206.

| Tax Year | Violation Filing of a False Tax Return | Tax Deficiency | Assignment Level Sentencing | Remarks |
|---|---|---|---|---|
| 2009 | 7206 Count 6 | $ 0 | 0 | **"Not Guilty"** Verdict for Tax Evasion. Therefore **"Not Guilty"** of Filing of a False tax Return Based on Fact it is a Statutory Sub element of Tax Evasion. Tax Evasion Charge no included in Special Agent Report (SAR) for Prosecution |
| 2010 | 7206 Count 7 | $ 0 | 0 | (2010 Tax Year Already Subjected to Civil Audit of Boltons By IRS. The Boltons already resolved and paid any taxes due and the Boltons' File for 2010 Closed by the IRS. Statute of Limitations Expired. (<25% of Gross Income). Loans already Accounted For On Tax Return on Sched C. Therefore, no tax evasion occurred or filing of a false return. No assignment of level for sentencing purposes. |
| 2011 | 7206 Count 8 | $0 | 0 | **"Not Guilty** "of Filing of a False tax Return Based on Fact it is a Statutory Sub element of Tax Evasion. Not a Separate Charge (<25% of Gross Income). Loans already Accounted For On tax Return on Sched C. Therefore, no tax evasion occurred or filing of false return occurred. No assignment of level for sentencing purposes. |
| 2012 | 7206 Count 9 | $0 | 0 | **"Not Guilty** "of Filing of a False tax Return (<25% of Gross Income). Loans already Accounted For On tax Return on Sched C. Therefore, no tax evasion occurred. Therefore, no tax evasion occurred or filing of false return occurred. No assignment of level for sentencing purposes. |
| 2013 | 7206 Count 10 | $0 | 0 | **Not Guilty** "of Filing of a False tax Return (<25% of Gross Income). Loans already Accounted For On tax Return on Sched C. Tax Evasion no included in SAR for Prosecution Therefore, no tax evasion occurred. No assignment of level for sentencing purposes. |

Deputy Chief Bolton also objects to the inclusion of offenses alleged as relevant conduct

for sentencing purposes. The convictions in this case fail to comply with sentencing guidelines,

because there is no tax deficiency, the defective charges in the indictment render the convictions

unlawful, and evidence that show income was properly accounted for as income on schedule C of the Boltons tax returns, there is also nothing in the legislative history of the Sentencing Reform Act (SRA) to support the use of <u>uncharged and acquitted offenses</u> in calculating the guideline range, and much that indicates this was contrary to congressional intent. The House Judiciary Committee explicitly rejected the form of "real offense" sentencing contained in USSG § 1B1.3: "The legislation does not authorize, nor does the Committee approve of, the use of sentencing guidelines based on allegations not proved at trial.

Additionally, 18 U.S.C. § 3661 – often cited as support for the use of uncharged and acquitted crimes to calculate the guideline range – says no such thing. Indeed, § 3661 does not say that unlimited information, much less uncharged and acquitted offenses, may or must be used in calculating a determinate guideline range.[2]

The conflict of interest that Attorney Owen labored under damaged attorney-client relationship between Attorney Joe Sam Owen and Chief Deputy Bolton decided to retain other Counsel to assist with the Sentencing Phase of his case and his upcoming Sentencing Hearing scheduled for March 17, 2017. This action was prompted by the fact that Attorney Owen failed to provide all corrections requested by Deputy Chief Bolton to the Presentencing Report, the first Addendum to the Presentencing Report (PSR) and failed to timely notify Charles Bolton and failed to respond to a late submission of a Second Addendum to the PSR that was submitted by the Probation Office to Attorney Joe Sam Owen less than one week before the Sentencing hearing, a violation of Rule 32 of the Federal Rules of Criminal Procedures, and that Attorney Owen did not inform Chief Deputy Bolton had been revised until Sunday, March 12, 2017, before the scheduled sentencing hearing (March 17, 2017) in his case, and he did not provide a

---

[2] On its face, § 3661 does not include uncharged or acquitted crimes in "conduct of a person." Under the "rule of the last antecedent," a limiting phrase ("convicted of an offense") is read as modifying the phrase it immediately follows ("conduct of a person").

response to the second addendum to the PSR on behalf of Deputy Chief Bolton.  Deputy Chief

Bolton was not given an opportunity to respond to the contents of the revisions to the 2nd

Addendum to the PSR and <u>Joe Sam failed to object to the PSR being filed out of time and failed</u>

<u>to object on behalf of Charles Bolton to the enhancement and other information harmful to Chief</u>

<u>Bolton in the report</u>, which were later adopted by the Court and used for the sentencing of

Deputy Chief Bolton to a an enhanced term of imprisonment.  Deputy Chief Bolton objects to

the final Addendum since it was filed in violation of Rule 32 of the Federal Rules of Criminal

Procedures and hereby move the Court to discard the PSR based on the 1st Addendum which did

not conform to law and the 2nd Addendum which was filed late, and provided <u>new tax </u>loss

calculations with no opportunity for Deputy Chief Bolton to respond to the report be stricken

from the record.

After learning of Chief Deputy Bolton's plan to hire new Counsel from AUSA, Fred

Harper, who had been contacted by prospective new Counsel for Charles Bolton to seek

additional time for new Counsel to enroll and assist with the sentencing of Chief Deputy Bolton,

Attorney Owen called him and was reported by Deputy Chief Bolton to have threatened him by

stating that he did not know who he was messing with of which Chief Deputy Bolton perceived

as a threat.  It was at this point that Chief Deputy Bolton knew the attorney-client relationship

had been irreparably harmed to the extent that he felt he could no longer be represented by

Attorney Owen.

On March 14, 2017, Chief Deputy Bolton formally terminated Attorney Owen as his

Counsel.  A copy of the letter terminating Attorney Owen and the law firm of Owen, Galloway

and Myers, LLC representation by Deputy Chief Bolton is provided at ***Exhibit 23.***  Attorney

Owen refused to file a motion to withdraw and showed up to Court on the day of the Sentencing

Hearing on Friday, March 17, 2017. Chief Deputy Bolton's newly retained Counsel also appeared at Court on the day of the sentencing hearing but he was not prepared to represent Chief Deputy Bolton due to the short time he had been retained and the hearing date, and because he was from out of State and needed to file an application for Pro Hac Vice to enter the case.

Attorney Owen was ineffective because he labored under a conflict of interest that caused him not to prepare and submit a sentencing memorandum to mitigate the sentencing levels recommended in the PSR and two addendums to the PSR for Charles Bolton, which included a two level enhancement recommendation that was inconsistent with established law and the Sentencing Guidelines.

Attorney Owen also did not prepare or plan to call character witnesses to testify on Chief Deputy Bolton's behalf at sentencing.

. The Court held a Presentencing in Chambers Proceeding in Judge's Chambers to discuss the matter of Attorney Joe Sam's termination. Attorney Owen made derogatory statements with connotations of violence to Chief Deputy Bolton by stating that "He shot himself in the foot because he undid everything I was trying to do". I take that back. "He blew off both legs, because what he doesn't know, and Fred will tell you, I was…" In Chambers Proceeding *Transcript of 3/17/2017, Page, 35, Lns 23-25, (**Exhibit 24**)*. Also present during the hearing was a Public Defender, Mr. Joiner.

Despite his termination as Counsel for Chief Deputy Bolton, he attended the in Chambers Pre-Sentencing Hearing and stated that he.to "protect his interest". In Chambers Proceeding *Transcrip*t of 3/17/2017, Page, 14, Lns 19-25, (**Exhibit 25**). The Court informed Attorney Huntley he could not participate in the proceeding when he informed the Court he had not been

yet admitted.  In Chambers Proceeding Transcript of 3/17/2017, Page, 5, Lns 10-13, *(Exhibit 26)*.

If the Court cannot apportion an actual conflict of interest existed in the representation of Chief Deputy Bolton based on the evidence already provided in this motion, there is no doubt that the events that occurred chambers when Attorney Owen labored under a conflict of interest caused his ineffectiveness as Counsel for Chief Deputy Bolton, it was certainly at the point when he stated he was there to protect his "interests" and that he and Mr. Galloway had spent a great deal of time figuring out how to protect  "ourselves from what was going on."  In Chambers Proceeding Transcript of 3/17/2017, Page, 14, Lns 8-25, and page 26, Ln 1, *(Exhibit 27)*.

