# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**UNITED STATES OF AMERICA**

**V.**                                  **CRIMINAL ACTION NO. 2:16-CR-7-KS-MTP**

**CHARLES BOLTON and**
**LINDA BOLTON**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion to Continue [42] filed by Defendant Linda Bolton and the Joinder [43] filed by Charles Bolton. After considering the submissions of the parties, the record, and the applicable law, the Court finds that the Motion to Continue [42][43] should be granted.

### I. BACKGROUND

A federal grand jury indicted Defendants Charles and Linda Bolton on March 22, 2016. The indictment brings ten counts against both Defendants. Counts 1-5 accuse Defendants of attempting to evade or defeat taxes in violation 26 U.S.C. § 7201 and 18 U.S.C. § 2, for the tax years of 2009 to 2013[1] by:

> (1) cashing tens of thousands of dollars in checks purportedly issued in payment for liquor, wine and catering services to prevent those payments from being recorded on their business bank statements; (2) providing deceptive records to their tax return preparer; and (3) making false statements to their tax returns preparer that some payments for goods and services were loans.

(Redacted Indictment [2] at p. 2.) Counts 5-10 bring claims of filing a false joint tax return for each of those years in violation of 26 U.S.C. § 7606(1) and 18 U.S.C. § 2. (*Id.* at p. 3.)

---

[1] Each tax year is designated as a separate count.

Attorney Joe Sam Owen ("Owen") filed his initial appearance on behalf of Charles Bolton on March 28, 2016. Attorney Paul Holmes ("Holmes") initially appeared in this case on behalf of Linda Bolton at her initial appearance before the magistrate judge on March 31, 2016. Parties are husband and wife, and have represented to the Court that there is a joint defense agreement between them. It is apparent to the Court, and it has been discussed on the record, that Owen is taking the lead in the defense. He has hired experts to review the records and provide help in the defense of both Defendants.

Trial was initially set for May 23, 2016. Charles and Linda Bolton filed a joint Unopposed Motion to Continue [17] on April 25, 2016. The Court granted this motion on April 29, 2016, and the trial date was then set for July 18, 2016.

Attorney James K. Dukes ("Dukes") filed his appearance in the case on behalf of Linda Bolton on June 22, 2016, less than four weeks before trial. It was represented to the Court by both Dukes and Owen on the record in multiple hearings that Dukes was retained by Linda Bolton because Holmes needed some help understanding the case and had not practiced in federal court in a number of years. Despite the circumstances and the short time her new attorney had to prepare for the impending trial, Linda Bolton did not file for a continuance.

Due to courtroom unavailability[2] and after conferring with the parties to ascertain any objections, the Court *sua sponte* continued the case until August 22, 2016.

Sometime during the week of June 28, 2016, while reviewing case documents and preparing for trial, Assistant United States Attorney Fred Harper ("AUSA Harper") observed that several of the checks the government argues were for payments for goods and services, and not loans as the

---

[2]Both courtrooms in Hattiesburg were undergoing renovations and were not serviceable for most of the month of July.

2

Boltons represented to their tax preparer, were issued by Linda Bolton's attorneys, Holmes and Dukes. After affording Holmes and Dukes with an opportunity to voluntarily withdraw from the case, AUSA Harper filed the government's Motion to Disqualify Counsel [26], claiming that Holmes and Dukes, as necessary witnesses to the checks claimed as loans, were disqualified under the Mississippi Rules of Professional Conduct from serving as counsel. A hearing regarding this motion was held on July 28, 2016, with Attorney John Colette ("Colette") appearing on behalf of Holmes and Dukes.

In the hearing on July 28, Colette raised the Boltons' right to a speedy trial and represented to the Court that Linda Bolton would be prejudiced should this trial be continued. Owen stated that he, on behalf of Charles Bolton, had worked numerous hours on the case over the months since the indictment was issued. Both attorneys agreed that there was a joint defense agreement in this case. Furthermore, in telephonic hearings held August 4, 2016, and August 10, 2016, Owen and Dukes told the Court that Holmes, who had been Linda Bolton's sole attorney until less than four weeks before the July 18 trial date, needed some help to be able to grasp the nature of this case and represent her interests. Ultimately, the Court granted the government's Motion to Disqualify Counsel [26] and gave Linda Bolton ten days to find new representation.

A telephonic hearing was held on August 4, 2016, at the request of Dukes on behalf of Linda Bolton, in order to disclose the status of her search for new counsel. Dukes informed the Court that Linda Bolton had approached four attorneys, including Attorney Lisa Ross ("Ross"), and had been turned away because of the impending trial date of August 22. The Court advised Dukes that Linda Bolton should continue to seek representation and that any new attorney would have the opportunity to file for a continuance, which the Court would consider in due course. The Court further advised

Dukes that if Linda Bolton could not find an attorney to represent her, it would appoint a public defender.

