Return to USPO Matthew Becker

# NOTICE TO THE COURT OF REVIEW
# OF THE PRESENTENCE REPORT

**CHARLES BOLTON**
Docket No. 2:16cr7-1

A. I hereby certify that I have received and reviewed the Presentence Report and find it correct as submitted by the U.S. Probation Officer.

_____
DEFENDANT/DATE

_____
DEFENSE ATTORNEY/DATE

_____
ASST. U.S. ATTORNEY/DATE

B. Objections Regarding Presentence Report

Below are material issues which are believed to be incorrect in the Presentence Report as submitted by the U.S. Probation Officer. **All objections/exceptions should be documented.** (Use additional sheets if needed.)

_[signature]_ 11/06/16
DEFENDANT/DATE

_[signature]_ 11/30/16
DEFENSE ATTORNEY/DATE

_____
ASST. U.S. ATTORNEY/DATE

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

UNITED STATES OF AMERICA

VERSUS                                                    CRIMINAL NO. 2:16-cr-7-KS-MTP

CHARLES BOLTON and
LINDA BOLTON

## CHARLES BOLTON'S
## OBJECTION TO THE PRESENTENCE INVESTIGATION REPORT

### PARAGRAPHS 51, 52, 53, 54, 55, 57, 58, AND 59 SHOULD BE DELETED

The information in paragraphs 51, 52, 53, 54, 55, 57, 58 and 59 is irrelevant to the sentencing of Charles Bolton. This information involves Haralson, his stolen food activities and his improper involvement with female inmates. Why would such information be set forth in a PIR since it serves no guidelines purpose as to Charles Bolton? Obviously, it is part of piling on unfounded accusations and statements that are not remotely similar to the Title 26 conviction and not remotely probative on the guideline calculations. The PIR will follow Charles Bolton through the system and the Offense Conduct Section should only contain information relevant to Bolton's guideline calculations.

## RELEVANT CONDUCT - PARAGRAPHS 39 - 89 (pp. 10 - 21):

Charles Bolton objects to the relevant conduct used by the probation officer to implicate specific offense characteristics thereby increasing the total offense level by two levels from 16 to 18. Charles Bolton also objects to the additional tax due (par. 92) and the restitution amount (par. 102).

The relevant conduct is tied to an investigation by the Federal Bureau of Investigation relating to the alleged theft of food from the Forrest County, Mississippi Sheriff's Office. According to the Presentence Investigation Report, the FBI initiated its investigation in March, 2014. Several individuals were investigated and the primary impetus for inclusion of relevant conduct stems from interviews with Allen Haralson, now deceased, and Jerry Woodland. Haralson admitted that he was involved in the theft of food that he used for his own personal gain. In fact, Haralson and Woodland operated their own catering services with no nexus or connection to Charles Bolton. Both Haralson and Woodland were engaged in criminal activities wholly unrelated to Charles and Linda Bolton. Based on totally undocumented representations by Haralson and Woodland, the probation officer included as unreported income a figure thrown out by Haralson and Woodland that Charles Bolton stole $300 to $400 worth of food per week from 2001 to 2004 and another witness allegedly reported that Charles Bolton stole an estimated $400 and $500 worth of food per week from 2002 to 2012. There is not one single document either in the form of a cost of good/gross sales analysis, an

audit or anything else submitted by the probation officer to remotely suggest the validity and accuracy of such representations by Haralson and Woodland.

Based on the undocumented, off-the cuff estimations of two individuals engaged in their own independent criminal activity, the agent provided calculations to the probation officer on an additional tax due emanating from the alleged theft of food totaling $300 per week and $400 per week. Moreover, the estimations are inconsistent with the annual audit performed on the Forrest County Sheriff Department. See audits performed by the state Auditor and Nicholson & Co. attached as Exhibits A thru F.

Based on an interview with IRS Case Agent Bradley Luker, the probation officer included the alleged stolen food as income based on estimated verbal representations from two targeted individuals which figures were pulled out of thin air. The table setting forth the tax deficiency is in paragraph 92 of the Presentence Investigation Report. Apparently, Agent Luker's information was passed on from an FBI agent who was at one time assigned to the Hattiesburg office.

