**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**UNITED STATES OF AMERICA**

**V.**                                                          **CRIMINAL ACTION NO. 2:16-CR-7-KS-MTP**

**CHARLES BOLTON and**
**LINDA BOLTON**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion for Release Pending Appeal Pursuant to 18 U.S.C. § 3143(b) ("Linda's Motion for Bond") [214] filed by Defendant Linda Bolton and the Motion for Release Pending Disposition of Motions for New Trial and/or in the Alternative, Pending Appeal ("Charles' Motion for Bond") [218][1] filed by Defendant Charles Bolton.[2]  After considering the submissions of the parties, the record, and the applicable law, the Court finds that these motions are not well taken and should be denied.

## I.  BACKGROUND

On March 22, 2016, a federal grand jury indicted Defendants Charles Bolton ("Charles") and Linda Bolton ("Linda") (collectively "Defendants") on five counts of attempted tax evasion for the years 2009-2013 (Counts 1-5) and five counts of filing false tax returns for those same years (Counts 6-10).  Attorney Joe Sam Owen ("Owen") filed his initial appearance on behalf of Charles on March 28, 2016.  Attorney Paul Holmes ("Holmes") initially appeared in this case on behalf of Linda at her initial appearance before the magistrate judge on March 31, 2016.  Parties are husband and wife, and represented to the Court that there was a joint defense agreement

---

[1] This motion was erroneously filed as a motion for new trial, but it is styled as a motion for bond and the Court will analyze it as such.
[2] These motions are collectively referred to as the "Motions for Bond [214][218]."

between them. It was discussed on the record that Owen was taking the lead in the defense.[3] He hired experts to review the records and provided help in the defense of both Defendants.

Trial was initially set for May 23, 2016. Defendants filed a joint Unopposed Motion to Continue [17] on April 25, 2016. The Court granted this motion on April 29, 2016, and the trial date was then set for July 18, 2016.

Attorney James K. Dukes ("Dukes") filed his appearance in the case on behalf of Linda on June 22, 2016, less than four weeks before trial. It was represented to the Court by both Dukes and Owen on the record in multiple hearings that Dukes was retained by Linda because Holmes needed some help understanding the case and had not practiced in federal court in a number of years. Despite the circumstances and the short time her new attorney had to prepare for the impending trial, Linda did not file for a continuance.

Due to courtroom unavailability[4] and after conferring with the parties to ascertain any objections, the Court *sua sponte* continued the case until August 22, 2016.

Because they were potential witnesses in the case,[5] Holmes and Dukes were disqualified from the case in a hearing heard on July 28, 2016,[6] and the Court gave Linda ten days to find new representation. On August 8, 2016, the deadline the Court originally gave Linda to find a new attorney, Attorney Lisa Ross ("Ross") entered her appearance on behalf of Linda. Attorney Carlos Tanner ("Tanner") attempted to enter his appearance as well, but it was not properly filed. Tanner did not properly enter his appearance in the case until August 12, 2016. Nevertheless, both Ross and Tanner appeared on behalf of Linda on August 10, 2016, at a telephonic hearing pertaining to

---

[3] This discussion took place during the disqualification hearing held before the Court on July 28, 2016.
[4] Both courtrooms in Hattiesburg were undergoing renovations and were not serviceable for most of the month of July.
[5] Checks from both attorneys were included as evidence of Defendants' undisclosed income.
[6] This disqualification hearing occurred after the Government filed its Motion to Disqualify [26] on July 15, 2016.

the possibility of attaining a continuance in this case. The Court advised parties that a motion to continue had to be filed before it could grant a continuance. The Court further informed the parties that the only trial dates available to continue the case until would be either August 29, 2016, or September 12, 2016, due to the scheduling constraints caused by the Court's own docket as well as Owen's and AUSA Fred Harper's conflicts,[7] which had long been brought to the attention of the Court. When Ross asked about dates in December, the Court advised her that it did not feel such a long continuance would be appropriate given the nature of the case and the fact that Charles was the Chief Deputy Sheriff of Forrest County and was continuing to serve in that position, but that it would consider any arguments she may make if she filed a motion.

On August 12, 2016, the Court held a telephonic conference with the parties to remind them that, because a motion for continuance had yet to be filed and the trial date was still set for August 22, proposed jury instructions and the parties' exhibit and witness lists were due the following Monday on August 15, 2016. Ross informed the Court that she intended to file a motion for continuance that day on behalf of Linda, and Owen confirmed that he would join in whatever motion she filed on behalf of Charles. Ross contacted the Court later that date seeking information regarding the ordering of transcripts of previous proceedings. She then filed the Motion to Continue [42][43][8] on behalf of Linda late that evening, after business hours. Because it was a Friday, the Court did not receive the motion until the morning of August 15, 2016. Nevertheless, on August 16, 2016, the Court granted the Motion to Continue [42][43] and continued the trial date to September 12, 2016.