The Report rendered by Attorney Clark at *Exhibit 1* further confirms that Owens labored under a conflict of interest that led to his ineffectiveness as Counsel for Chief Deputy Bolton. Although Chief Deputy Bolton requested the Court conduct a Garcia Hearing to inquire as the effectiveness of his counsel, the Court denied Chief Deputy Bolton requests for a Garcia Hearing.  This coupled with Attorney Owen's direct statements to Chief Deputy Bolton in chambers in which he stated Chief Deputy Bolton "shot himself in the foot because he undid everything I was trying to do.  I take that back.  He blew off both legs because what he doesn't know I was constantly advocating for him."  In Chambers Proceedings Transcript of 3/17/2017, p37, Ln 1, *(Exhibit 28)*.

Further, Joe Sam Owen was ineffective as Chief Deputy Bolton's counsel when he failed to respond to an Addendum to the Presentencing Report issued only a week before the March 17, 2017 Sentencing Hearing.  Chief Deputy Bolton stated that he believed Joe Sam Owen had the Presentencing Report amended after he was terminated.  Joe Sam Owen did not provide Chief Deputy Bolton with a copy of this new Addendum to the PSR until four days prior to the

Sentencing Hearing scheduled for March 17, 2017 and only after he was terminated by Chief Deputy Bolton. Joe Sam Owen held this document and did not disclose to Chief Deputy Bolton that he had an Addendum and did not respond to the Addendum, resulting in Chief Deputy Bolton being given a judgment of higher penalties, interests, restitution for Counts 1, 2, 3, 4, 5, 6, 7 8, 9 and 10. Chief Deputy Bolton also received an enhanced sentence of incarceration of an additional year as a result of Joe Sam Owen's ineffective assistance and vindictive actions. In Chambers Proceedings *Transcript of 3/17/2017, p16, Lns 3-25, and p 17, Lns 1-7, (**Exhibit 29**).*

The Court denied Chief Deputy Bolton Bolton's motion for an extension of time for the Sentencing Hearing to allow his new Counsel an opportunity to prepare for his sentencing. In Chambers Proceedings *Transcript* of 3/17/2017, p37, Ln 1, (***See Exhibit 28***). The Court erred when it did not allow Chief Deputy Bolton to be represented by Counsel of his choice at sentencing and when the Court did not allow additional time to prepare for sentence, especially since the criminal charges in this case carried a possible term of imprisonment.

The Court also erred when the Court stated to Joe Sam Owen that "irrespective of your personal feelings, that you can put that aside and you can do what you need to do," In Chambers Proceedings *Transcript* of 3/17/2017 Page 37, Lns 18-19, (***Exhibit 30***). Allowing Attorney Owen to proceed as Attorney for Chief Deputy at the Sentencing Hearing despite the fact that he had been terminated as his Counsel in advance of the Sentencing hearing, Chief Deputy Bolton was placed in a position of not having an attorney of his choice to represent him at the hearing, thereby violating his guaranteed rights under the Sixth Amendment of the Constitution of the United States Counsel of Choice and Counsel free of Conflict.

Further, the Court denied the motion for continuance to allow time for new Counsel to prepare for representation of Chief Deputy Bolton at Sentencing and allow time for him to enroll

Pro Hac Vice, and denied Chief Deputy Bolton's request that the Court conduct a Garcia hearing to determine the merits of the conflict of interest of his Counsel, Joe Sam Owen, and physical and other threats he made to Charles Bolton which led to his termination of Joe Sam. Consequently, Chief Deputy Charles Bolton did not have competent and conflict free Counsel at this Sentencing Hearing, and ultimately was not represented by counsel of choice and free of conflict at the sentencing. The Fifth Circuit precedent in United States v. Taylor, 933 F.2d 307 (5th Cir.), cert. denied, 502 U.S. 883, 112 S.Ct. 235, 116 L.Ed.2d 191 (1991), and later upheld in United States v. Pollani ruled that Pollani was deprived of his right to counsel and reversed his convictions. Further the Fifth Circuit ruled that the Constitution protects Pollani's right to counsel under these circumstances that the right to counsel occupies an elevated status among fundamental constitutional rights. See, e.g., Gideon v. Wainwright, 372 U.S. 335, 342-43, 83 S.Ct. 792, 795-96, 9 L.Ed.2d 799 (1963); Powell, 287 U.S. at 68, 53 S.Ct. at 63. Pollani was deprived of that right, and the fundamental nature of that violation means that the convictions must be reversed without regard to whether Pollani suffered any prejudice. See, e.g., United States v. Cronic, 466 U.S. 648, 659 & n. 25, 104 S.Ct. 2039, 2047 & n. 25, 80 L.Ed.2d 657 (1984).

New Counsel for Chief Deputy Charles Bolton informed the Court on March 17, 2017, the day of sentencing, that a continuance was critical because they knew they could not adequately be prepared to handle any sentencing that was set for today." In Chambers *Transcript of 3/17/17* page 26, Lns 13-16, (**Exhibit 31**). Although present for the In Chambers Proceedings and the sentencing hearing, new counsel for Chief Deputy Charles Bolton (Willie Huntley) was unable to assist him at the Sentencing hearing due to not having time to prepare.

During the period before and after to the Sentencing Hearing of March 17, 2017, Attorney Owen violated Chief Deputy Charles Bolton's attorney-client privilege by filing motions with the Court on March 15, 2017, in advance of the Sentencing Hearing [Doc 115], and after the sentencing hearing, filed a motion on March 20, 2017 [Doc 155 ] requesting the Court permit him to file attorney-client confidential information pertaining to Chief Deputy Charles Bolton be filed under seal, and although Chief Deputy Charles Bolton through Counsel, opposed his initial motion requesting attorney client privileged information be deemed waived. The Court issued an order [Doc 159] on March 21, 2017 approving Attorney Joe Sam Owen Motion to file Documents under seal [Doc 159]. The Court later issued an order denying Attorney Joe Owen to deem attorney client privilege waived, without prejudice [Doc 168], but not before Joe Sam Owen had already filed and released attorney client privileged communications for Chief Deputy Charles Bolton into the Court record under seal. The Court granted Attorney Owen motion to withdraw as Counsel for Chief Deputy Charles Bolton on March 29, 2017 [127].

Attorney Joe Sam Owen violated Chief Deputy Charles Bolton's attorney-client privilege when he released information regarding their confidential communications into the record. Chief Deputy Charles Bolton did not consent or waive his attorney client privilege as it relates to Joe Sam Owens, his former attorney. In fact, Chief Deputy Charles Bolton formally terminated Joe Sam Owen in writing on Tuesday, March 14, 2016, and has subsequently asked Attorney Owen to motion the Court to withdraw his appearance. Mr. Owen was instructed in writing in the termination letter that he is not to communicate with the Court, the Government, or any other parties regarding his case, without Chief Deputy Charles Bolton's express written consent.

The ethical duty of client-lawyer confidentiality is quite extensive in terms of what information is protected. It applies not only to matters communicated in confidence by the client

but also to all information relating to the representation regardless of whether it came from the client himself, or from another source. It applies in all situations, though a lawyer may be required to testify regarding client communications under compulsion of law. There is no circumstance that currently exists at the present time for Attorney Owen to testify regarding the remaining proceedings concerning Chief Deputy Charles Bolton's criminal case. Additionally, he has not been subpoenaed to do so and is no longer an attorney representative for Chief Deputy Charles Bolton.

Confidential information is to remain confidential throughout the representation, and thereafter, even after the death of the client. Along with the basic principle of maintaining the privacy of client information, a key precept of ethically maintaining confidentiality is that the information not be used to the detriment of the client, but rather only to advance the client's interests. Even information gained about the client after the representation has concluded is to be kept confidential. As such, the attorney may neither be compelled to nor may he or she voluntarily disclose matters conveyed in confidence to him or her by the client for the purpose of seeking legal counsel. Likewise, the client may not be compelled to testify regarding matters communicated to the lawyer for the purpose of seeking legal counsel and has been articulated by Courts.[3]

The attorney-client relationship between Chief Deputy Charles Bolton and Joe Sam Owen has been clearly established. The person making the communication, therefore, must be a

---

[3]The description by Judge Wyzanski in United States v. United Shoe Machinery Corp., 89 F. Supp. 357, 358-59 (D. Mass. 1950), is frequently cited as the definition of the essential elements for a finding of attorney-client privilege: The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or(iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed arid (b) not waived by the client.*Id*

client in order to claim the privilege."[4] In addition, the communication must be made to an attorney, acting in his legal capacity,[5] or to his subordinate." Finally, the privilege exists only if it has not been waived. "Since the client, and not the attorney, holds the privilege, the client holds the ultimate authority to assert it or waive it".

The application of the attorney-client privilege is a "question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents." **Hodges, Grant & Kaufman v. United States Government**, 768 F.2d 719, 721 (5th Cir. 1985).