On August 8, 2016, the deadline the Court originally gave Linda Bolton to find a new attorney, Ross entered her appearance on behalf of Linda Bolton. Attorney Carlos Tanner ("Tanner") attempted to enter his appearance as well, but it was not properly filed. Tanner did not properly enter his appearance in the case until August 12, 2016. Nevertheless, both Ross and Tanner appeared on behalf of Linda Bolton on August 10, 2016, at a telephonic hearing pertaining to the possibility of attaining a continuance in this case. The Court advised parties that a motion to continue had to be filed before it could grant a continuance. The Court further informed the parties that the only trial dates available to continue the case until would be either August 29, 2016, or September 12, 2016, due to the scheduling constraints caused by the Court's own docket as well as Owen's and AUSA Harper's conflicts,[3] which had long been brought to the attention of the Court. When Ross asked about dates in December, the Court advised her that it did not feel such a long continuance would be appropriate given the nature of the case, but that it would consider any arguments she may make if she filed a motion.

On August 12, 2016, the Court held a telephonic conference with the parties to remind them that, because a motion for continuance had yet to be filed and the trial date was still set for August 22, proposed jury instructions and the parties' exhibit and witness lists were due the following Monday on August 15, 2016. Ross informed the Court that she intended to file a motion for continuance that day on behalf of Linda Bolton, and Owen confirmed that he would join in whatever

---

[3] Owen informed the Court much earlier in the case that he would be unavailable for the entire month of October. AUSA Harper was equally upfront with the Court about his unavailability during November.

4

motion she filed on behalf of Charles Bolton. Ross contacted the Court later that date seeking information regarding the ordering of transcripts of previous proceedings. She then filed the Motion to Continue [42][43] on behalf of Linda Bolton late that evening, after business hours. Because it was a Friday, the Court did not receive the motion until the morning of August 15, 2016.

## II. DISCUSSION

The grant of a continuance is not a matter of right but rather a decision "within the sound discretion of the trial court." *United States v. Rounds*, 749 F.3d 326, 337 (5th Cir. 2014) (citing *United States v. Shaw*, 920 F.2d 1225, 123 (5th Cir. 1991)). In a situation such as this, the decision to grant a continuance "requires a delicate balance between the defendant's due process right to adequate representation by counsel of his choice and the general interest in the prompt and efficient administration of justice. *United States v. Hughey*, 147 F.3d 423, 431-32 (5th Cir. 1998) (quoting *Gandy v. Ala.*, 59 F.2d 1318, 1323 (5th Cir. 1978)) (internal quotations omitted). In making this decision, the Court considers the following factors:

> (1) when the request for continuance was filed; (2) the nature of the reasons offered to support the continuance, particularly where there is reason to believe that those reasons are either less than candid or offered in bad faith; (3) the length of the requested delay; (4) the number of continuances previously granted; and, the great catch-all, (5) the general balance of convenience to the parties and the court.

*Id.* at 432. Furthermore, the Speedy Trial Act mandates that a continuance only be granted when the Court finds "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A).

The Court begins its analysis by noting that Linda Bolton and her former attorneys should have been well aware that Holmes and Dukes could serve as potential witnesses in this case. Holmes and Dukes, as licensed Mississippi attorneys, knew that the Mississippi Rule of Professional Conduct 3.7 prohibited them from serving as an "advocate at trial in which the lawyer is likely to

5

be a necessary witness." Both the attorneys and Linda Bolton knew that Holmes and Dukes had written checks to defendants' business, and they were all aware that the purpose those checks were written was likely to be an issue in the case as the indictment clearly states that checks written to their business were at issue and that payments for goods and services were falsely claimed as loans. Additionally, Holmes had been interviewed by an IRS investigator, and Dukes was approached by the investigator but declined to be interviewed. When the government may have drawn their attention to the conflict and moved for them to be disqualified is not relevant. It is not the government's responsibility to police the conflicts of opposing counsel. The legal profession is a self-governing and self-regulation profession. *See* MRPC Preamble. Therefore, with full knowledge of their professional responsibilities and aware of the issues in this case, Holmes and Dukes should have withdrawn from their representation of Linda Bolton long before the Court granted the government's Motion to Disqualify Counsel [26]. The result of this was to complicate the Court's calendar and scheduling, and to reduce the time any new attorney would have to prepare.

Of course, the Court does not typically impute all actions of attorneys to their clients. However, in this case, Linda Bolton, though not aware of the professional rules her attorneys were obligated to follow, certainly should have known that Holmes and Dukes had written checks to her business during the relevant years and that those checks would be an issue. Whether she called the attorneys to testify that these checks were written as loans or whether the government called them to testify that they were written as payments for goods and services, Holmes and Dukes were likely to be necessary witnesses as to the purpose behind these checks. Therefore, the fact that her attorneys were disqualified only weeks before trial was at least partially attributed to Linda Bolton.

The long delay between the disqualification of Holmes and Dukes and the filing of the Motion to Continue [42][43] cuts against the granting of the type of continuance for which Linda

6

Bolton is asking. With full knowledge that her trial date was imminent, Linda Bolton waited until her deadline to find an attorney had almost expired before Ross entered an appearance on her behalf. She further delayed filing for a continuance until after business hours on a Friday, ensuring the Court would not be able to address her motion until a week after her new counsel entered the case.