The table, with the included estimated worth of allegedly stolen food, increased the total tax deficiency on the conviction counts from $117,369.84 to $145,849.78. Moreover, by utilizing totally unsupported and unreliable estimations of food allegedly stolen in excess of $10,000.00 per year, the probation officer applied a two level enhancement under USSG §2T1.1(b)(1).

The PIR sets forth the claim that food was stolen on a weekly basis and used at Sports 22 and the Auto Auction. The PIR sets forth a value of stolen food between $300.00 - $400.00 per week including the period 2005 and 2006.

On August 29, 2005, Hurricane Katrina struck causing extensive roof damage in the range of $60,000.00 the Sports 22 building. Sports 22 was unable to operate from its facility until the later part of 2006 or early 2007. Sports 22 continued to operate the catering business, but used M&B Catering to furnish the food, labor and supplies. M&B actually provided services to Sports 22 from 2004 to approximately 2008. This further underscores how preposterous the statements of two thieves are that Charles and Linda stole food valued at $300 - $400 per week from 2002 thru 2011 including 2005 and 2006.

**PRESENTENCE INVESTIGATION REPORT ("PIR'):**

In paragraph 105, the PIR notes that "USSG § 1B1.3(a)(1) states that the base offense level, specific offense characteristics, cross-references in Chapter Two and adjustments in Chapter Three shall be determine on the basis of the following: (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and (B) in the case of jointly undertaken criminal activity, all acts and omissions of others that were (i) within the scope of jointly undertaken activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course

of attempting to avoid detection or responsibility for that offense." (Emphasis added).

The PIR **does not** rely on USSG § 1B1.3(a)(2), which includes "all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction." This subsection applies "solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts." *But see* PIR ¶ 111 (grouping the multiple counts pursuant to USSG § 3D1.2(d)).

The PIR **does not** *explain* the probation officer's theory of how the alleged theft of food is relevant conduct, or even connected to the scheme to defraud the government. Instead, it just quotes 1B1.3(a)(1) in ¶ 105 and then echoes the case agents recitation in ¶ 106 (among other things) that "[t]he case agent advised that the food would be considered income by the IRS for tax purposes." Thus, the probation officer's theory *appears* to be that the food theft is relevant conduct because it also involved a violation of the tax laws.

## RELEVANT CONDUCT:

Relevant conduct under 1B1.3(a)(<u>1</u>) is limited to conduct "that occurred during the commission of the <u>offense of conviction</u>, in preparation for <u>that offense</u>, or in the course of attempting to avoid detection or responsibility for <u>that offense</u>." (Emphasis added.) In this case, the "offense[s] of conviction" are tax fraud crimes and the victim is

the United States government. The stealing of food from the FCSO was not committed "during" the commission of the tax fraud, nor was it "within the scope of" or "in furtherance of" the tax fraud.

*During the offense of conviction*: The stealing of food from the FCSO was not committed "during" the commission of the tax fraud. *See, e.g., United States v. Wernick,* 691 F.3d 108, 115 (2nd Cir. 2012) (emphasis in original) ("One criminal act does not become 'relevant' to a second act under the Guidelines by the bare fact of temporal overlap. If a bank robber assaults a guard in the course of robbing a bank, the assaultive conduct occurs during the robbery and is 'relevant conduct' that may be used to enhance the seriousness of the robbery offense for purposes of the Sentencing Guidelines because it is a part of the activity constituting the crime of conviction. But if a bank executive is engaged in embezzling money from her company from February to September, and then steals the purse and money of a coworker at an office party in July, this does not become 'relevant' to raise the offense level of the embezzlement merely because it occurred 'during' the same period of time as the embezzlement. Without proof of a *connection* between the acts, the second event is literally a coincidence.... In sum, the Guidelines do not define 'relevant' as 'during' in a purely temporal sense. To qualify as 'relevant conduct,' the conduct must occur in the course of commission of the offense of conviction."). *See also United States v. Levario-Quiroz,* 161 F.3d 903 (5th Cir. 1998) (prior crimes were not relevant conduct under 1B1.3(a)(1)(A) because "Levario

did not commit the offenses in Mexico during the commission of his crimes of conviction (illegal entry and importation of a firearm into the United States), in preparation for his crimes of conviction, or in the course of attempting to avoid detection or responsibility for his crimes of conviction").