---

[7] Owen informed the Court much earlier in the case that he would be unavailable for the entire month of October. AUSA Harper was equally upfront with the Court about his unavailability during November.
[8] Charles filed his Notice of Joinder [43] that same day.

Attorney Robert McDuff ("McDuff") entered his appearance in this case on August 26, 2016, eighteen days before the trial date. Less than a week later, on September 1, 2016, McDuff filed a second Motion to Continue [69] on behalf of Linda, less than two weeks before trial. On September 2, 2016, Ross filed her Motion to Withdraw as Attorney [72].

The Court issued its rulings on these motions on September 8, 2016.[9] In its Order [81] denying the Motion to Withdraw as Attorney [72], the Court found that Ross had not shown good cause as to why she should be allowed to withdraw from the case. (*See* Order [81] at pp. 3-4.) In its Order [82] denying the Motion to Continue [69], the Court found, in light of the multiple continuances already granted in the case, that Linda's purported reasons for a continuance did not warrant such an action.[10]

On September 9, 2016, counsel for John Lee filed a Motion to Quash Trial Subpoena and Rule 17 Subpoena [84] on his behalf. Because this motion pertained to testimony[11] and documents subpoenaed for the trial, the Court continued the trial by one day and heard arguments pertaining to this motion on September 12, 2016. The Court ultimately denied the motion.

Trial began on September 13, 2016. Due to the high local interest in the case, the Court took the precaution of calling for a district-wide venire instead of a division-wide one, in order to ensure the Defendants would be tried before an unbiased panel.

The Government rested its case on September 15, 2016, after presenting several witnesses and exhibits. Defense called one witness and rested that same day. After deliberations, the jury

---

[9] On that same date, the Court also issued rulings on the multiple motions *in limine* [47][48][49][50] filed on behalf of the Government and Charles.

[10] Linda gave two reasons: (1) an official review of the investigation by DOJ and (2) the need for her attorney to prepare. The Court did not find these reasons persuasive because (1) there was no proof of an official review by DOJ and (2) McDuff entered the case with full knowledge of the impending trial date and when Linda was already presented by two other attorneys. It was also clear from the record that Owen had hired experts who were working on behalf of both Linda and Charles.

[11] The Government later agreed not to enforce the subpoena for John Lee's testimony because it knew Lee intended to plead the Fifth and because Lee's health was an issue.

returned a verdict of guilty for Charles on Counts 2-10 and for Linda on Counts 6-10. Both Defendants were found not guilty as to Count 1. The jury was unable to reach a verdict as to Counts 2-5 with respect to Linda Bolton, and the Court declared a mistrial as to those counts.

On September 28, 2016, Charles filed his Motion for a Judgment of Acquittal and the Conditional Grant of a New Trial or, Alternatively, Motion for a New Trial [118], and Linda filed her Motion for a Judgment of Acquittal or, in the Alternative, for a New Trial [119] a day later on September 29, 2016. Both motions were fully briefed, and the Court entered its Order [127] denying them both on November 4, 2016.

Sentencing was originally set for December 19, 2016. On that date, Attorney Owen, counsel for Charles, and counsel for the Government requested an in camera meeting with the Court and made a joint request for a continuance, citing Charles's willingness to cooperate with the Government in connection with ongoing investigations. Linda made no objection to this continuance. The sentencing was then continued to January 18, 2017. Owen and counsel for the Government contacted the Court again on January 13, 2017, requesting the Court to continue the sentencing once more to allow Charles more time to speak with agents of the Government. Sentencing was then continued to February 3, 2017, again with no objection from Linda. On January 24, 2017, because of internal scheduling conflicts of the Court,[12] sentencing was continued once again, with the consent of the parties, and set for March 17, 2017.

On March 15, 2017, Owen filed his Motion to Deem Attorney-Client Privilege Waived [151], stating that Charles had terminated his representation and was now attempting to allege Owen had conducted himself unethically during his representation of Charles. At the time,

---

[12] The undersigned was the presiding judge over a case pending in the Northern District of Texas, which was set for a three-week trial in February.