Releasing confidential attorney client privilege information into the court record pertaining to Chief Deputy Charles Bolton by Joe Sam Owen was harmful to him, and motivation to protect his self- interests over the interest of his former client, Chief Deputy Charles Bolton.  This action was prejudicial and was taken to harm Chief Deputy Charles Bolton.  Additionally the action by Attorney Owen further documents an actual conflict of interest existed, and that he did not official standing in the Court to file such an action.

Attorney Owen's participation in the Sentencing Phase of Chief Deputy Charles Bolton's Case was a clear actual conflict of interest and rendered Joe Sam Owen ineffective and was prejudicial because it led to an enhancement level of an additional term of imprisonment, fines, and monetary restitution for Charles Bolton.  Having already gone on the record in advance of the sentencing hearing during the in chambers proceedings that he was there to protect his own interests as opposed to protecting the interests of Chief Deputy Charles Bolton, there were no zealous effort to mitigate the sentence of Chief Deputy Charles Bolton presented by Attorney Owen.  He did not present any witnesses or available evidence to refute the government charges against Chief Deputy Charles Bolton, and he did not present any character witnesses to speak

---

[4]*See supra* notes 44-45. *See also WIGMORE, supra* note 2, 5 2317, at 618-19

[5] S*ee supra* notes 44-45. *See also* WIGMORE, *supra* note 2, 5 2300, at 580-81; *Id. S* 2303, at584

regarding Chief Deputy Charles Bolton's character, or his 40 years of outstanding and distinguished service as a career law enforcement officer, or present witnesses to testify regarding his contributions to the community. One witness who had volunteered to testify at the sentencing hearing concerning his direct knowledge concerning Chief Deputy Charles Bolton's character and provide information that directly refuted allegations of food theft that was investigated and found to be untrue, and that was the source of recommended two-level enhancement that resulted in an additional time of imprisonment was never called by Joe Sam Owen. This witness (Sheriff Billy McGee) was present at the hearing and available to testify but he was not called as a witness by Attorney Owen to testify on behalf of Chief Deputy Charles Bolton. Sheriff Billy McGee has provided a sworn affidavit regarding his knowledge of Charles Bolton's character, and his direct knowledge of the food theft investigation that yielded no evidence to support false allegations of food theft by Chief Deputy Chief Deputy Charles Bolton. *(Exhibit 32).*

This affidavit in part states:

1. "Charles Bolton is a law abiding citizen, and he has never been convicted of a crime. I have only known him to be a consummate professional, a philanthropist and one who gives back to his community across all race and socio-economic groups.

2."I am aware of the investigation by the Government against Charles Bolton for "alleged food theft" as the Sheriff of Forrest County.

3. "However, I was not contacted or interviewed by any investigators regarding the investigation into alleged theft of food by Charles Bolton."

4. "Charles Bolton did not steal any food from the jail and had I been contacted by investigators, I would have been able to provide the results of my internal controls and audits that would have verified this fact. Although I was the Sheriff and Senior Supervisor for Charles Bolton, and had responsibility for the entire Sheriff Department including the administration of the jail, I was never interviewed during the Government's investigation of the "alleged theft" of food at the Forrest County Jail."

5. "After approximately three years, there was no evidence found by the Government documenting theft of food on the part of Charles Bolton or his wife, Linda Bolton, and they were never indicted, charged or prosecuted for alleged theft of food. Instead, two kitchen employees of which one is now deceased and the other incarcerated, pled guilty which further proved Charles Bolton and his wife, Linda Bolton were not guilty of the allegations of food theft against them."

6. "I attended the sentencing hearing for Charles and Linda Bolton on March 17, 2017, and was prepared to provide testimony about my direct knowledge of Chief Bolton's innocence regarding the alleged food theft."

Other evidence was also available that directly refute the alleged food theft allegations for which Chief Deputy Charles Bolton was never charged, prosecuted or found guilty by a Trier of fact. However, this evidence was not presented to the Court by Attorney Owen on Charles Bolton's behalf. This evidence included a Special Agent Report filed by IRS Agent Bradley Luker stating that there was no relevant conduct found for Charles and Linda Bolton. (***Exhibit 33***).

There was another Interview Memorandum prepared by Special Agent Bradley Luker that documented the investigation by the Government into the "alleged food theft" regarding Charles and Linda Bolton found no evidence to support these allegations.

Further, Attorney Owen did not provide information to the Court that documents that the tax charges referred for prosecution of Chief Deputy Charles Bolton by the Government violated Internal Revenue Service, the Department of Justice statutes, policies and procedures by the IRS and the DOJ promulgating these statues, and established case law. His failure to do so was prejudicial and caused a miscarriage of justice, a verdict that has no basis in law that was not supported by the evidence presented in this case.

Joe Sam Owen conflict of interest resulted in ineffective assistance of counsel and was extremely prejudicial because it led to an unjust and illegal sentence of incarceration for Chief

Deputy Charles Bolton. Specifically, he failed to perform by due diligence to move for dismissal of the charges against Chief Deputy Charles Bolton before trial, during trial, and at sentencing. When the evidence documents that the Government failed to follow the laws governing tax prosecutions in the case of Charles and Linda Bolton, and failed to follow established statutes for referring cases for approval and prosecution.

**Tax Division Referrals for Grand Jury Investigation**. The Tax Division authorizes the United States Attorney to conduct grand jury investigations into matters arising under the internal revenue laws to the extent necessary to 1) perfect the tax charges for which the Tax Division authorizes an investigation or 2) determine whether the Tax Division should authorize prosecution. See USAM 6-4.242.

The final authority for the prosecution or declination of all criminal matters arising under the internal revenue laws rests with the Assistant Attorney General, Tax Division. 28 C.F.R. § 0.70. At the present time, there is no evidence that the Tax Division provided authorization for the prosecution of Charles and Linda Bolton.

## II. DUPLICITY OF CRIMINAL TAX CHARGES IN THE INDICTMENT FILED BY THE GOVERNMENT AGAINST CHARLES AND LINDA BOLTON VIOLATES ESTABLISHED LAW AND WARRANTS DISMISSAL OF INDICTMENT AND GUILTY VERDICTS

Chief Deputy Charles Bolton was unlawfully charged by indictment for alleged tax crimes that were duplicative under the law which led to unlawful convictions for all charged offenses in this case.

The Department of Justice Tax Division has adopted the "elements" test for lesser included offenses that when one offense **is necessarily included in another** only where the statutory elements of the lesser offense are a subset of the elements of the charged greater offense.

Under this standard, the statutory elements of the lesser offense are a <u>subset of the elements of the greater offense</u>, and therefore should not have been charged as a separate charge (Schmuck v. United States, 489 U.S. 705, 709-710 (1989)).  Chief Deputy Charles Bolton <u>was jointly charged</u> with his wife, for five (5) Counts of Income tax Evasion.  The indictment was defective in that it charged Linda and Chief Deputy Charles Bolton for both evasion and filing of a false tax return which is impermissible under the law.

In *United States v. Cryer*, 2007 WL 1805031 (W.D. La. June 20, 2007), Cryer was charged with two counts of evasion in violation of IRC § 7201 (counts 1 and 2) and two counts of willful failure to file a return in violation of IRC § 7203 (counts 3 and 4). Cryer moved to dismiss counts 3 and 4 on the grounds that they represent lesser included offenses. The district court acknowledged that, under the statutory elements approach set forth in *Schmuck v. United States,* 489 U.S. 705 (1989), the Sixth, Seventh and Ninth Circuits have held that that IRC § 7203 is not a lesser included charge of IRC § 7201. However, since the district court was bound by the Fifth Circuit's decision in *United States v. Doyle,* 956 F.2d 73, 74-75 (5th Cir. 1992), it held that a IRC § 7203 violation *was* a lesser included charge requiring counts 3 and 4 to be dismissed for multiplicity. *Cryer, supra* at * 4.

If there is no tax deficiency, as is the case here, there is no separate charge for Filing of a False Tax Return which was unlawfully charged as a separate offense for Chief Deputy Charles Bolton in this case.  The Government's case on all ten charged counts (26 U.S.C. §7201- five counts and 26 U.S.C. §7206(1) - five counts overlap and the Government's **<u>factual proof on count I (for which they both were found not guilty)</u>** mirrors the other counts.