This long delay, coupled with the history of Linda Bolton's representation, the length of the continuance requested and all of the surrounding circumstances, causes the Court to question whether the motion was made in good faith or to complicate the scheduling of the case. *See United States v. Pollani*, 146 F.3d 269, 272 (5th Cir. 1998) ("The district court has an interest in maintaining its docket and keeping cases on schedule, and it validly protected those interests in this case by refusing to allow Pollani to manipulate the trial date by strategically timing the hiring of counsel."); *United States v. Ramos*, 71 F.3d 1150, 1155 (5th Cir. 1995) (holding that a criminal defendant does not have the right "to manipulate the orderly administration of justice through the exercise of his choice of counsel"); *United States v. Casey*, 480 F.2d 151, 152 (5th Cir. 1973) ("The freedom to choose one's counsel may not be used as a device to manipulate or subvert the orderly procedure of the courts or the fair administration of justice.") (per curiam).

Additionally, the reasons given by Linda Bolton as to why a continuance beyond the dates given by the Court is needed, are unpersuasive. The Court recognizes that this is a criminal tax case and that tax law is a potentially complex area of the law; however, the particular charges against the defendants in this case are *not* complex. It is difficult for the Court to imagine a more straight-forward tax case than the one before it. Simply put, Charles and Linda Bolton are accused of not claiming portions of their income as income. By the Court's understanding of the case, there does not appear to be any allegations that the Boltons attempted to hide money in tax shelters or to tie it up in trusts or other assets—they are only alleged to have simply not classified income as income.

7

The Court is aware that there are many financial documents that are relevant to these charges which must be reviewed by Linda Bolton's attorneys. However, because of the joint defense agreement, her attorneys will have the benefit of Owen's catalog of this evidence and he has already assured the Court that he is willing to give Linda Bolton's attorneys an overview of the documentation.

Furthermore, despite Ross and Tanner's insistence that they would not be able to properly prepare even if the Court were to grant them a two-month continuance (*See* Motion to Continue [42] at p. 2), Linda Bolton's previous counsel, Dukes, felt that twenty-six days was adequate time to prepare in order to represent her at trial. This is apparent by the fact that he entered the case on June 22, 2016, with an impending trial date of July 18, with full knowledge that Holmes had delayed preparation of his defense of Linda Bolton until that point. Even with only twenty-six days to prepare for trial, there was no motion to continue filed on Linda Bolton's behalf.

Ross and Tanner are both competent attorneys, with Tanner having previously served as an Assistant United States Attorney. Both are well aware that a continuance is granted at the discretion of the Court in circumstances such as these. With full knowledge that trial was imminent and that a continuance was in no way guaranteed, both accepted to represent Linda Bolton. In fact, in one of the telephonic hearings, the Court even told them the only possible dates for trial.

This case has already been continued twice from its original trial date of May 23, 2016, and involves a high-ranking public official.[4] The Court must be mindful of the public interest in this case. *See* 18 U.S.C. § 3161(h)(7)(A). It does not serve the best interest of the public to grant a long continuance in this action. Though Linda Bolton herself is not a public official, her husband and co-defendant is. Notably, there has been no motion to sever in this case, and the Court would likely

---

[4]Charles Bolton is the Chief Deputy Sheriff for Forrest County, Mississippi.

8

deny such a motion given the circumstances of the charges against the Boltons. The charges against Charles and Linda Bolton are identical and concern jointly filed tax returns and jointly owned businesses. As such, the public has an equal interest in Linda Bolton's case as it does in her husband's, and that interest is best served by not unduly delaying trial.

While the Court is more than willing to grant a short continuance to give Linda Bolton's new attorneys time to prepare, it will not entertain the unnecessarily lengthy delay requested. Attorneys Ross and Tanner have related to the Court that they have a trial set for September 12,[5] one of the two options given to them for a trial date in this case. The speedy trial report shows that there are 24 days left for Charles Bolton to receive a timely trial, and 34 days left for Linda Bolton.[6] The defendants in the case the attorneys have set for September 12 have 86 and 80 days respectively. The Court has contacted Judge Tom Lee, the presiding judge in the attorneys' case, and because of the special circumstances surrounding the Boltons' case, he has agreed to move that trial date, freeing up Ross and Tanner to spend more time in preparation for Linda Bolton's defense. The bottom line is that the Bolton case involves a high-ranking public official and is important to the public and needs to be concluded. Linda Bolton will have been represented by attorneys for five and a half months by the time of the trial.

Therefore, the Court finds that the interest of the parties and the public and the ends of justice will be best served by a short continuance and will **grant** the Motion to Continue [42][43]. The case will be **continued** until September 12, 2016, at 9:00 A.M. and a revised scheduling order will be entered by the magistrate judge.

---

[5]*United States v. Taylor, et al.*, 3:15-CR-4-TSL-LRA (S.D. Miss., Northern Division).

[6]Reported dated August 11, 2016.

9

## III. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Continue [42][43] is **granted**. The case is **continued** until September 12, 2016, at 9:00 A.M. and a revised scheduling order will be entered by the magistrate judge. The time until the trial date will not be counted for Speedy Trial Act purposes.

SO ORDERED AND ADJUDGED this the 16th day of August, 2016.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE

10