The stealing of food from the FCSO was not "in furtherance" of the tax fraud. It's difficult to imagine how the government could argue that it was.

### 1B1.3(a)(2):

Relevant conduct under (a)(2) is limited to "acts and omissions" that "were part of the <u>same course of conduct or common scheme or plan as the offense of conviction</u>." (Emphasis added).

### COMMON SCHEME OR PLAN:

Application Note 5(B)(i) explains that "[f]or two or more offenses to constitute part of a common scheme or plan, they <u>must</u> be substantially connected to each other by <u>at least one</u> common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." (Emphasis added). *See also United States v. Hinjosa*, 484 F.3d 337, 342 (5th Cir. 2007) (emphasis added) ("For two or more offenses to be part of a common scheme or plan they must be substantially connected by <u>at least one</u> common factor.").

### COMMON VICTIMS:

The tax fraud and the theft of food do <u>not</u> share common victims (in the subject case the victim is the United States; in the food case the victim is Forrest County).

### *MODUS OPERANDI:*

The schemes do <u>not</u> share a similar modus operandi. *See, e.g., United States v. Wall*, 180 F.3d 641, 646 (5th Cir. 1999) (finding "insufficient evidence of a distinctive *modus operandi* connecting the later offenses, which involved large quantities of marijuana concealed in a pick-up trucks, to the 1993 offense [of conviction], which involved a relatively small amount of marijuana secreted in Wall's car").

### COMMON ACCOMPLICES:

Charles Bolton did not have common accomplices in both schemes.

### SAME COURSE OF CONDUCT:

Application Note 5(B)(ii) explains that "[o]ffenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct <u>if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses</u>. Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include <u>the degree of similarity of the offense, the regularity (repetitions) of the offenses, and the time interval between the offenses</u>. When one of the above factors is absent, a stronger presence of at least one of the other factors is required." "Although there is substantial overlap between these two terms, 'course of conduct' encompasses a greater sphere of activity than 'common scheme or plan.'" *United States v. Rocha-Dozal*, 481 F.Supp.2d 628, 635 (W.D. Tex. 2006) (citation omitted).

## CASE LAW AUTHORITY:

Separate, un-adjudicated offenses may be part of a common scheme or plan – and thus relevant conduct – if it is "substantially connected to the offense of conviction by at least one common factor, such as common victims, common accomplices, common purpose or similar modus operandi." *United States v. Bryant*, 991 F.2d 171, 177 (5th Cir. 1993). For two offenses to be considered part of a common scheme or plan, the acts must be connected together by common participants or an overall scheme. *United States v. Hill*, 79 F.3d 1477, 1482 (6th Cir. 1996).

In *United States v. Wall*, 180 F.3d 641, 644 (5th Cir. 1999) the Fifth Circuit ruled that two offenses were not part of a common scheme or plan because (1) the offenses did not share any common accomplices, (2) there was no common *modus operandi*, as the earlier offense involved a small amount of marijuana and the latter offense involved large quantities of marijuana concealed in pickup trucks and (3) the only common purpose between the offenses was "importing marijuana for distribution in the United States," which was, by itself, insufficient to establish a common scheme or plan. The relevant conduct articulated in the PIR, assuming it was true, would be prosecuted as an 18 USC §666 violation. The Government investigated such but it ended there with Charles and Lind Bolton. Understandably, the thieves who sought to generate favor with the Government would have played poorly before a jury considering the yearly audits by Nicholson & Co and the state Auditor totally undercut the off the cuff estimations of

food allegedly stolen. The suggestion that $443,395.61[1] in stolen food simply escaped the auditing eye of the Forrest County Board of Supervisors, the Forrest County Chancery Clerk, the external auditor Nicholson & Co. and the state Auditor for years really challenges the intelligence of this Court. This is a classic case of adding alleged uncharged conduct for the sole and exclusive purpose of adding two levels to the total offense level.