Charles was also represented by Robert Nathan Udashen ("Udashen"), who represented that he would not be present for the sentencing hearing as his representation was for the appeal phase only, and Samuel S. McHard ("McHard"), who served as local sponsoring counsel for the pro hac vice admission of Udashen and who also did not intend to attend the sentencing hearing. The Court learned through the filings connected with Owen's motion that Charles had apparently hired Alabama Attorney Willie J. Huntley ("Huntley") some time during the prior week and that Huntley intended to represent Charles at the sentencing hearing. Despite these intentions, Huntley had not entered an appearance in the Court and had not filed a motion for pro hac vice admission, as required by an out-of-state lawyer not licensed to practice in Mississippi.[13]

On March 17, 2017, prior to the sentencing hearing, the Court heard in camera arguments as to the Motion to Deem the Attorney-Client Privilege Waived [151].[14] During these arguments, the Government represented to the Court that Charles, despite his promises to cooperate, had given its agents no useful information despite the continuances of sentencing granted by the Court and that, as a result, it was ready to move forward with the sentencing with no further delay. Despite his previous termination of Owen's representation, Charles allowed Owen to represent him at the sentencing hearing as he had no other counsel present[15] and did not wish to utilize the Federal Public Defender.[16]

After the in camera arguments, the sentencing hearing was held in open court. Over the objections of the Defendants, the Court adopted the Pre-Sentence Reports' calculated sentencing

---

[13] In fact, despite the Court allowing him to appear on behalf of Charles at the sentencing hearing, Huntley did not move to appear pro hac vice until March 29, 2017.

[14] These arguments were heard on the record.

[15] As previously stated, Huntley was allowed to appear on behalf of Charles despite not being properly admitted as pro hac vice counsel.

[16] As a precautionary measure, the Court had requested the presence of an attorney from the Federal Public Defender's Office be present at the sentencing hearing and in the in camera hearing, to allow Charles an additional option for the sentencing hearing.

guideline range of 27 to 33 months for both Charles and Linda. The Court then sentenced Linda to 30 months confinement per count with the Federal Bureau of Prisons ("BOP"), to be served concurrently. Charles was sentenced to 33 months confinement as to Counts 2 through 5, to run concurrently, and 12 months confinement for Counts 6 through 10, to run concurrently with each other but consecutively with the 33-month sentence under Counts 2 through 5, for a total of 45 months confinement in the custody of the BOP.[17] Fines and restitution were also levied against both Defendants. Judgment was entered in the case on March 28, 2017. (*See* Judgments [165][166].) Defendants were allowed to self-surrender to the custody of the BOP as notified by the U.S. Marshal, but no later than 60 days from the date of sentencing.

Huntley and his associate, Attorney Dennis James Knizley ("Knizley") were admitted pro hac vice on March 29, 2017. On March 30, 2017, Margaret W. Holmes ("Margaret")[18] entered an appearance on behalf of both Defendants. On March 31, 2017, Knizley filed a Notice of Appeal [172] on behalf of Charles. Subsequently, on April 3, 2017, Huntley requested that Notice of Appeal be dismissed without prejudice, as it was filed in error. The Court granted this request that same day. (*See* Order [174].)

On April 11, 2017, Huntley filed on behalf of Charles a Motion for New Trial Due to Defense Counsel for Defendant Charles Bolton Commenced [sic] the Representation with an Actual Conflict [175] and a Motion to Vacate Conviction and Sentence and in the Alternative, for New Trial Under Federal Rule of Criminal Procedure Rule 33 and Request for *Garcia* Hearing[19]

---

[17] This was an upward variance from the sentencing guideline range, which the Court imposed because of Charles's position as a public official and for other reasons stated in open court.

[18] Margaret is the daughter of the previously disqualified Holmes, and works at the Holmes Law Firm.

[19] The term "*Garcia* hearing" is a reference to the Fifth Circuit's decision in *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975), and is commonly understood to be a pre-trial hearing held when "a defendant chooses to proceed with representation by counsel who has a conflict of interest" in order for the district court "to ensure a valid waiver by the defendant of his Sixth Amendment right." *United States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006) (citations omitted).

[177]. That same day, Huntley filed a Notice of Appeal [180] on Charles's behalf, despite knowledge that, under Rule 33, a pending appeal took away the Court's authority to grant any motion for a new trial based on new evidence.

Also on April 11, 2017, Attorney Ursula K. Mitchell ("Mitchell") entered an appearance on behalf of Linda, and Attorney Sharon Denotra Henderson ("Henderson") entered an appearance on behalf of Charles. Both Mitchell and Henderson also filed Motions for New Trial [178][181][20] for their clients. That same day, Attorney Robert McDuff ("McDuff"), Linda's trial counsel, filed a Notice of Appeal [182] on behalf of Linda, again despite knowledge that an appeal divested the Court of authority to grant the motions for a new trial previously filed on behalf of his client.

The Court issued an Order [183] on April 12, 2017, terminating all pending Motions for New Trial [175][177][178][181], finding that it did not have jurisdiction over the matters they involved. *See United States v. Hitchmon*, 602 F.2d 689, 692 (5th Cir. 1979) *superceded by statute on other grounds as stated in United States v. Martinez*, 763 F.2d 1297, 1308 (11th Cir. 1985) (citations omitted); *see also* Fed. R. Crim. 33(b)(1) ("If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.")