The way this case was charged, it included duplicate charges for Filing a False Tax Return because the statutory elements of this <u>lesser offense</u> are a subset of the elements of the

charged greater offense (Attempt to Evade or Defeat a Tax).  Current Tax Policy promulgating Department of Treasury Statutes states that **where a failure of proof on the tax deficiency element would also constitute a failure of proof on the false return charge**, nothing generally would be gained by charging violations of both Section 7201 and 7206.   Therefore, any verdicts where Chief Deputy Charles Bolton was found not guilty of tax evasion would also result in a verdict of not guilty for the <u>duplicative indicted charge</u> for filing a false tax return.  But where the facts supporting the statutory violations are duplicative (*e.g.*, where the only affirmative act of evasion is the filing of the false return), separate punishments for both offenses should not be requested.  ***United States v. Doyle***, 956 F.2d 73, 74-75 (5th Cir. 1992).  Additionally, when the lesser charge (in this case filing of a false tax return) is a sub element of the greater charge (tax evasion), then the court **must issue an instruction** to the jury regarding the lesser charge.  This did not occur in this case and constitutes judicial error.

In the case of Linda Bolton, the jury declared a mistrial on the remaining four (4) tax evasion Counts (Count 2, 3, 4, and 5).   Linda and Charles Bolton were jointly charged for these counts.  Since both were unlawfully charged for underreporting income for loans made to their business and that were legal, and because the filing of a false tax return in counts 6, 7, 8, 9, and 10 are a statutory subset of the element of the evasion charge, these charges are invalid and not permissible under the law. No separate assignment of sentencing guideline levels is permissible because the Filing of a False Tax Return is a subset of the element of the Tax Evasion Charge. The 26 U.S.C. §7206(1) five counts are predicated exclusively on under reporting of alleged taxable income. `

The Government's Special Assistant U.S. Attorney (Fred Harper) knew that the

indictment in this case was defective and stated on the record during a Pre Trial Teleconference

Proceedings on Wednesday, August 10, 2016, before Honorable Judge Keith Starrett, that:

> **MR. HARPER**:  "Your Honor, if I could inject.
> The government -- Ms. Lisa and I have not had a chance to really
> talk, but the government's only had the case this year, and
> shortly before in fact the indictment was returned, and while
> it does have 10 counts in it, Count 1 and Count 6 and 2 and 7,
> et cetera, are based upon identical evidence.  The charge is
> evasion in one instance and false statement in the other.  But
> the evidence is no different for going forward, and so we're
> really talking about one count for each year, from 20 -
> 2009 through 2013.
>
> **It's really not 10 counts.  It's really five**.
>
> *Transcript of Aug 10, 2016, Teleconference Proceedings*, page 13, Lns 14-25, and page
> 14, Ln 1, *(Exhibit 34).*

Charles and Linda Bolton did not willfully commit tax evasion and tax fraud.  Counsel for

Charles Bolton knew that the indictment was defective early on in the case, and that it did not

conform to the Internal Revenue Service and Department of Justice statutes, through the

Government's own admission before trial and did nothing to move for dismissal of charges

against him.

## IV. THE PROSECTUION PROCEEDED WITH THE PROSECUTION OF CHARLES BOLTON ALTHOUGH THE EVIDENCE TO REFUTE FALSE OUT-OF COURT STATEMENT PROVIDED BY A KEY WITNESS AGAINST HIM (JOHN LEE), VIOLTING HIS SIXTH AMENDMENT RIGHTS GURANTEED UNDER THE CONSTITUTION OF THE UNITED STATES.

Chief Deputy Charles Bolton's evidence of receipts of alcohol purchased through the

Mississippi State Alcohol Board documented all alcohol purchases made by the Boltons for their

businesses, and he provided this evidence to the prosecution who knew that it did not match the

amount of the alleged income the Government stated was based alleged purchases of alcohol

based on out-of-court statements attributed to John Lee.  However they chose to ignore this

evidence and proceed with a prosecution based on false statement of John Lee when they had evidence that directly refuted these claims.

The out-of-court statements were inadmissible, and violated Chief Deputy Charles Bolton's rights to due process and to a fair trial guaranteed under the constitution of the United States. Both Charles and Linda Bolton were **denied their guaranteed rights to due process under the 6th Amendment to the U.S. Constitution** that sets out the rights for defendants during a criminal prosecution, including the right of the accused to confront their accusers based on the prosecution's misconduct in this case. The relevant text of the Confrontation Clause of the 6th Amendment reads as follows:

**"In all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him".**

The 14th Amendment has made the 6th Amendment's right to confrontation applicable to state court as well as federal court. The confrontation clause guarantees criminal defendants the opportunity to face the prosecution's witnesses (such as John Lee) in the case against them and dispute the witnesses' testimony. This guarantee applies to both statements made in court and statements made outside of court that are offered as evidence during trial.

**Crawford v. Washington and Out-of-Court Statements**

In 2004, the Supreme Court decided an important case, *Crawford v. Washington* that altered the rules for when prosecutors can use out-of-court statements against a defendant. Before *Crawford,* the Supreme Court had held that out-of-court statements did not violate the confrontation clause as long as they were adequately reliable. In *Crawford,* the Court changed course and determined that defendants had a right to cross-examine out-of-court statements, regardless of whether or not the statements were reliable.

After *Crawford,* the government cannot use out-of-court statements that are offered as testimony against the defendant unless the **witness is unavailable and the defendant has had a previous opportunity to cross-examine the witness**.

The Government did not provide evidence that met the "beyond a reasonable doubt" standard when they failed to call John Lee, the primary witness against Chief Deputy Charles Bolton" to appear in Court to be cross examined by Charles and Linda Bolton attorneys. This violated the confrontation clause of the Sixth Amendment of the Constitution of the United States. Instead, only a fraudulent General Ledger of John Lee was used in court by the Government to convict Charles and Linda Bolton.

## V. THE PROSECTUION PROCEEDED WITH THE PROSECUTUION OF CHARLES BOLTON ALTHOUGH THE STATUTUE OF LIMITATIONS EXCEEDED THE TIME PERMITTED BY LAW FOR FILING CRIMINAL TAX CHARGES AND THAT TAXES HAD BEEN PROPERLY FILED AND NO ADDITIONAL TAXES WERE DUE

An extended six-year statute of limitations on assessment **only applies** to returns that omit a substantial amount of gross income [IRC Sec. 6501(e)]. The statute of limitations is extended to six years **ONLY** when the taxpayer omits gross income in an amount exceeding 25% of gross income actually reported on the income tax return.

Items of gross income are determined under IRC Sec. 61; however, gross income derived from a trade or business equals the total sales price before subtracting the cost of such sales or services [IRC Sec. 6501(e)(1)(A)(i)]. On the other hand, ***the law states that an item of income is not considered omitted from a return if the return or an attached schedule*** contains adequate information to apprise the District Director of the nature and amount of such item[Reg. 301.6501(e)-1(a)(1)(ii)]. All income that the Government unlawfully brought criminal charges against Charles and Linda Bolton that they loaned back to their businesses was disclosed

by the Boltons on their tax returns on Schedule C for each year that they were indicted.

Therefore, the removal of the "amounts" the Boltons lawfully disclosed on their tax returns on Schedule C, from the Government's alleged and erroneous tax deficiency calculations will result in a less than the 25% of gross income and would not qualify for criminal charges to be referred against them by the I.R.S. under Title 26 I.R.C. Section 6501(e)(1)(B).

**The 2009 Return**

**Joe Sam Owen was also ineffective because he failed to research, file a motion and argue that the Government's inclusion of tax year 2009 in its indictment against Chief Deputy Charles Bolton is barred from prosecution** since the Bolton's' tax return for Tax Year 2009 was properly filed and taxes paid, as admitted by the Government at trial, and since there was also a finding of not guilty by the jury for both Linda and Chief Deputy Charles Bolton for this tax year under Count 1, there is ***no tax deficiency and no amount owing the Government by the Boltons for 2009***. Further the Government proceeded with the criminal tax prosecution of Chief Deputy Charles Bolton when they knew that his 2009 tax return was lawfully and timely filed, and that there was no tax deficiency or underreporting of income by him and his wife for this tax year.

Joe Sam Owen failed to file a motion to dismiss Counts 1 and 6 prior to trial. His ineffectiveness caused Chief Deputy Charles Bolton to be indicted, charged, prosecuted and convicted for these Counts. Mr. Bolton has been ordered by the Court to pay restitution and fines for these Counts, 1 and 6 even though the jury found him not guilty of Count 1 which is the same evidence for Count 6 and has received sentencing levels and enhanced sentencing levels based on these Counts.

At trial, the evidence proved, through IRS Agent' Luker's own testimony, that Charles and Linda Bolton's 2009 tax return was **properly prepared** and **all income properly accounted for** on the return *Vol II, of 9/14/2016, P.279. Lns 2-9* (***Exhibit 35***).    As a result, the indictment was defective and the Government erred when they unlawfully charged Charles and Linda Bolton in Count I of the indictment for **a violation of 26 U.S.C. §7201 and a violation of 26 U.S.C. §7206(1),** respectively.