The Guidelines state that offenses that do not qualify as a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to the offense of conviction as to warrant the conclusion that they are part of a single episode, spree or ongoing series of offenses. Factors to consider in making the determination include the degree of similarity of the offenses, the regularity of the offenses and the time and interval between the offenses. To determine whether the temporal proximity is present, the Court must consider the interval between the defendants' purported relevant conduct and the offense of conviction. Here, the case agent simply seized upon the unsupported statements of two targeted defendants who guessed at the approximate dollar worth of food taken for a period of time allegedly beginning in 2001 and then simply extended it through 2011 to arbitrarily connect the relevant conduct with the offense of conviction. It is important to this Court to consider the degree of similarity of the offenses and the regularity of the

---

[1] See paragraph 89, page 21 of the PIR.

offenses. *United States of America v. Curtis Oneal Rhine*, U. S. v. Rhine, 583 F.3d 878 (5th Cir. 2009).

As for the subject Title 26 convictions, there is absolutely no degree of similarity between tax evasion, the filing of a materially false tax return and the alleged theft of food from the Forrest County Sheriff's Department in violation of 18USC§666. Moreover, the moving bases for the relevant conduct are verbal representations made by two individuals who, themselves, were engaged in individual criminal conduct and the out of thin air estimation that Charles and Linda Bolton stole between $300 and $400 worth of food per week defies the audits performed. There were other interviews that generated suspicion but not a scintilla of credible, documented evidence to support the uncharged conduct.

Apparently, in an effort to satisfy the temporal proximity factor, the probation officer accepted the verbal accounts of the case agent who premised his information on passed down verbal accounts an FBI agent who received information from two unreliable individuals with a plethora of potential legal problems they faced unrelated to Charles Bolton. Temporal proximity is tied to the interval between the defendant's purported relevant conduct and the offense of conviction. The Fifth Circuit has generally used a year as the benchmark for determining temporal proximity. See *United States v. Booker*, 334 F.3d 406, 414 (5th Cir. 2003). In *United States v. Rhine*, there were at least seventeen months separating any participation by Rhine in a drug trafficking ring

from his offense of conviction. It is important that in *U. S. v. Rhine*, the Fifth Circuit also found counter-indicative the lack of evidence that Rhine engaged in any intervening criminal activity, the presence of which might link his earlier conduct to the offense of conviction. Even if the temporal proximity issue can be stretched in the fashion in which it is stretched in the Presentence Investigation Report, this Court must still determine whether a defendant's earlier conduct is sufficiently similar to the offense of conviction. The initial inquiry is whether there are distinctive similarities between the offense of conviction and the remote conduct that signal that they are part of a course of conduct rather than isolated, unrelated events that happen only to be similar in kind. For example, in *Wall*, the Fifth Circuit concluded that two offenses were not sufficiently because there was no evidence that (1) the marijuana involved in each of the offenses shared a common source, supplier or destination, (2) there were no common accomplices, and (3) one of the offenses involved large loads of marijuana secreted in the wheels and gas tank(s) of two pickup trucks driven across the border. In *Rhine*, the conviction offense involved possession of a very small quantity of crack cocaine with intent to sell some lesser portion. In contrast, the relevant conduct involved in *Rhine* related to a drug trafficking ring that supposedly implicated Rhine as a large scale manufacturer, distributor and supplier of quantities of crack cocaine. The Fifth Circuit concluded in *Rhine* that similarities were lacking as the difference between the offenses

were significant. Further, there was no evidence that the cocaine forming the basis for Rhine's offense of conviction shared a common source, common supplier or destination with the cocaine involved in the drug trafficking ring.

Here, the tax counts involve the operation of Hall Avenue Package and Sports 22 Restaurant. The basis for the 26 U.S.C. §7201 violation is the classification of certain income as loans and not reported as income notwithstanding the fact Linda provided 1099's to Nicholson & Co. for each vendor and for each tax year. The basis for the 26 U.S.C. §7206 violation, that is the filing of a materially false return, is the omission of the income designated as loans and not reported on the tax returns for the various tax years involved in the subject indictment. The convictions here were tied to checks that were income marked as loans. In the uncharged offense, the factual scenario has zero similarity. The uncharged offense involves the alleged theft of food from the Forrest County Sheriff's Office; the speculative worth of the food allegedly stolen; the unsupported statements of two individuals who were stealing food for their own catering businesses and the alleged victim being the Forrest County Sheriff's Office. To the contrary, the subject offenses of conviction here relate to the alleged failure to pay the additional tax due and the filing of a materially false tax return. The source of income in the offense of conviction was never challenged as illegitimate or the product of illegal activity.