On April 21, 2017, Defendants filed their Motions to Seal [189][190],[21] asking for leave to file certain confidential medical information under seal for purposes of forthcoming motions to stay the Defendants' self-report dates. The Court entered its Order [191] granting these motions

---

[20] These motions are referred collectively with Charles's motions as the "Motions for New Trial [175][177][178][181]."

[21] These motions were entitled "Motion to Stay Self-Report Date," but the event chosen when filing these documents was "Motion to Seal." The Court interpreted them, not as motions to seal, but as motions for leave to file under seal, as that was the relief asked for in the motions.

on April 24, 2017.[22]  Defendants' Motions to Stay [198][199] were subsequently filed on April 26, 2017.

The Court learned on April 26, 2017, that Defendants had filed motions for bail pending appeal in the Fifth Circuit.[23]  These motions were procedurally incorrect, as motions for bail pending appeal must first be filed with the district court before they are brought to the appellate court, and no such motions were filed with this Court. *See* Fed. R. App. P. 9(b); *see also Jago v. U.S. Dist. Court, N. Dist. of Ohio*, 570 F.2d 618, 623 (6th Cir. 1978) ("Release pending an appeal must be first sought in the district court even after an appeal has been noted from the judgment of conviction.").  Because of the confusing motion practice of Defendants and because it was uncertain how to proceed on the Motions to Stay [198][199] given the motions for bail, the Court consulted with staff attorneys at the Fifth Circuit.

It was ultimately decided that the best course of action was for the Court to request a remand pursuant to Federal Rule of Appellate Procedure 12.1(b),[24] in order to streamline the proceedings and to allow for factual findings to be made on the issues in all of the motions filed by Defendants.  The Fifth Circuit panel issued a per curiam order remanding the case on April 27, 2017, divesting itself of jurisdiction and denying all pending motions before it as moot.  (*See* Order of USCA [205].)  The Court issued an Order [206] on April 27, 2017, reviving the Motions for New Trial [175][177][178][181] and setting briefing deadlines.  Because of the remand, no appeal is currently pending in this case.

---

[22] The Motions to Seal [189][190] were filed on a Friday, and the Court was unable to address them until the following Monday.

[23] Also on April 26, 2017, adding to the confusion of the case, yet another attorney, William Walter, made an appearance on behalf of both Defendants.  Three days later, on April 28, 2017, Mary Lee Holmes made an appearance on behalf of both Defendants as well.

[24] Federal Rule of Appellate Procedure 12.1(b) allows a district court to request remand in order to consider a motion that "raises a substantial issue."

The Court denied the Motions to Stay [198][199] on May 1, 2017. That same day, Defendants filed their Motions for Bond [214][218] and asked for expedited consideration of these motions, which the Court denied. Linda surrendered to the custody of the BOP on May 2, 2017, and Charles surrendered on May 3, 2017.

## II. DISCUSSION

### A. Standard of Review

Under 18 U.S.C. § 3143(b), "a person who has been found guilty of an offense and sentenced to a term of imprisonment" must be detained unless the Court finds

(A)     by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title;[25] ***and***

(B)     that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--

> (i)      reversal,
>
> (ii)     an order for a new trial,
>
> (iii)    a sentence that does not include a term of imprisonment, or
>
> (iv)    a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1) (emphasis added).

Because of the procedural tangle Defendants' counsel have made in this case and because Defendants have failed to point to any precedent as guidance, the Court is uncertain as to whether it is even authorized to grant bond under § 3143(b). No appeal is currently pending before the Fifth Circuit, making it impossible for the Court to evaluate the likelihood of success of such an

---

[25] No party disputes that neither Dependent poses a risk of flight or is a danger to the community.

appeal. Furthermore, § 3143(b) makes no mention of bond pending the disposition of a motion for a new trial based on newly discovered evidence. However, because the Court finds that none of the arguments presented in the Motions for Bond [214][218] have a likelihood of resulting in a reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence, *see* 18 U.S.C. § 3143(b)(B), the Court finds that it can deny these motions despite these uncertainties.

B.    **Linda's Motion for Bond [214]**

Linda brings multiple arguments as to why she should be granted bond pending appeal and/or pending disposition of her motions. Because she does not separate these arguments between those for bond pending her appeal and those for bond pending dispositions of her motions, the Court will address them in the order she presents them.