Linda Bolton is a high school graduate and Chief Deputy Charles Bolton has a Graduate Equivalency Diploma (GED).   Linda and Chief Deputy Charles Bolton hired a Certified Public Accountant (CPA) and Accounting firm (Nicholson and Company) to prepare their taxes and the Company prepared and filed their taxes for more than 15 years.   They provided their tax preparer all information regarding the operation of their businesses for use in preparing their taxes.  They also signed a Power of Attorney document with Nicholson and Company to prepare their taxes, process their payroll and business accounting routinely.

Any under reported taxes were due to tax preparer error and not due to any willful attempt to evade payment of taxes on the part of Charles and Linda Bolton.  As is the case here, "reliance on a qualified tax preparer is an affirmative defense to a charge of willful filing of a false tax return, if the defendant can show that he provided the preparer with complete information and then filed the return without any reason to believe it was false"[6].  In this case, through the IRS Agent's own admission, this is the truth of what occurred.  The tax preparer they

---

[6]United States v. George, 420 F.3d 991, 999 (9th Cir. 2005); United States v. Chavin, 316 F.3d 666, 671 (7th Cir. 2002); United States v. Ford, 184 F.3d 566, 579-580 (6th Cir. 1999); United States v. Brimberry, 961 F.2d 1286, 1290-91 (7th Cir. 1992); United States v. Duncan, 850 F.2d 1104, 1117 (6th Cir. 1988), cert. denied, 493 U.S. 1025 (1990); United States v. Wilson, 887 F.2d 69, 73 (5th Cir. 1989); United States v. Claiborne, 765 F.2d 784, 798 (9th Cir. 1985), cert. denied, 475 U.S. 1120 (1986).

had hired prepared their taxes for over 15 years, and did not inform them of any problems. Chief Deputy Charles Bolton properly accounted for all his income, and provided all the supporting 1099s and other earning statements to the tax preparer which was corroborated by their bank statements and deposits. Fortunately, the jury agreed that there was no evidence to support the Government's charges and returned a verdict of 'not guilty' for 2009.

Although the jury returned a verdict of **"not guilty" for Count I** of the indictment relating to the Boltons' 2009 tax return, the Government is requesting that the Court sentence Charles and Linda Bolton as if they were found guilty of this offense and used this Count in the Presentencing Report to increase Chief Deputy Charles Bolton's alleged tax deficit calculations to increase levels for sentencing.

## 2. The 2010 Tax Return

**Joe Sam Owen was also ineffective because he failed to research and file a motion that the Government's inclusion of tax year** 2010 tax year had already been audited by the I.R.S. and the audit closed as to the Boltons for this tax year. The Boltons should not have been indicted, charged and convicted of criminal charges for an alleged tax deficiency for this tax year. In his testimony during the Boltons' trial, the Government's Summary Witness testified that the IRS sought the Boltons tax records for 2010 in its investigation, which the I.R.S. had already inspected in a previous audit of their 2010 tax return. Tr. Volume II. 9/14/16 at 309, Lines 16-20, *(Exhibit 36)*. This action re-opened a closed tax case for 2010. Section 7605 (b) of the I.R.S. tax code provides that "only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary, after investigation, notifies the taxpayer in writing that an additional inspection is necessary." I.R.C. Section 7605 (b). The Boltons were not notified. Charles and Linda Bolton were

indicted, charged and prosecuted for this same 2010 tax return which had been previously audited, settled and closed. There is <u>no tax deficiency and no amount owing the government by the Boltons for 2010</u> for Counts 2 and 7. However, the Government proceeded with the unlawful criminal investigation, indictment and tax prosecution of Chief Deputy Charles Bolton for a 2010 tax return. <u>Chief Deputy Charles Bolton has been ordered by the Court to pay restitution for these Counts and has received sentencing levels and enhanced sentencing levels based on these Counts</u>.

2010 tax year had already been audited by the I.R.S. and the audit closed as to the Boltons for this tax year. The Boltons should not have been indicted, charged and convicted of criminal charges for an alleged tax deficiency for this tax year. There is <u>no tax deficiency and no amount owing the government by the Boltons for 2010</u>. However, the Government proceeded with the unlawful criminal investigation, indictment and tax prosecution of Chief Deputy Charles Bolton for a 2010 tax return.

The Government's agent testified that the alleged underreported income charged in the indictment for loans Charles and Linda Bolton made to their businesses **<u>was in fact reported by the Boltons</u>** to their tax preparer, who included these funds on the Boltons' tax return under Schedule C as a **"capital contribution"** instead of on **<u>gross income line</u>** of the tax return. Since Linda and Charles reported income and provided the support documentation to the IRS on the return itself that they put the income back into their business as a **"capital contribution"**, this is not a crime and they should never have been indicted or charged for a tax crime under Title 26 I.R.C. 6501(e)(1)(B).

**3. Calculation of Gross Income for Tax Years 2010, 2011, 2012 and 2013 and**

**Determination of Gross Income Under Title 26 I.R.C. Section 6501 (e)(1)(B).**

**Joe Sam Owen was ineffective because he failed to research the tax laws and hire an expert to refute the Government's Gross Income Calculations and file a motion that the Government's Calculations of Gross Income for tax years 2010, 2011, 2012 and 2013 were Incorrect**. Charles and Linda Bolton (the Boltons) correctly included income appropriated as personal "Loans" to their businesses on their Schedule C tax return forms as Capital Contributions for Tax Years 2010, 2011, 2012 and 2013. Two Government witnesses (Agent Bradley Luker and Renee Moore) testified at the Boltons' trial that this was generally accepted accounting practices and therefore, not unlawful. Government Witness, Renee Moore, Nicholson & Company (Charles and Linda Bolton's Accounting Firm) testified that for a business like the Boltons' sole proprietorship, a loan and a capital contribution are synonymous and are very ordinary, and something that she observes all the time. She further testified that she didn't perceive Linda Bolton's notation as loans on her worksheets was loans from some customer to the business, and that she perceived these to be loans for capital contributions from the owner to the business. *Tr. Volume II. 9/14/16 at 221, Lines 16-25*, and *Tr. Volume II. 9/14/16 at 222, Lines 1-14*, (*Exhibit 37*).

Ms. Moore testified that with respect to capital contributions, a person can contribute his or her own money to the business under certain circumstances and that contribution is not taxable. *Tr. Volume II. 9/14/16 at 227, Lines 10-13*, (*Exhibit 38*). The Government's Summary Witness, IRS Special Agent Luker testified that loans or capital contributions are not taxable so they wouldn't be included in the income. *Tr. Volume II. 9/14/16 at 278, Lines 12-15*, (*Exhibit 39*).

Title 26 I.R.C. Section 6501 (e)(1)(B) provides that in determining the amount omitted

from gross income, there shall not be taken into account **any amount which is omitted from gross income stated in the return if such amount is disclosed in the return**, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item.

Charles and Linda Bolton met and exceeded this requirement by submitting their personal tax records with an explanation of their personal loans appropriated to Capital Contributions to their tax preparer. In addition, they disclosed these amounts in their 2010, 2011, 2012 and 2013 Tax Returns filed with the IRS with **an additional note** on their 1099s from their tax preparer, Nicholson & Company that this income was included on their Schedule C tax forms as Capital Contributions. This met the requirement under Title 26 I.R.C. Section 6501 (e)(1)(B). The indictment, prosecution and charges against Charles and Linda Bolton for tax evasion after they met this requirement are without merit and all charges against them should be immediately rescinded.

Ms. Moore testified that with respect to capital contributions, a person can contribute his or her own money to the business under certain circumstances and that contribution is not taxable. *Tr. Volume II. 9/14/16 at 227, Lines 10-13,* **(*See Exhibit 37*)**.

The Government's Summary Witness, IRS Special Agent Luker testified that loans or capital contributions **are not taxable** so they wouldn't be included in the income. *Tr. Volume II. 9/14/16 at 278, Lines 12-15,* **(*See Exhibit 39*)**.

Further, the Special Agent's own Special Agent Report (SAR) that recommended the prosecution of Linda and Chief Deputy Charles Bolton for **ONLY violation (s) of 26 U.S.C. §7201 "Filing of a False Tax Return**" and that **did not include** a recommendation for prosecution of **a violation of 26 U.S.C. §7206(1)** "Attempt to Evade or Defeat a Tax", as

follows:

**Recommended Charges and Prosecution Years**

**CHARLES BOLTON - 26 U.S.C. §**7201 - 2009, 2010, 2011, 2012, 2013 (5 counts)

**LINDA BOLTON - 26 U.S.C. §**7201 - 2009, 2010, 2011, 2012, 2013; 5 Counts

The SAR Report, Page 10 documents that:

> "*The funds represented to be loans **were used in the normal course of business***
>
> *for Sports 22 and Hall Avenue*".