As the Fourth Circuit noted in *United States v. Mullins*, 971 F.2d 1138, 1145 (4th Cir. 1992):

> "To state that the pattern of Mullins conduct was that of assisting his brother in committing various frauds when asked to do so, as did the district court, is to describe the Defendant's conduct at such a level of generality as to eviscerate the evaluation of whether uncharged activity is part of the "same course of conduct or common scheme or plan" as the offense of conviction. **With a brushstroke that broad, almost any uncharged criminal activity can be painted as similar in at least one respect to the charged criminal conduct.**"(emphasis added ours).

In *United States v. Culverhouse*, 507 F.3d 896, the Fifth Circuit noted that the unadjudicated offense there and the offense of conviction both involved methamphetamine. The Firth Circuit simply determined that that was insufficient evidence to meet the required tests. Utilizing the teachings of *Culverhouse*, the question now is what is the similarity between the Title 26 tax count convictions and the alleged food stealing? The answer is nothing.

Without addition of the alleged uncharged offense, the base level calculation would be 16 rather than 18. This Court must exercise its discretion to correct this potentially plain error issue as it seriously affects the fairness, integrity and public reputation of judicial proceedings.

Moreover, under the teachings of *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d

435 (2000) any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

**ADDITIONAL TAX DUE – PARAGRAPH 92 (p. 22):**

The additional tax due of $145,849.78 is based on the total tax deficiency relating to the counts of conviction in the amount $117,369.84 increased by the uncharged tax deficiency (relevant conduct) of $28,479.94 added to the PIR. However, as to the year 2009 (Count 1) both Charles and Linda Bolton stand acquitted. If (1) the uncharged conduct tax deficiency of $28,479.94 and (2) the tax deficiency relating to Count 1 (calendar year 2009) in the amount of $25,430.13 are excluded, the actual tax deficiency relating to the counts of conviction is $91,939.71.

Charles Bolton submits that the Court should exercise its sound discretion and exclude any tax deficiency relating to the uncharged offenses and the acquittal of Count 1 for the year 2009. The right to exclude the 2009 tax deficiency for Count 1 is a matter committed to the discretion of this Court.

Moreover, the PIR provides for tax deficiency of $145,849.78 for the Indictment tax years of 2009 -2013 by including the uncharged conduct. However, for purposes of restitution the Probation Officer arrives at a figure of $182,249.78 by also including the years 2002 - 2008. For the various reasons articulated herein, Charles Bolton objects.

## RESTITUTION- PARAGRAPH 102 (P.24):

Restitution under Title 26 is not permitted. However, restitution as part of the supervised release condition under §5D1.2 is permitted provided the restitution is tied to the offense for which a defendant is sentenced which triggers the mandated supervised release as to that sentence. The convicted offenses are Class D and E felonies. The term of supervise release is controlled by the felony class under which Charles Bolton was convicted. However, the uncharged relevant conduct is not part of any supervised release and trying to backdoor restitution for uncharged conduct covering 2002 through 2011 as part of the Title 26 conviction and sentence is impermissible[2].

In *United States v. Benns*, 740 F.3d 370 (5th Cir. 2014), the Court held that the District Court erred in awarding restitution based on relevant conduct that went beyond the defendant's offense of conviction for making false statements relating to a credit application thereby affecting the defendant's substantial rights. The Court reasoned as follows:

> The general rule is that a district court can award restitution to victims of the offense, but the restitution award can encompass only those losses that resulted directly from the offense for which the defendant was convicted." *United States v. Maturin*, 488 F.3d 657, 660–61 (5th Cir.2007).

---

[2] The Government chose not to pursue the uncharged conduct. Clearly, such decision by the Government is understandable. The uncharged conduct was investigated as an 18 USC § 666 offense; not a Title 26 tax offense.

## CONCLUSION:

For the reasons assigned herein, Charles Bolton objects to the PIR and the Total Offense Level of 18[3]. The final offense level should be 14.

Respectfully submitted this the ___30___ day of November, 2016.

_____
CHARLES BOLTON

_____
JOE SAM OWEN
Attorney for Charles Bolton

---

[3] See par 127, p.27.