1.    **Inconsistent Jury Verdicts**

Linda's first arguments for bond are premised on her arguments, presumably on appeal, that the inconsistencies in the multi-count verdict are the basis for a reversal. "Where a multi-count verdict appears inconsistent, the appellate inquiry is limited to a determination whether the evidence is legally sufficient to support the counts on which a conviction is returned. What the jury did with the remaining counts is immaterial." *United States v. Michel*, 588 F.2d 986, 997 (5th Cir. 1979) (citing *United States v. Fuiman*, 546 F.2d 1155, 1157-58 (5th Cir. 1977)). This is similar to the argument previously presented by Linda and denied by the Court in her first motion for new trial and motion for acquittal [119]. (*See* Order [127] at pp. 2-3.) In its previous Order [127], the Court found there to be sufficient evidence to support Linda's convictions and nothing in her Motion for Bond [214] convinces the Court that that ruling was incorrect. (*See id.*) Therefore, the Court does not find that this argument is likely to result in a reversal, an order for a

new trial, a sentence that does not include a term of imprisonment, or a reduced sentence, *see* 18 U.S.C. § 3143(b)(B), and the Court will **deny** the Motion for Bond [214] as to this argument.

### 2.      John Lee Checks

Linda argues that the Government failed to meet its burden to prove that John Lee's checks were untaxed income of Defendants and that, as a result, her convictions are invalid. As the Court has previously held, the Government presented sufficient evidence at trial to show that these checks were income, and even if it had not, the Court also found that the Government could have met its burden to establish Linda's guilt even if the John Lee's checks were excluded entirely from evidence. (*See* Order [127] at p. 3.) Furthermore, even if these checks were excluded at trial, the Court could have still considered them as related activity at sentencing, where statements from Special Agent Bradley Luker that these checks were made for goods and services would have been admissible and persuasive to the Court.[26] As such, the exclusion of these checks at trial would not have changed either the jury's verdict or the Court's imposed sentence. Therefore, the Court does not find that Linda has a likelihood of success on this argument, and the Motion for Bond [214] will be **denied** with respect to it.

### 3.      Owen's Representation of Charles

Linda argues that her Fifth and Sixth Amendment rights were violated by the violation of her husband and co-defendant's Sixth Amendment right to conflict-free counsel. This Court knows of no precedent, nor does Linda point to any precedent, that would allow the Court to impute an alleged Sixth Amendment violation of right to counsel of one defendant to an otherwise duly represented co-defendant. During the trial, Linda had three attorneys of record, though only

---

[26] Agent Luker testified at trial that, through his investigation of John Lee's ledgers, he believed these checks were for goods and services.

McDuff appeared on her behalf at the trial itself.  She makes no representations in her Motion for Bond [214] that McDuff's representation was deficient.  Rather, she argues that Owen, Charles's counsel, had an impermissible conflict.  However, because Linda's interests were protected by her own counsel, the Court does not find that she has a likelihood of success on this argument.  Therefore, the Motion for Bond [214] will be **denied** as to this argument.

### 4.     *Brady* Violations

Linda contends that the Government violated *Brady* by withholding exculpatory evidence as demonstrated by what she calls discrepancies between Agent Luker's testimony as to John Lee's checks and the summation of these statements found in her Pre-Sentence Report ("PSR").  The Court does not find that there are any discrepancies between Agent Luker's testimony and the PSR.  At trial, Agent Luker testified that John Lee's check registers and ledgers recorded his checks to the Boltons as being payment for goods and services, specifically liquor and catering services.  (*See* Trial Transcript Vol. II [149] at 348:12-349:6.)  The PSR's summation states that Lee told investigators he "did a lot of business" with the Boltons, including "purchas[ing] large amounts of liquor and wine from Bolton and utiliz[ing] Bolton for catering parties."  (PSR [158] at ¶ 23.)  He further stated that "he had approximately $25,000 to $35,000 worth of liquor at his house at the time of the interview" and that "the majority of this liquor was purchased from Bolton."  (*Id.*)  The PSR goes on to say that Bolton never gave Lee invoices or receipts and that "Lee could not recall loaning Bolton any money."  (*Id.* at ¶ 24.)  Lee apparently would pay "[w]hatever Bolton told Lee he owed," and "if Bolton asked Lee for money, . . . he would give it to Bolton and not ask any questions."  (*Id.*)

The Court has already considered the merits of this argument when it denied Linda's previous Renewed Motion for New Trial [128].  (*See* Order [145] at pp. 2-4.)  A *Brady* violation

13

"occurs when the [Government] fails to disclose evidence materially favorable to the accused."

*Banks v. Thaler*, 583 F.3d 295, 310 (5th Cir. 2009) (quoting *Youngblood v. West Virginia*, 547

U.S. 867, 869, 126 S. Ct. 2188, 165 L.Ed.2d 269 (2006)). Nothing in PSR's summation of John

Lee's interview with investigators suggest that anything said during the interview was favorable

to Linda. The Court does not find that Linda has a likelihood of success on this argument and will

**deny** her Motion for Bond [214] as to this issue.

### 5.        Confrontation Clause

Linda bases her Confrontation Clause argument on Agent Luker's testimony that John Lee

told him that the checks cashed by Defendants were for goods and services. As this is not new

evidence and cannot be a proper basis for her pending motions for new trial, the Court assumes

this deals with her future appeal.