Therefore, the indictment **was defective** and the charges brought against Charles and Linda Bolton for tax evasion and filing of a false tax return were not only duplicative, but it was erroneous, not based on the facts, and is not supported by the evidence or the prevailing law. The Court failed to dismiss these defective and erroneous charges on a motion for judgment of acquittal at trial or later based on post-trial motions for a judgment of acquittal or in the alternative motion for new trial and the jury returned a verdict that is neither supported by the facts, the law or any proof whatsoever. Nevertheless, the Court refused to properly apply the correct legal principles concerning the Government unlawful charge of Charles and Linda Bolton with attempting to evade or defeat a tax and filing of a false tax return, and failed to instruct the jury regarding the prevailing law regarding "capital contributions" which does not constitute a criminal offense, when sole proprietors such as the Boltons loan money to their businesses.

    Agent Luker testified that it is a common accounting practice for sole proprietor business owners (such as the Boltons) to loan money to their business and that there is no limit as to how much they can loan to their business. The charging of this error as an alleged criminal act on the part Charles and Linda Bolton (as purported by the Government in the indictment against them is

in error) renders the alleged tax deficits for 2009, 2010, 2011, 2012, and 2013 invalid and the verdict unsustainable.

A. In my review of the general ledger and the tax returns and the handwritten notes, even though the, the attempt was made to claim these as loans, they were not entered into the general ledger as loans. **They were actually counted as income**. So therefore they were included on the tax return for 2009.

Q. So was the income for 2009 related to these specific checks reported?

A. Yes.

Q. Okay. And was not further utilized by you?

A. No. **I did not use this number** in determining an additional tax due and owing for 2009

*Vol II Trial Transcript*, page 276, Lns 13-23, **(Exhibit 40)**.

_____

Q. Okay. Do you know what the total amount of loans or capital contributions were claimed by the Boltons on their returns in -- or for the information supplied for their returns in 2009?

A. I don't have the total amount for 2009. Again, I didn't use any loans in 2009 because they were correctly reported that year.

*Vol II Trial Transcript,* page 279, Lns 2-8, **(Exhibit 41)**.

On September 15, 2016, Chief Deputy Charles Bolton was found not guilty of Count 1 for felony tax evasion and guilty of Counts 2 through 5 for felony tax evasion and guilty of five (5) Counts for filing a false tax return. The verdicts were highly inconsistent and unsupported by

the evidence.  Specifically, evidence adduced during the trial is insufficient, as a matter of law, to sustain a conviction.  This, coupled with the fact, that there is <u>no evidence that the prosecution had the authority</u> to lawfully indict or charge Chief Deputy Charles Bolton for criminal tax violations, nor was the prosecutors in this case lawfully granted the authorization to do so, dictates dismissal of indictment, and any and all guilty verdicts associated with the prosecution of this case.

Attorney Owen performance was deficient because he failed to correct tax erroneous deficiency calculations entered into evidence by the government before, during, or after trial when such evidence was available to show not only that the indictment was defective, but that there had been no violation of tax laws by Chief Deputy Charles Bolton.  Attorney Owen was also ineffective as Counsel because he failed move for dismissal of charges that were contrary to law when it was clear that the charges were not supported by the evidence or law.

Use of acquitted crimes to calculate a defendant's guideline range, as is the case, violates Chief Deputy Charles Bolton's guaranteed right to due process under the Sixth Amendment of the Constitution. When a court uses acquitted crimes to calculate a determinate guideline sentence, the court "is expressly considering facts that the jury verdict not only failed to authorize; it considers facts of which the jury expressly disapproved," and "they are facts comprising different crimes, each in a different count." *United States v. Pimental*, 357 F. Supp. 2d 143, 152-53 (D. Mass. 2005).

Charles and Linda Bolton were tried at the same time and the jury considered the same witness testimony and other evidence for both Charles and Linda who also filed joint income tax returns.  Linda Bolton found that a mistrial for Counts 2-5.

Counts 2, 3, 4, 5, 6, 7, 8, 9 and 10 are grouped for guideline calculation purposes. USSG§3D1.2(d). Use of acquitted crimes to calculate a defendant's guideline range violates Chief Deputy Charles Bolton's guaranteed right to due process under the Sixth Amendment of the Constitution. When a court uses acquitted crimes to calculate a determinate guideline sentence, the court "is expressly considering facts that the jury verdict not only failed to authorize; it considers facts of which the jury expressly disapproved," and "they are facts comprising different crimes, each in a different count." *United States v. Pimental*, 357 F. Supp. 2d 143, 152.

Chief Deputy Charles Bolton's attorney failed to disclose to the court his acceptance of large payments for from John Lee, whom it was learned during trial was the primary witness against Charles and Linda Bolton, and who did not appear at trial to plead the fifth in front of the jury as mandated by law, and who did not testify at trial because he was not subpoenaed to appear by defense counsel.

Chief Deputy Charles Bolton's defense counsel failed to object to testimony and evidence presented by the government that caused faulty guilty verdicts to be returned for Chief Deputy Charles Bolton on nine of ten counts (four (4) income tax evasion counts and five (5) filing of a false tax return counts). Further, Attorney Owen refused to allow Chief Deputy Charles Bolton to testify on his own behalf. Instead, the attorney for Chief Deputy Charles Bolton <u>only called one witness</u> to testify for the defense.

Many months before the trial – *trial counsel knew* that the government's tax deficiency calculations provided in the indictment were erroneous and that these calculations were *central* to this case. However, trial counsel *failed to present a single expert at trial* to contest those calculations on behalf of Chief Deputy Charles Bolton. Attorney Owen failed to do so because

of divided loyalties created by a conflict of interest by trial counsel's acceptance of monies from key witnesses against Chief Deputy Charles Bolton (John Lee) and failure to disclose this information to the Court. Defense Counsel for Chief Deputy Charles Bolton improperly accepted the government's tax deficiency calculations and *relied on the government to identify errors in its calculations*.

Under controlling Supreme Court law, a trial counsel's failure to retain a Summary Expert to contest the government's evidence (in this case, the tax deficiency calculations) is unmistakably deficient performance. A reasonable probability exists that the result of the trial would have been different but for:

> *1. The lack of the retention of a defense expert who would have enabled defense counsel to disprove those tax deficiency calculations.*
>
> *2. Defense counsel's failure to retain and present an expert at trial to contest the government's tax deficiency calculations is the most extreme example of his prejudicially deficient performance, and by itself demands a new trial.*
>
> *3. That the indicted charges against Chief Deputy Charles Bolton were not lawful and that they did not conform to the Department of Treasury and the Department of Justice Statutes for violation of the tax code.*

Each of these performance deficiencies was prejudicial and provides a separate and independently sufficient basis for a new trial. Defense counsel for Chief Deputy Charles Bolton failed to obtain and present to the jury an abundance of available exculpatory evidence that would have debunked the government's false theory that both loans and cashed John Lee checks were unreported income, and this action by defense counsel would have led to dismissal of the charges before trial and certainly led a reasonable person (in this case the jury as finder of fact) of a verdict of not guilty because the government failed to prove under the "beyond a reasonable doubt" standard that Chief Deputy Charles Bolton willfully evaded a tax.

Examining the *cumulative* prejudicial effects of defense counsel's deficiencies reinforces the inescapable conclusion that Mr. Bolton deserves a new trial. A new trial is warranted under the Sixth Amendment's Assistance of Counsel Clause and the Fifth Amendment's Due Process Clause for this reason alone. However, the fact that the government presented false tax deficient calculations that are "the most significant evidence" in the case regarding the most serious charge of income tax evasion also demands a new trial under the Due Process Clause.

Chief Deputy Charles Bolton's convictions are based on "false tax deficient" calculations that *everyone involved in this case now knows are fundamentally inaccurate and unreliable*, and thus denied him a fair trial. The government's presentations of false evidence about income that were in fact properly reported by Charles and Linda Bolton's tax preparer (including all 1099s, contract earnings, and purchases of goods and services and loaned back to the business), and that was included on scheduled C of their return and reported to the Internal Revenue Service, does not constitute a criminal tax crime or intent to defraud the government violated due process as well.