Linda's Confrontation Clause argument is premised on testimony that was not given at

trial. Agent Luker did not testify as to any statements that John Lee may have given him. In fact,

the Court ruled specifically and in detail that the hearsay rules barred such testimony from Agent

Luker. (*See* Trial Transcript Vol. II [149] at 332:12-333:13.) On cross-examination, Agent Luker

stated that the John Lee checks were written for food and liquor and were claimed on John Lee

PA's tax return as business supplies. (*See id.* at 348:12-349:6.) At trial, all parties agreed that this

information was available in John Lee's ledger and check registers, which were admitted by

parties' stipulation and, insofar as they may have contained hearsay, were subject to the business

records exception of Federal Rule of Evidence 803(6). (*See id.* at 345:17-348:6.) As a general

rule, "business records are not testimonial in nature and their admission at trial is not a violation

of the Confrontation Clause." *United States v. Jackson*, 636 F.3d 687, 692 (5th Cir. 2011) (quoting

*United States v. Morgan*, 505 F.3d 332, 339 (5th Cir. 2007)). Therefore, the Court does not find

that any argument Linda may present under the Confrontation Clause has a likelihood of success, and the Motion for Bond [214] will be **denied** as to this argument.

Because Linda has not demonstrated that either her motions for new trial or her appeal will likely result in a reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence, *see* 18 U.S.C. § 3143(b)(B), the Court will **deny** her Motion for Bond [214] in its entirety.

### C.    Charles's Motion for Bond [218]

#### 1.    Bond Pending Disposition of Motions

Charles's Motions for New Trial [175][177][181][27] are premised on newly discovered evidence and are brought under Federal Rule of Criminal Procedure 33(b).  "Motions for new trial based on newly discovered evidence are disfavored and reviewed with great caution."  *United States v. Wall*, 389 F.3d 457, 467 (5th Cir. 2004) (quoting *United States v. Erwin*, 277 F.3d 727, 731 (5th Cir. 2001)) (internal quotations omitted).  There are five prerequisites[28] that must be met for a new trial to be granted based on new evidence:

> (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence if introduced at a new trial would probably produce an acquittal.

*Id.*

The "newly discovered evidence" that Charles argues in his Motion for Bond [218] is likely to result in a new trial is a conflict of interest that his attorney, Owen, had in representing him at

---

[27] Charles has an additional motion for new trial [226] also pending, but this motion was not addressed in his Motion for Bond [218].

[28] Referred to as "the *Berry* rule."

trial.  According to Charles, Owen was paid by John Lee to represent him,[29] and this created a conflict because some of the checks found to be untaxed income were written by John Lee.  (*See* Motion for Bond [218] at p. 15.)  This evidence, however, does not pass the *Berry* rule.

First, Charles does not argue that he was unaware that John Lee paid for his legal representation.[30]  *See Wall*, 389 F.3d at 467.  Even if Charles were unaware, it would have been his own lack of diligence that prevented this evidence from being detected prior to trial.  *See id.* Furthermore, whether Owen had a conflict of interest is not material to the question of Charles's guilt and such evidence, even if it were properly admitted at a new trial,[31] would probably not produce an acquittal.  *See id.*

Therefore, because Charles has not shown that his Motions for New Trial [175][177][181] have a likelihood of success, the Court will **deny** his Motion for Bond [218] pending the disposition of his motions.

### 2.    Pending Appeal

The only argument on appeal that Charles addresses in any depth in his Motion for Bond [218] is his argument that his right to due process was violated because no *Garcia* hearing was conducted by the Court prior to the sentencing.[32]

A *Garcia* hearing is typically held when "a defendant chooses to proceed with representation by counsel who has a conflict of interest" in order for the district court "to ensure a valid waiver by the defendant of his Sixth Amendment right."  *United States v. Garcia-Jasso*, 472

---

[29] Though Charles's filings suggest that this money was for his representation in the instant case, conversations held on the record prior to the sentencing hearing suggest that this money was for Owen's representation of Charles with respect to food theft investigations in 2014.

[30] In the in camera hearing held prior to the sentencing, it was stated that Charles himself delivered John Lee's money to Owen.

[31] The Court is uncertain how evidence of attorney conflict would be admissible at a new trial.

[32] A *Garcia* hearing does not implicate Charles's rights to due process under the Fifth Amendment, but rather his right to counsel under the Sixth Amendment.  The Court analyzes this argument under the correct constitutional amendment.