Charles and Linda Bolton's (the Boltons) correctly included income appropriated as personal "Loans" to their businesses on their Schedule C tax return forms as Capital Contributions for Tax Years 2010, 2011, 2012 and 2013. Both Government witnesses testified at the Boltons' trial that this was generally accepted accounting practices. Government Witness, Renee Moore, Nicholson & Company (Charles and Linda Bolton's Accounting Firm) testified that for a business like the Boltons' sole proprietorship, a loan and a capital contribution are synonymous and are very ordinary, and something that she observes all the time. She further testified that she didn't perceive Linda Bolton's notation as loans on her worksheets was loans from some customer to the business, and that she perceived these to be loans for capital

contributions from the owner to the business. *Tr. Volume II. 9/14/16 at 221, Lines 16-25, and Tr. Volume II. 9/14/16 at 222, Lines 1-14,* (***See Exhibit 37***).

Ms. Moore testified that with respect to capital contributions, a person can contribute his or her own money to the business under certain circumstances and that contribution is not taxable. *Tr. Volume II. 9/14/16 at 227, Lines 10-13,* (***See Exhibit 37***).

The Government's Summary Witness, IRS Special Agent Luker testified that loans or capital contributions are not taxable so they wouldn't be included in the income. *Tr. Volume II. 9/14/16 at 278, Lines 12-15,* (***Exhibit 42***).

Title 26 I.R.C. Section 6501 (e)(1)(B) provides that in determining the amount omitted from gross income, there shall not be taken into account **any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return**, in a manner adequate to apprise the Secretary of the nature and amount of such item.

Charles and Linda Bolton met and exceeded this requirement by submitting their personal tax records with an explanation of their personal loans appropriated to Capital Contributions to their tax preparer, Nicholson & Company. In addition, they disclosed these amounts in their 2010, 2011, 2012 and 2013 Tax Returns with **an additional note** to the IRS on their 1099s from their tax preparer, Nicholson & Sons that this income was included on their Schedule C tax forms as Capital Contributions. This met the requirement under Title 26 I.R.C. Section 6501 (e)(1)(B). The indictment, prosecution and charges against Charles and Linda Bolton for tax evasion after they met this requirement are without merit and all charges against them should be vacated.

Allowing convictions based on such false evidence to stand would be irreconcilably inconsistent with due process. The Court should not allow such a result and should grant Mr. Bolton a new trial.

**A. CHARLES BOLTON'S DEFENSE COUNSEL WAS INEFFECTIVE BECAUSE HE DID NOT RETAINOR PRESENT AN EXPERT TO CONTEST THE GOVERNMENT'S TAX DEFICIENCY CALCULATIONS.**

### Joe Sam Owen was also ineffective because he failed to research and retain an expert to contest the Government's tax deficiency calculations

*Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance claim raised in a motion for a new trial. *Smith*, 62 F.3d at 649 (stating that "ineffective assistance claims are governed by the same standard whether raised via a motion for new trial or on federal habeas" and citing *Strickland*, 466 U.S. at 697-98.

*First*, under *Strickland*'s "performance prong," Chief Deputy Charles Bolton must show that [trial] counsel's representation fell below an objective standard of reasonableness.'" *Id.* (quoting *Strickland*, 466 U.S. at 688). In other words, he "must show that [trial counsel's] performance was deficient." In deciding this issue, the Court "'should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case.'" *Elmore*, 661 F.3d at 857 (quoting *Strickland*, 466U.S. at 690). That process did not occur here.

Defense Counsel for Chief Deputy Charles Bolton also abdicated his duty to defend Chief Deputy Bolton in three other respects, each of which is deficient performance: (i) failed to retain a summary expert to contest the government's false tax deficiency calculations or present an expert at trial to refute the government's evidence presented at trial, (ii) failed to offer available exculpatory evidence to debunk the government's false theory that the John Lee checks

were income to the Boltons when they had evidence of receipts of alcohol purchased through the Mississippi State Alcoholic Control Division that documented all alcohol purchases made by the Bolton's for their businesses and that did not equal the amount of the alleged income the Government stated was underreported and (iii) failed to object to or contest the false evidence of purported Summary Charts he knew or should have known to be false and that violated the rules of evidence under *Brady v. State of Maryland*.

*Second*, under *Strickland*'s "prejudice prong," Mr. Bolton" 'must show that there is a reasonable probability that, but for [his trial] counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 858 (quoting *Strickland*, 466 U.S. at 694)." Although an ineffective assistance claim ordinarily cannot be brought until a motion Under 28 U.S.C. § 2255, to give counsel an opportunity to explain the reasons for the action(s) or inaction at issue, "[a]n exception to this general rule exists when the record conclusively establishes counsel's ineffective assistance." *United States v. Butler*, 331 F. Apex 260, 260 (4th Cir. 2009) (unpublished); *accord Smith*, 62 F.3d at 651.

The record conclusively establishes that Chief Deputy Bolton's defense counsel's performance was deficient. For all of these reasons, the Court should also adjudicate an ineffective assistance claim and should not force Chief Deputy Bolton to wait until after a potentially lengthy direct appeal to obtain the relief he deserves under the Sixth Amendment and the Due Process Clause.

## B. THE FAILURE TO RETAIN AN EXPERT TO CONTEST THE GOVERNMENT'S TAX DEFICIENCY CALCULATIONS IS DEFICIENT PERFORMANCE.

**Joe Sam Owen was also ineffective because he failed to research and retain an expert to contest the Government's tax deficiency calculations Joe Sam Owen was also ineffective**

**because he failed to research and retain an expert to contest the Government's tax deficiency calculations**.   Defense counsel's failure to retain an expert to contest the government's tax deficiency calculations is deficient performance. An objectively reasonable attorney would have realized by no later than the end of March 2016, long before the trial began, that retaining such an expert was vital to Mr. Bolton's defense.

Trial counsel *knew* by then that tax deficiency calculations presented by the government was obviously central evidence that needed to be properly reviewed and challenged to properly prepare the defense in this case.   Further, Chief Deputy Bolton's counsel knew that the government indictment was defective  and  unlawfully charged  him and knew  that the government was going to call a Summary Witness" to testify about their tax deficiency calculations at trial. (See motion filed by the Government August 2016).  Nevertheless, trial counsel failed even to provide an expert or present a Summary Witness or Expert Witness to testify at trial.   Although Chief Deputy Bolton had, at Counsel's recommendation, retained and paid fees for review of the entire tax files associated with this case.  As time progressed, an objectively reasonably attorney would have vigorously defended his client with the full veracity of the law and he knew or should have known that the government's tax deficiency calculations were incorrect.

A review of the evidence presented by the Government in the form of Summary Charts which were later provided to the jury for their deliberations as to the guilt or innocence of Chief Deputy Bolton for income tax evasion and filing of a false tax return, not only document that the calculations regarding the tax deficiency were not only incorrect, but it contained evidence that the assumptions used by the Government to calculate the tax deficiency were faulty in that the methodology changed from year to year and resulted in an increase of the tax deficiency in an

effort to bring it up to levels to justify criminal charges brought against Chief Deputy Bolton when no such charges were warranted. Even taking into account the false evidence presented by the Government, the calculations still do not meet the legal standard for bringing criminal charges against Chief Deputy Bolton.

To summarize the tax information that led to the false evidence and the manner in which the summary witness testified led to a faulty jury verdict. Chief Deputy Bolton needed an expert to analyze those calculations. However, Attorney Owen accepted the Summary Charts without questioning or objecting to them.

Attorney Owen also failed to ask the government to produce *all* of data associated with the methodology used to compute the tax deficiency calculations. An objectively reasonable attorney would have realized that the tax deficiency calculations presented by the government did not comply with Department of Treasury and the Internal Revenue Code, statutes and that the application of these statutes to the tax deficiency calculations presented by the Government might provide information favorable to the defense.

The deficient failure to obtain an expert to contest the government's tax deficiency calculations is especially disconcerting and fails to meet the acceptable standards for defense in a criminal tax case and established law. Under controlling Supreme Court in *Hinton vs. Alabama, 571 U. S. (2014)* trial counsel's failure to seek to obtain a competent expert to analyze the government's tax deficiency calculations is deficient performance. In its ruling in *Hinton*, the Supreme Court *unanimously* held that the Defendant's trial counsel "rendered constitutionally deficient performance" by failing to seek to obtain a competent expert to contest the government's position on the most important issue in the case where an expert was needed to address that issue. 134 S. Ct. at 1083, 1088-89. The Court explained that "'[c]riminal cases will

arise where *the only reasonable and available defense Strategy requires consultation with experts or introduction of expert evidence*'" and that "[t]his was such a case." *Id.* at 1088 (quoting *Harrington v. Richter*, 562 U.S. 86, 106 (2011))(Emphasis added). The "core of the prosecution's case" was its experts' conclusion that the Bullets that killed the victims were fired from the same gun found at the defendant's residence. *Id.* at 1084, 1088. "[E]effectively rebutting that case required a competent expert on the defense side." *Id.* at 1088. Like trial counsel here, the defense attorney in *Hinton* failed to seek to obtain a competent expert. *Id.* The Court ruled that under "a straightforward application of [its]ineffective-assistance-of-counsel precedents," the failure of the defense attorney to do so was "a *quintessential example* of unreasonable performance." *Id.* at 1087-89 (emphasis added).