F.3d 239, 243 (5th Cir. 2006) (citations omitted). A *Garcia* hearing is only necessary "if there is an actual conflict of interest." *Id.* (quoting *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir. 1985)).

The Court only became aware of a potential conflict of interest when Owen filed his Motion to Deem the Attorney-Client Privilege Waived [151].[33] After the in camera hearing held on March 17, 2017, the Court was not convinced that an actual conflict existed. Nevertheless, it offered Charles an attorney from the Federal Public Defender's Office[34] to represent him at the sentencing hearing.[35] Charles declined this offer and chose to move forward with the sentencing with Owen as his attorney. In an abundance of caution, the Court allowed Huntley to appear and participate on Charles's behalf at the sentencing, despite his failure to move for admission pro hac vice prior to the hearing.[36] Even if the Court had found an actual conflict and was therefore required to hold a *Garcia* hearing, this error was harmless. Charles was offered alternative counsel and was allowed to have his counsel-of-choice, Huntley, participate at the sentencing hearing despite his failure to follow Court procedures, and Charles's right to counsel under the Sixth Amendment was well preserved.

---

[33] The Court cannot be expected to know who paid Charles's attorney fees or that any potential conflict existed without parties bringing it to the Court's attention. The Court would also stress that Charles himself never alleged a conflict prior to the in camera hearing on Owen's motion, without which the Court would have had no notice of a potential conflict prior to sentencing. The Court can only assume that Charles was either saving the conflict issue for appeal or intending to introduce it last minute at the sentencing hearing in order to delay sentencing yet again.

[34] The Federal Public Defender had been previously advised of the Court's offer and was present and prepared to move forward with the sentencing on Charles's behalf.

[35] Owen filed extensive objections to the Pre-Sentence Report and was prepared to represent Charles at the sentencing. These objections and a supplement were filed with the Court on December 6, 2016, and documents numbers [293-2] and [293-9].

[36] The Court can only assume that this failure to move for pro hac admission was a deliberate attempt to delay the sentencing, as Huntley was retained by Charles a week prior to the sentencing and was aware that he would need to be admitted pro hac vice in order to represent him at the sentencing.

Because the Court does not find that this argument on appeal is likely to result in a reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence, *see* 18 U.S.C. § 3143(b)(B), the Court will **deny** Charles's Motion for Bond [218].

### D.      Arguments Not Properly Before the Court

Defendants raise numerous arguments for the first time in their Replies [248][249].[37]  As Defendants were previously advised, the Court does not consider arguments raised for the first time in a reply brief, unless good cause is shown and the opposing party is afforded a fair opportunity to respond.  (*See* Order [217] at p. 10 n.24.)  These arguments are therefore not properly before the Court and cannot be the basis for granting the Motions for Bond [214][218].  However, because these arguments are ultimately meritless, the Court addresses them here in order to clarify the record.

### 1.      Insufficiency of the Evidence Against Linda

This argument by Linda is, once again, premised on the false idea that the John Lee checks were the only evidence of untaxed income that the Government produced at trial.  The Court has consistently ruled that the Government sufficiently proved the John Lee checks to be income and, even absent these checks, there is still sufficient evidence for the convictions against Linda to stand.  (*See* Order [127] at p. 3; Order [145] at pp. 3-4.)  Linda is not likely to be successful on this argument either in her motions for new trial or her appeal.  Therefore, this is not a proper basis for bail under § 3143(b).

---

[37] An additional reply, docket number 250, was filed by Mary Lee Holmes, on behalf of Linda, as a motion and is styled as a "Limited Supplemental Motion in Support of Reply Motion Supporting Motion for Bond Pending Appeal," which the Court assumes is meant to be a motion requesting leave to supplement Linda's previous Reply [248].  She subsequently filed her Motion to Withdraw Document [251], asking for this motion to be withdrawn.  The Court will address these filings separately, along with the Government's Response [252] asking for the Motion [250] to be stricken and Mary Lee Holmes sanctioned.  The arguments contained in the Motion [250] are not considered here because, as acknowledged by Mary Lee in her Motion to Withdraw [251], they are unnecessarily redundant.

## 2.    Linda's Due Process Rights and Counsel of Choice

In her Reply [248], Linda argues that the Court's disqualification of Holmes and Dukes violated her right to counsel of choice. She further argues that even if this disqualification were not wrongful, the Court still violated her rights by not granting her new counsel time to prepare.