As in *Hinton*, to effectively represent Chief Deputy Bolton, his defense counsel needed to have a competent expert analyze the most important issue in the case, yet did not seek to obtain such an expert. As in *Hinton*, the "only reasonable "strategy for "effectively rebutting" the "core" of the government's case was to obtain "a competent expert on the defense side." 134 S. Ct. at 1088-89. Trial counsel failed to do so. Such "blind acceptance" of government evidence is the error that defense counsel for Chief Deputy Bolton made by failing to obtain a summary expert witness to contest the government's tax deficiency calculations.

## C. THE FAILURE TO RETAIN A DEFENSE SUMMARY WITNESS/EXPERT TO CONTEST THE GOVERNMENT'S TAX DEFICIENCY CALCULATIONS WAS PREJUDICIAL.

There is a reasonable probability that, but for Attorney Owen's failure to retain a tax Summary Expert to contest the government's tax deficiency calculations, Chief Deputy would have been acquitted. The Government's alleged tax deficiency calculations are the primary evidence that resulted in convictions against Chief Deputy Bolton. Take away the erroneous tax

deficiency calculations based on false assertions and not supported by the evidence and there is no case against Chief Deputy Bolton. A "probability sufficient to undermine confidence in the outcome'' exists to believe that a jury presented with undeniable evidence that there is no tax deficiency c*ould affirmatively find that there is likewise no fraud. Elmore*, 661 F.3d at 858 (quoting *Strickland*, 466 U.S. at 694). Even more so, such a probability exists to believe that *at least one member* of such a jury would have *a reasonable doubt* on the issue, which is the applicable standard. *See id.* Because Bolton's defense counsel did not retain an expert, Owen was unable to show that the tax deficiency calculations are *entirely erroneous*. As a consequence, the jury never learned the truth about those calculations. The tax deficiency calculations were erroneous in the indictment document, they were changed again at trial and have since changed again after trial and after the jury's verdict as documented in the presentence report.

## AN UNCONVENTIONAL JURY SELECTION PROCESS BY DFENSE COUNSEL OWEN AND THE COURT WAS UNLAWFUL AND VIOLATED CHIEF DEPUTY'S RIGHTS TO DUE PROCESS UNDER THE FIFTH AND SIXTH AMENDMENTS OF THE UNITED STATES CONSITITUTION

The Court introduced an unconventional procedural jury selection process that adversely affected Chief Deputy Bolton due process rights under the Fifth and Sixth Amendments of the United States Constitution. During an August 30, 2016, Telephonic Pre Trial Proceeding, the Court announced that they would be doing blind strikes of prospective jurors.

**THE COURT: Any other questions from anybody about the**

**procedures? Y'all understand that we're going to do blind strikes?**

**Everybody understands that? The jury selection?**

*Telephonic Pre Trial Transcript* Aug 30, 2016, Page 30, Lns 23-25, and pages 31-39, (**Exhibit**

**43).**

Attorney Ross questioned the Court as to why they were doing blind juror selections and how then will she be able to know who the Government struck and how would she would then be able to make a Bastson challenge if she did not know who the Government was striking. Attorney Ross went on to express her concerns that striking jurors blindly would cripple her ability to assess as to whether she would need to make a Baston challenge. In order words, if the government struck somebody without giving a reason they just been blindly stricken and she would not have a chance to challenge them. Attorney Ross went on to request a case where blind challenges had been used and stated that she had never heard of it before. Mr. McDuff also stated he never heard of it. Joe Sam Owen did not object to this unconventional process for striking jurors on behalf of Chief Deputy Bolton. By allowing blind strike of prospective jurors tainted the jury results and interjected the probability of bias into the entire judicial proceedings, a fatal error that cannot be overcome.

Joe Sam Owen was ineffective as Counsel when he did not object or file a motion challenging the unconventional juror selection process imposed by the court and that did not meet the provisions under the law to allow sufficient basis to overcome Bastson challenges that the defense had a right to raise. He was also ineffective by not objecting to the case even being sent to the jury when the government had not proved it case beyond the reasonable doubt standard. *United States v. Moreland.*

Further complicating the Joe Sam Owen representation of Chief Deputy Bolton is the attorney-to-attorney conflicts with co-counsel (Attorney Robert McDuff) which contributed to his failure to develop a defense strategy for Charles Bolton. He documented the attorney to attorney disagreements during the sentencing hearing which was responded to by Mr. Duff also

acknowledging the conflict between the two attorneys. A brief excerpt of the sentencing hearing

transcript documenting Mr. Owen comments is as follows:

> **Owen: "There was a disagreement, let's leave it at that, as to the**
>
> **defense to advance. You heard the defense that was eventually**
>
> **advanced. I'm going to leave -- I'm going to stop there,**
>
> **because that was a problem for Mr. Galloway and I".**

**and;**

> **"We struggled with it significantly, to the point that Mr. Galloway and I**
>
> **were trying to decide what our position needed to be in this case."**

*Sentencing Transcript* of March 17, 2017. P. 93, Lns 1-9; P. 94, Lns 5-13; P. 95, Lns 22-26; and

a P. 96, Lns 1-25.

This conflict also adversely affected the representation results (conviction and sentences to terms

of imprisonment) for both Linda and Charles Bolton due to a failed or no defense strategy in this

case.

## CONCLUSION

Attorney Joe Sam Owen, Chief Deputy Bolton's Defense Attorney, labored under a

conflict of interest that resulted in a violation of his Sixth Amendment guarantee of the right to

counsel which includes the right to legal representation free of conflicts of interest. *United States*

*v. Hernandez*, 690 F.3d 613, 618 (5th Cir. 2012). A conflict exists where "counsel places himself

in a position conducive to divided loyalties." *United States v. Garcia-Jasso*, 472 F.3d 239, 243

(5th Cir. 2006) (internal quotation marks and citation omitted). This is true in this case. As

such, the conflict rendered Joe Sam Owen both deficient and ineffective as Counsel for Chief

Deputy Bolton, and given the seriousness of the conflict, it is non-waivable.

Due to violations of Chief Deputy Bolton's Sixth Amendment rights to due process and a fair trial, a "miscarriage of justice" has occurred in this case. Therefore, in the "interest of justice, due to violations of Mr. Bolton's Sixth Amendment rights to due process and a fair trial, a "miscarriage of justice" has occurred in this case. Therefore, in the "interest of justice," the guilty verdicts against him should be vacated.

Further, Mr. Bolton respectfully requests that this Court make a finding that the government has engaged in prosecutorial misconduct for (1) making material misrepresentations to the Defense Counsel regarding evidence; (2) withholding material, exculpatory evidence from the Defendant that was prejudicial to Mr. Bolton ; and, (3) making material misstatements to the Court that deprived of his due process rights under the Fifth, Sixth, and Fourteenth Amendments of the Constitution of the United States. The Court may dismiss charges and vacate the verdict against a defendant when such that "a miscarriage of justice" may has occurred. Therefore, Mr. Bolton is requesting dismissal of all charges against him under the circumstances, and that the convictions related to this unlawful and unjust prosecution be vacated.

" the guilty verdicts against him should be vacated.

Accordingly, this motion to vacate verdict or in the alternative, for new trial should be granted.

Respectfully Submitted,

*/s/Sharon Henderson*
Sharon Henderson

Counsel for Charles Bolton

Sharon Henderson MSB 8898
5352 Executive Place Ste 9
Jackson, MS 39206
Tel. 601-573-7756
Fax: 601-510-1980
Email: sharonhenderson98@gmail.com

## CERTIFICATE OF SERVICE

I certify that I have electronically filed the foregoing through the Court's ECF system, which will send notification to, and electronically serve a copy on, all counsel of record in this case. This _11th__day of April, 2017.

*/s/Sharon Henderson*
Sharon Henderson
Counsel for Charles Bolton

Sharon Henderson MSB 8898
5352 Executive Place Ste 9
Jackson, MS 39206
Tel. 601-573-7756
Fax: 601-510-1980
Email: sharonhenderson98@gmail.com