"[T]he Sixth Amendment simply does not provide an inexorable right to representation by a criminal defendant's preferred lawyer." *United States v. Hughey*, 147 F.3d 423, 428 (5th Cir. 1998) (citing *Wheat v. United States*, 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L.Ed.2d 140 (1988)). "The Sixth Amendment right to counsel of choice is limited, and protects only a paying defendant's fair or reasonable opportunity to obtain counsel of the defendant's choice." *Id.* (citations omitted). Furthermore, although "there is a presumption in favor of a defendant's counsel of choice, . . . that presumption may be overcome by an actual conflict of interest, or by showing a serious potential for conflict." *United States v. Gharbi*, 510 F.3d 550, 553 (5th Cir. 2007) (citing *Wheat*, 486 U.S. at 164, 108 S. C.t. 1692).

The Court can think of no clearer example of "a serious potential conflict" than where a retained attorney is a potential witness against a criminal defendant. *See id.* As such, the Court's disqualification of Holmes and Dukes was more than proper. After this disqualification, the Court gave Linda ten days to find new counsel, which she did, and her new counsel subsequently filed for a continuance. The Court then continued the trial until September 12, 2016, which was over a month after the disqualification of Linda's original attorneys.[38]

Because the Court was right to disqualify Holmes and Dukes and because the Court gave Linda ample time to retain new counsel and for her new counsel to prepare, the Court does not

---

[38] It was clear to the Court from the record that the attorneys for Linda and Charles were working together and that Owen had taken the lead. Owen had also hired experts and freely shared information with Linda's attorneys.

find that Linda has a likelihood of success on this argument, and bail under § 3143(b) is not appropriate.

### 3. Remand on "Substantial Issue" Mandates Bail

In his Reply [249], Charles argues that, because the Court requested a remand from the Fifth Circuit under Federal Rule of Appellate Procedure 12.1, which allows a district court to request a remand from an appellate court if a motion raises a "substantial issue," bail pending appeal must be granted. Charles wrongly equates the "substantial issue" language from this rule with the language from 18 U.S.C. § 3143(b)(1)(B), which allows for bail pending an appeal which "raises a substantial question of law or fact likely to result in" a reversal, new trial, a reduced sentence, or a sentence with no imprisonment. This argument, premised presumably on the word "substantial" in both Rule 12.1 and § 3143(b), demonstrates a profound misunderstanding of the federal procedural rules.[39]

Rule 12.1 was promulgated, like all federal procedural rules, by the United States Supreme Court and does not in any way "abridge, enlarge or modify any substantive right." *See* 28 U.S.C. § 2072. By contrast, § 3143 was enacted by Congress, through bicameral vote and presentation to the President, to detail under what circumstances a criminal defendant is entitled to bail, which is a substantive right. One is a procedural rule while the other is a substantive law, and both involved different authors and different approval processes. The fact that both use the word "substantial" in their language and both happen to be implicated in the current case is inconsequential. The Court's analysis and authority under Rule 12.1 and § 3143 are vastly different.

---

[39] The Court assumes that this is a misunderstanding of the law on the part of Charles's attorney, William Walter, and not a deliberate attempt to misrepresent the law.

In the Court's consultation with Fifth Circuit staff attorneys, it was determined that the inadequate factual record on many of the issues raised by Defendants in their motions for new trials and motions for bail was a "substantial issue," as described by Rule 12.1, that needed to be addressed by the district court before the appellate court could address those issues.[40]  The Fifth Circuit judges agreed, as evidenced by the remand of the case to this Court, that the need for a more thorough factual record, a deficiency brought about by the inartful and clumsy motion practices of the Defendants' attorneys, was a substantial issue that merited remand.[41]

By contrast, the Court has already detailed, *see supra*, II.C, why Charles's arguments in his Motion for Bond [218] do not "raise[] a substantial question of law or fact likely to result in" a reversal, new trial, a reduced sentence, or a sentence with no imprisonment.  18 U.S.C. § 3143(b)(1)(B).  As such, Charles has not shown that he is entitled to bail pending his appeal or pending the disposition of his motions for new trial.

### III.  CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that Linda's Motion for Bond [214] is **denied**.

IT IS FURTHER ORDERED AND ADJUDGED that Charles's Motion for Bond [218] is **denied**.

SO ORDERED AND ADJUDGED this the 28th day of June, 2017.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE

---

[40] The Court would further add that remand was first suggested by the Fifth Circuit staff attorneys, who directed the undersigned to send an e-mail requesting remand once this Court agreed.

[41] The Court would note that even absent this remand, the Fifth Circuit would have likely denied the Defendants motion for bail pending appeal, as Federal Rule of Appellate Procedure 9(b) requires that all claims for bail pending appeal must first be presented to the district court.  *See* Fed. R. App. P. 9(b); *see also Jago v. U.S. Dist. Court, N. Dist. of Ohio*, 570 F.2d 618, 623 (6th Cir. 1978) ("Release pending an appeal must be first sought in the district court even after an appeal has been noted from the judgment of conviction.").